The United States Government does not apologize to you for the photographs you have had to see. We don't owe to you the apology. We didn't kill them. It is part of our job to produce those photographs so you will see how horrendous and horrible these people were and are.

I, too, appreciate you listening on behalf of the United States Government. The government would also want to encourage you to go through all of these exhibits and evidence. You go through your notes. What I have said, Mr. Vick said, or the defense lawyers say, is not fact. It is not law. The facts are what you recall. Judge Spencer will give you the law.

One other thing about Judge Spencer: These lawyers have been saying 5K.1, 5K.1, 5K.1. There is only one human being in the whole world that can cut a sentence in this case, and that's that man. You heard Gaiters and Hardy both tell you they pled in front of Judge Spencer. The government can make the motion. But it is in that man's discretion. And you go back and look at Gaiters' and Hardy's plea agreements, and what do they tell you? They have to be truthful in their cooperation with the government, all the people that are getting 5K's. That man knows it, these men know it.

MR. GEARY: I object. Greg Scott is a key witness in this case.

MR. PARCELL: Ladies and gentlemen, thank you very much.

MR. GEARY: Another misstatement by Mr. Parcell.

THE COURT: Objection overruled. We are going to take about 10 or 15 minutes, then we will get started with the instructions. They are going to take awhile, and you have been sitting awhile. So we will give you a break. Everyone remain seated while the jury leaves the courtroom.)

(The jury left the courtroom.)

(Defendants removed from courtroom.)

(Recess taken from 11:50 a.m. to 12:05 p.m.)

## Court Instructions to Jury re Guilt (3192)

THE COURT: All right, let's bring in the jury.

(The jury entered the courtroom.)

Members of the jury: You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties. It becomes my duty therefore to instruct you on the rules of law that you must follow and apply in arriving at your

001

decision in this case.

In any jury trial there are, in effect, two judges. I am one of the judges. The other is the jury. It is my duty to preside over the trial and to determine what testimony and evidence is relevant under the law for your consideration. It is also my duty at the end of the trial to instruct you on the law applicable to the case. You as jurors are the judges of the facts. But in determining what actually happened in this case, that is, in reaching your decision as to the facts, it is your sworn duty to follow the law I now am in the process of defining for you. Unless otherwise stated, you should consider each instruction to apply separately and individually to each defendant on trial. And you must follow all of my instructions as a whole. You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. That is,

you must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I give it to you regardless of the consequences. By the same token, it is also your duty to base your verdict solely upon the testimony and evidence in the case without prejudice or sympathy. That was the promise you made and the oath you took before being accepted by the parties as jurors in this case, and they have the right to expect nothing less.

The indictment, or formal charges against a defendant, is not evidence of guilt. Indeed, the defendants are presumed by law to be innocent. The law does not require a defendant to prove his or her innocence or produce any evidence at all. The government has the burden of proving him or her guilty beyond a reasonable doubt. And if it fails to do so, you must acquit him or her.

Thus, while the government's burden of proof is a strict or heavy burden, it is not necessary that the defendants' guilt be proved beyond all possible doubt. It is only required that the government's proof exclude any reasonable doubt concerning the defendants' guilt.

Now, as I've stated earlier, it is your duty to

determine the facts. And in so doing, you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into the record, and any stipulations or agreements between the parties.

Remember that any statements, objections, or arguments made by the lawyers are not evidence in the

case.  The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case; and in so doing, call your attention to certain facts or inferences that might otherwise escape your notice.

In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in this case.  What the lawyers say is not binding upon you.

Also, during the course of the trial I occasionally make comments to the lawyers or ask questions of a witness or admonish a witness concerning the manner in which he or she should respond to the questions of counsel.  Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case.  Except for my instructions to you on the law, you should

3196

disregard anything I may have said during the trial in arriving at your own findings as to the facts.

Now, while you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts and which have been established  --  facts which have been established by the testimony and evidence in the case.  You should not be concerned about whether the evidence is direct or circumstantial.  Direct evidence is the testimony of one who asserts actual knowledge of a fact such as an eyewitness.  Circumstantial evidence is proof of a chain of facts and circumstances indicating that the defendant is either guilty or not guilty.  The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Now, I have said that you must consider all of the evidence a number of times.  This does not mean, however, that you must accept all of the evidence as true or accurate.  You are the sole judges of the credibility or believability of each witness and the weight to be given to his testimony.  In weighing the

3197

testimony of a witness, you should consider his or her relationship to the government or the defendants; his or her interest, if any, in the outcome of the case; his or her manner of testifying; his or her opportunity to observe or acquire knowledge concerning the facts about which he or she testifies; his or her candor, fairness, and intelligence, and the extent to which he or she has been supported or contradicted by other credible evidence.

You may in short accept or reject the testimony

of any witness in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact.  You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

A witness may be discredited or impeached by contradictory evidence by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.  If you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves.

The fact that a witness has been previously convicted of a felony or a crime involving dishonesty or false statement is also a factor you may consider in weighing the credibility of that witness.  The fact of such a conviction does not necessarily destroy the witness' credibility, but is one of the circumstances you may take into account in determining the weight to be given to his or her testimony.

In this case, the government called as some of its witnesses an alleged accomplice named as a co-defendant in the indictment with whom the government has entered into a plea agreement providing for the dismissal of some charges or providing that the government may in its discretion file a motion informing the Court that the witness has provided substantial assistance to the government in its investigation or prosecution of the defendants in this case or of other persons.  If such a motion is filed by the government, the court may elect to impose a lesser sentence than the witness would otherwise have received for the offense to which he pled guilty.

Such plea bargaining, as it is called, has been approved as lawful and proper and is expressly provided for in the rules of this Court.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying.  On the contrary, the testimony of such a witness alone may be sufficient weight to sustain a verdict of guilty.  However, the jury should keep in mind that such testimony is always to be received with caution and weighed with

004

great care.  You should never convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt.  The fact that an accomplice has entered a plea of guilty to the offense charged is not evidence in and of itself of the guilt of any other person.

The testimony of an alleged accomplice and the testimony of one who provides evidence against a defendant as an informer for pay or for immunity from punishment, or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses.  You the jury must decide whether the witness' testimony has been affected by any of those circumstances or by the witness' interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that the witness has received, either financially or as a result of being immunized from prosecution.  You should keep in mind that such testimony is always to be received with caution and weighed with great care.  You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

The testimony of a drug or alcohol abuser must be examined and weighed by the jury with greater care than the testimony of a witness who does not abuse drugs or alcohol.  The jury must determine whether the testimony of a drug or alcohol abuser has been affected by drug or alcohol use or the need for drugs or alcohol.

Now we come to the offense instructions, starting out with Count One.  Title 21 of the United States Code Section 846 makes it a separate federal crime or offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would be a violation of Section 841(a)(1).  Section 841(a)(1) makes it a crime for anyone to knowingly distribute, dispense, and/or possess a controlled substance with the intent to distribute.

So under the law, a conspiracy is an agreement or a kind of partnership in criminal purposes in which each member becomes the agent or partner of each other -- of every other member.  In order to establish a conspiracy offense, it is not necessary for the government to prove that all of the people named in the indictment were members of the scheme or that those who were members had entered into a formal type of agreement.  Also, because the essence of a conspiracy offense is the making of the scheme

itself, it is not necessary for the government to prove that the conspirators actually succeeded in accomplishing their unlawful plan. What the evidence in the case must show beyond a reasonable doubt is this: First, that two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment. And second, that the defendant knowingly and willfully became a member of such conspiracy.

A person may become a member of a conspiracy without knowing all of the details of the unlawful scheme and without knowing who all of the other members are. So if a defendant has an understanding of the unlawful nature of a plan, and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict him or her for conspiracy, even though he or she did not participate before, and even though he or she played only a minor part. Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of a conspiracy.

Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

The first element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in the indictment. In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated in words or writing what the scheme was, its objective or purpose, or every precise detail of the scheme, or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act. You may of course find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of

conspiracy cases, actions often speak louder than words.  In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

It is charged in Count One of the indictment that the conspiracy distributed and possessed with intent to distribute a particular amount or quantity of narcotic controlled substance.  The evidence in the case need not establish the exact amount or quantity of the substance containing cocaine, except you must find beyond a reasonable doubt that the conspiracy distributed or possessed with intent to distribute, or attempted to possess with intent to distribute at least 50 grams or more of crack cocaine.

The second element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy, the first count of the indictment, is that the defendant knowingly, willfully, and voluntarily became a member of the conspiracy.  If you are satisfied that the conspiracy charged in the indictment existed, you must next ask yourself who the members of that conspiracy were.  In deciding whether the defendant whom you are considering was in fact a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy; did he or she participate in it with knowledge of its unlawful purpose and with the specific intent of furthering its business or objective as an associate or worker.

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he or she must have had a stake in the venture or its outcome.  You are instructed that while proof of a financial interest in the outcome of the scheme is not essential, if you find that the defendant has such an interest, that is a factor which you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the indictment.

As I mentioned a moment ago, before the defendants can be found to have been a conspirator, you must first find that he or she knowingly joined in the unlawful agreement or plan.  The key question, therefore, is whether the defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

It is important for you to note that the defendants' participation in the conspiracy must be

007

established by independent evidence of his or her own acts or statements and the reasonable inferences which may be drawn from them.

A defendant's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of a conspiracy, the defendant need not have known the identities of each and every other member. Nor need he or she have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details or the scope of the conspiracy in order to justify an inference of knowledge on his or her part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt. A conspirator's liability is not measured by the extent or duration of his or her participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that the defendant's mere presence at the scene of the alleged crime does not by itself make him or her a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person may know or be friendly with a criminal without being a criminal himself or herself. Mere similarity of conduct, or the fact that they may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy.

I also want to caution you that mere knowledge or acquiescence without participation in the unlawful plan is not sufficient. Moreover, the fact that the acts of a defendant without knowledge may happen to further the purposes or objectives of the conspiracy does not make the defendant a member. More is required under the law. What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy, and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for

008

the purpose of furthering the illegal undertaking. He or she thereby becomes a knowing and willing participant in the unlawful agreement; that is to say, a conspirator.

Now, let me move on to Count Two. Count Two of

3208

the indictment charges that in at least January, 1991 and continuously, beginning at least January, 1991 and continuously up to the date of the indictment, in the Eastern District of Virginia and elsewhere, the defendants Richard Tipton, Cory Johnson, James H. Roane, and Vernon Lance Thomas engaged in a Continuing Criminal Enterprise, in that those defendants committed a violation of certain narcotic laws as part of a continuing series of such violations; and that further, this series was done in some type of agreement with at least five other persons who were managed or supervised or organized by those defendants, and that from this continuing series of narcotics violations, those defendants received substantial income or resources.

You are instructed that Title 21 of the United States Code Section 848 reads in pertinent part: Any person who engaged in a Continuing Criminal Enterprise shall be guilty of an offense against the United States. The statute also provides as follows: For the purpose of Subsection (a) of this section, a person is engaged in a Continuing Criminal Enterprise if he violates any provision of this subchapter or Subchapter 2 of this chapter, the punishment for which is a felony; and two, such

3209

violation is a part of a continuing series of violations of this subchapter or Subchapter 2 of this chapter. When I talk about subchapter, it relates to narcotic felony violations, which are undertaken by such person in concert with five or more persons in respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and from which such person obtains substantial income or resources.

Now, in order to sustain its burden of proof for the crime of engaging in a Continuing Criminal Enterprise as charged in Count Two of the indictment, the government must prove the following five essential elements with respect to each individual defendant charged beyond a reasonable doubt: One, the defendant committed a felony violation of the federal narcotics laws; two, such violation was part of a continuing series of related violations of federal narcotics laws; three, the continuing series of violations was undertaken by the defendants in association or in concert with five or more other persons; four, the defendant was an organizer of

009

these five or more other persons, or occupied a management or supervisory position with respect to these five or more other persons; five, the defendant obtained substantial income or resources from the continuing series of narcotic violations.

I will now discuss in more detail and define for you the meaning of certain terms used in the Continuing Criminal Enterprise statute and in these instructions relating to the elements of the Continuing Criminal Enterprise offense charged in Count Two.

The first phrase:  "Felony violation."  The phrase "felony violation of the federal narcotics laws" as used in these instructions means the commission of any act specifically prohibited by certain sections of the United States Code for which a defendant could be imprisoned for more than one year.  The distribution or possession with intent to distribute cocaine or crack cocaine in violation of 21 U.S. Code Section 848(a)(1) is a felony violation of the narcotics laws.

What is a continuing series of violations?  A continuing series of violations means at least three violations of the federal drug laws as charged in Counts One, Three, Five, Eight, Eleven, Seventeen, Eighteen, Nineteen, Twenty-four, Twenty-five, Thirty-one, Thirty-two, and Thirty-three of the indictment before you.  It also requires a finding that those violations were connected together as a series of related or ongoing activities as distinguished from isolated and disconnected acts.

The phrase "in concert with five or more other persons" means some type of agreement or joint action, whether direct or indirect, with at least five other persons who were involved in the continuing series of narcotics violations.  The phrase "in concert with five or more other persons" does not require proof from the government that the five or more other persons actually had contact with each other or knew each other, or committed each violation together or operated together continuously at the same time.  The government is not required to prove that the defendant managed, supervised, or organized these five or more persons at the same time.  The government must prove beyond a reasonable doubt, however, that the defendant and at least five or more other persons were part of an agreement or joint action to commit the continuing series of violations of the federal narcotics laws alleged in the counts I've outlined: One, Three, Five, Eight, Eleven, Seventeen, Eighteen, Nineteen, Twenty-four, Twenty-five, Thirty-one, Thirty-two and/or

010

Thirty-three of the indictment.

The term "organizer" and the terms "supervisory position" and "position of management" are to be given their usual and ordinary meaning.  These words imply the exercise of power and authority by a person who occupies some position of management or supervision.  This person need not be the sole or only organizer, supervisor, or manager of the activities in question.

An organizer can be defined as a person who puts together a number of people engaged in separate activities and arranges them in their activities in one essentially orderly operation or enterprise.

A supervisory position can be defined as one who manages or directs or oversees the activities of others.  For purposes of this element, a person may occupy a position of organizer, a supervisory position, or any other position of management without having a direct personal contact with each of the persons he is organizing, supervising, or managing. It is not required that the defendant have personal contact with five or more subordinates in order to satisfy the organizer, supervisor, or position of management element.  It is entirely possible for a single Continuing Criminal Enterprise to have more than one organizer, supervisor, or other person in a position of management.

You are further instructed that the term "substantial income or resources" as it appears in Title 21 United States Code Section 848 is defined as money or other material resources or property received or gained directly from illegal dealings in controlled substances by the defendants.  Controlled substances are a material resource for purposes of this definition of income.

Furthermore, the term "income" does not necessarily mean net income.  That is to say, it could mean gross receipts or gross income.  It would follow that the phrase "substantial income or resources" should be construed as far as possible in an objective manner; that is to say, that the defendant would have to have  --  would have to receive what any reasonable person would consider to be considerable or ample economic benefit from engaging in a Continuing Criminal Enterprise.  In determining income, you may consider a defendant's position in the enterprise, the quantity of controlled substances involved, and the amount of money that changed hands.

Now, in a moment I'm going to begin to instruct you on the law governing those counts in the

011

indictment that involve homicide. When I do so, you will notice that defendants Richard Tipton, Cory Johnson, and James H. Roane, Jr. have been charged with two very specific, very distinct types of homicide: Killing while engaged in or in furtherance of a Continuing Criminal Enterprise in violation of Title 21 Section 841(e) of the United States Code, and killing for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity in violation of Title 18 Section 1959 of the United States Code.

The reason you are being asked to limit your deliberations to these two very specific types of killings is that you are sitting as a jury in a federal court. In criminal cases, federal courts may try a defendant only for violations of federal law. Most types of homicide, that is, murder in the first degree or the second degree, voluntary manslaughter, are crimes under state law, not federal law. And therefore, they cannot be tried by this Court.

As I am about to explain to you, if in your deliberations you find that a particular defendant has killed another person, that would not be enough for you to find that defendant guilty of a federal crime. Instead, you must be convinced beyond a reasonable doubt that each of the specific elements of a federal crime charged in the indictment has been proved by the government.

The indictment charges that defendants Richard Tipton, Cory Johnson, James Roane, Vernon Lance Thomas, and Jerry Gaiters, between January 5th of 1992 and February 19th, 1992, within the Eastern District of Virginia, while engaged in or working in furtherance of a Continuing Criminal Enterprise, intentionally killed, counseled, commanded, induced, procured, or caused the intentional killing of certain individuals.

Note however that no defendant is charged with all the murders discussed in the indictment. Specifically, the following defendants face these charges with respect to the following killings. With respect to the killing of Douglas A. Talley, the defendant, Richard Tipton, is charged. With respect to the killing of Douglas Moody, defendants Richard Tipton and James H. Roane, Jr. are charged. With respect to the killing of Peyton Maurice Johnson, defendants James H. Roane and Cory Johnson are charged. With respect to the killing of Louis Johnson, Jr., defendants James H. Roane and Cory Johnson are charged, along with defendant Vernon Lance Thomas. With respect to the killings of Bobby Long, Anthony Carter, and Dorothy Mae Armstrong,

012

defendants Richard Tipton and Cory Johnson are charged, along with defendant Jerry Gaiters.  With respect to the killings of Curtis Thorne and Linwood Chiles, defendants Richard Tipton and Cory Johnson are charged, along with defendant Vernon Lance Thomas.

Again, I emphasize that in your deliberations you must give individual consideration to each defendant with respect to each separate count charged against that defendant.  The verdict forms which will be provided to you by the Court, and which I will discuss with you in more detail in a few minutes, will list the specific charges in the indictment which you must consider with respect to each of these defendants.

Title 21 United States Code Section 848(e)(1)(A) provides in pertinent part that any person engaging in or working in furtherance of a Continuing Criminal Enterprise who intentionally kills, or counsels, commands, induces, procures, or causes the intentional killing of an individual, and such killing results, is guilty of an offense against the United States.

3217

Before you can find an individual defendant guilty of this offense, you must be convinced beyond a reasonable doubt of each of the following elements:  First, that the defendant was engaged in or working in furtherance of the continuing enterprise charged in Count Two of the indictment; second, that while the defendant was so engaged, the defendant either intentionally killed, or counseled, commanded, induced, procured, or caused the intentional killing of the individual victim named in a particular count; and three, that the killing of that victim actually resulted.

The indictment charges that defendants Richard Tipton, Cory Johnson, James H. Roane, Jr. and Vernon Lance Thomas, and Jerry Gaiters, and Sterling Hardy, between January 5th, 1992 and February 19th, 1992, within the Eastern District of Virginia, murdered or maimed certain individuals as consideration for the receipt of or as consideration for a promise or agreement to pay anything of pecuniary value and engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

3218

Now, this is the 1959 counts.  These are the 1959 counts.  They are Four, Seven, Ten, Thirteen, Fourteen, Sixteen, Twenty-one, Twenty-two, Twenty-three, Twenty-seven, Twenty-eight,

013

Twenty-nine, and Thirty.  Again, however, no single defendant is charged with all of the killings and maimings discussed in the indictment.

Specifically, the following defendants face these charges with respect to the following killings and maimings:  With respect to the killing of Douglas A. Talley, the defendant Richard Tipton is charged.  With respect to the killing of Douglas Moody, defendants Richard Tipton and James H. Roane, Jr. are charged.  With respect to the killing of Peyton Maurice Johnson, defendants James H. Roane and Cory Johnson are charged.  With respect to the killing of Louis J. Johnson, Jr., defendants James H. Roane, and Cory Johnson are charged, along with defendant Vernon Lance Thomas.  With respect to the killing of Torrick Brown, defendants Richard Tipton, James H. Roane, Jr., and Cory Johnson are charged, along with defendants Vernon Lance Thomas and Sterling Hardy.

With respect to the maiming of Martha McCoy, defendants Richard Tipton, James H. Roane, Jr., and Cory Johnson are charged, along with defendants

3219

Vernon Lance Thomas and Sterling Hardy.  With respect to the killings of Bobby Long, Anthony Carter, and Dorothy Mae Armstrong, the defendants Richard Tipton and Cory Johnson are charged, along with defendant Jerry Gaiters.  With respect to the killings of Curtis Thorne and Linwood Chiles, and the maiming of Priscilla Greene and Gwendolyn Greene, defendants Richard Tipton and Cory Johnson are charged, along with defendant Vernon Lance Thomas.

Again, I emphasize that in your deliberations you must give individual consideration to each defendant with respect to each count charged against that defendant.  The verdict forms, as I mentioned, will assist you in this respect.

You are instructed that Title 18 United States Code Section 1959 reads in pertinent part as follows:  Whoever, as consideration for the receipt of or as consideration for a promise or agreement to pay anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a

3220

crime of violence against any individual in violation of the laws of any state or the United States, or attempts or conspires to do so, is guilty of an offense against the United States.

To find a defendant guilty under this statute, you must find that the government has proven each of

014

the following elements beyond a reasonable doubt: First, that a racketeering activity actually did exist; second, that the racketeering activity affected interstate commerce; third, that an individual defendant did knowingly and intentionally commit or conspire to commit the crime charged in the particular count under consideration.  Fourth, that the defendant acted for the purpose of gaining entrance to the racketeering activity or for the purpose of maintaining or increasing his position in the racketeering enterprise; or that the defendant received or was promised that he would receive something of pecuniary value from the racketeering enterprise in exchange for his acts.

I will now explain and define for you the meaning of certain terms found in the statute and within these instructions relating to the elements of the 1959 murders referred to as violent crimes in aid of racketeering activity.

3221

As I've outlined for you, those offenses are in Counts Four, Seven, Ten, Thirteen, Fourteen, Sixteen, Twenty-one, Twenty-two, Twenty-three, Twenty-seven, Twenty-eight, Twenty-nine, and Thirty of the indictment.

"Racketeering activity" means any act or threat involving murder or dealing in narcotic or other dangerous drugs.  An enterprise includes any group of individuals associated in fact which is engaged in or the activities of which affect interstate commerce. The phrase "anything of pecuniary value" means anything of value in the form of money or negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage.

It is charged in the indictment that within the Eastern District of Virginia, between on or about January 13th, 1992 and on or about February 19th, 1992, the defendants Richard Tipton, Cory Johnson, James H. Roane, Jr., Vernon Lance Thomas, and Sterling Hardy used a firearm during and in relationship  --  or in relation to the commission of a crime of violence or a drug-trafficking crime.

Now again, as I mentioned with respect to some of the charges I discussed earlier, no single

3222

defendant is charged in each of these counts.  The verdict form will assist you in keeping track of which defendants are charged in which counts and in giving individual consideration to each defendant for each count against him or her.

Let me read the firearms statute.  And the firearms violations are contained in Counts Six, Nine, Twelve, Fifteen, Twenty, and Twenty-six.  Title

18 United States Code Section 924(c)(1) provides in pertinent part:  Whoever during and in  relation to any crime of violence or drug trafficking crime for which he may be prosecuted in a Court of the United States uses or carries a firearm shall be guilty of a crime against the United States.

In order to sustain its burden of proof of the crime of using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime as charged in Counts Six, Nine, Twelve, Fifteen, Twenty, and Twenty-six of the indictment, the government must prove the following two essential elements beyond a reasonable doubt:  One, the defendant committed the crime as charged in the indictment; and two, during and in relation to the commission of that crime, the defendant knowingly used or carried a firearm.

The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, the attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense.

The term "drug trafficking crime" means an offense that is a felony and involves the distribution, manufacture, or importation of any controlled substances, or the conspiracy to distribute, import, or manufacture controlled substances.  The offenses alleged in Counts Three, Four, Five, Seven, Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-one, Twenty-two, Twenty-three, Twenty-four, Twenty-five, Twenty-seven, Twenty-eight, Twenty-nine, Thirty, Thirty-one, Thirty-two, and Thirty-three are crimes of violence or drug trafficking crimes.

Title 18 United States Code Section 92(1)(a)(3) defines firearm is including any weapon which will or is designed to, or may readily be converted to expel a projectile by the action of an explosive, the frame or receiver of any such weapon.  You need not find that the firearm was loaded or that it was operable at the time of the offense.

The phrase "uses or carries a firearm" means a firearm or firearms available to assist or aid in the commission of a crime of violence or a drug-trafficking crime charged in the indictment.

In determining whether a defendant used or carried a firearm, you may consider all of the factors received in evidence in the case, including the nature of the underlying crime of violence or drug-trafficking crime alleged:  the proximity of the

016

defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.

The government is not required to show that the defendant actually displayed or fired the weapon. The government is required, however, to prove beyond a reasonable doubt that the firearm was in the defendant's possession or under the defendant's control at the time that a crime of violence or a drug-trafficking crime was committed.

It is charged in the indictment that on or about January 15th, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, Cory Johnson, did knowingly and intentionally distribute a Schedule II narcotic controlled substance; that is, a mixture and substance described in Title 21 United States Code Section 841(b)(1)(A)(ii), which contains cocaine base commonly known as crack, or cook-'em-up, in violation of Title 21 United States Code Section 841(a)(1).

The prosecution on this count is based on a statute which is federal law, Title 11 U.S. Code Section 846, and Section 841(a)(1), which reads in pertinent part as follows:  It shall be unlawful for any person knowingly or intentionally to distribute a controlled substance.

In order to sustain its burden of proof for the crime of distribution of a controlled substance as charged in Count Thirty-one of the indictment, the government must prove the following two essential elements beyond a reasonable doubt:  The defendant, Cory Johnson, knowingly and intentionally distributed the controlled substance, crack cocaine described in the indictment; two, at the time of such distribution, the defendant knew that the substance distributed was crack cocaine, a controlled substance.

The term "to distribute" as used in these instructions means to deliver or to transfer possession or control of something from one person to another.  The term "to distribute" includes the sale of something by one person to another.  You are instructed as a matter of law that crack cocaine is a controlled substance.  It is solely for the jury, however, to determine whether or not the government has proved beyond a reasonable doubt that the defendant distributed a substance which was crack cocaine.

The evidence received in this case relating to Counts Thirty-two and Thirty-three need not prove the actual amount of the controlled substance that was

part of the alleged transaction or the exact amount of the controlled substance alleged in the indictment as distributed by the defendant. The government must prove beyond a reasonable doubt, however, that a measurable amount of the controlled substance was in fact knowingly and intentionally distributed by the defendant.

Count Thirty-two reads as follows: It is charged in the indictment that on or about February 2nd, 1992 at Richmond, Virginia, in the Eastern District of Virginia, defendants Richard Tipton, Cory Johnson, James H. Roane, Jr., Sterling Hardy, Vernon Lance Thomas, and Jerry Gaiters did knowingly and intentionally possess with intent to distribute a Schedule II narcotic controlled substance, that is, a mixture and substance described in Title 21 United States Code Section 841(a)(1)(ii) which contains cocaine base commonly known as crack or cook-'em-up in violation of Title 21 United States Code Section 841(a)(1). And Title 18 United States Code Section 2.

It is charged in the indictment in Count Thirty-three the following: That on or about April 10th, 1992 at Richmond, Virginia, in the Eastern District of Virginia, the defendant, Richard Tipton, did knowingly and intentionally possess with intent to distribute a Schedule II narcotic controlled substance; that is, more than 50 grams of a mixture and substance described in Title 21 U.S. Code Section 841(b)(1)(A)(ii), which contains cocaine base commonly known as crack or cook-'em-up, in violation of Title 21 United States Code Section 841(a)(1), and Title 18 United States Code Section 2.

Section 841(a)(1) of Title 21 of the United States Code provides in pertinent part that it shall be unlawful for any person knowingly or intentionally to possess with intent to distribute a controlled substance. In order to sustain its burden of proof for the crime of possession of a controlled substance with intent to distribute that substance as charged in Counts Thirty-two and Thirty-three of the indictment, the government must prove the following three essential elements beyond a reasonable doubt: The defendant possessed the controlled substance described in the indictment; the defendant knew that the substance was a controlled substance; and the defendant intended to distribute this controlled substance.

The law permits the jury in proper circumstances to infer intent to distribute from the quantity of the substance possessed, and/or the manner in which it is packaged. However, the ultimate question of

018

intent to distribute should be resolved by the jury upon all of the evidence in the case.  The law recognizes two kinds of possession:  actual possession and constructive possession.  A person who knowingly had direct physical control over a thing at a given time is then in actual possession of it.  A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

3229

The law recognizes also that possession may be sole or joint.  If one person alone has actual or constructive possession of a thing, possession is sole.  If two or more persons share actual or constructive possession of a thing, possession is joint.  You may find that the element of possession as that term is used in these instructions is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged.  The law recognizes that ordinarily, anything a person can do for himself may also be accomplished by that person through direction of another person as his agent or her agent, or by acting in concert with or under the direction of another person or persons in a joint effort or enterprise.  So if another person is acting under the direction of the defendant, or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conducts of such other persons, just as though the defendant had committed

3230

the acts or engaged in such conduct.  Notice, however, that before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participated in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons,

and that the defendant voluntarily participated in its commission with the intent to violate the law.

You will note that the indictment charges that the offense or offenses were committed on a certain date.  The proof need not establish with certainty the exact date of the alleged offense.  It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

The word "knowingly" as that term has been used from time to time in these instructions means that the act was done voluntarily and intentionally and not because of a mistake or accident.  The word "willfully" as that term has been used from time to time in these instructions means that the act was committed voluntarily and purposefully with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

A separate crime or offense is charged against one or more of the defendants in each count of the indictment.  Each offense and the evidence pertaining to it should be considered separately.  Also, the case of each defendant should be considered separately and individually.  The fact that you may find one or more of the accused guilty or not guilty of any offenses charged should not control your verdict as to any other offense or any other defendant.  I caution you, members of the jury, that you are here to determine the guilt or innocence of the accused from the evidence in the case.  The defendant is not on trial for any act or conduct or offense not alleged in the indictment.  Neither are you called upon to return a verdict as to the guilt or innocence of any other person or persons not on trial as a defendant in this case.

Also, the punishment provided by law for the offenses charged in the indictment should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused.

Any verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree thereto.  In other words, your verdict must be unanimous.  It is your duty as jurors to consult with one another and to deliberate in an effort to reach agreement if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous.  But do not surrender your honest conviction as to the weight of the evidence or the effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

Remember at all times you are not partisans. You are judges, judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

Now, upon retiring to the jury room, you should first select one of your number to act as your Foreperson, who will preside over your deliberations and will be your spokesperson here in open Court.

Now, I have prepared verdict forms for you, and I need to give you some explanation in that regard. There is a verdict form that relates to each individual defendant.  And the way you can tell which verdict form relates to which defendant, at the top you will see the style of the case and that defendant's name.  The United States of America versus Richard Tipton.  And then you will have the verdict form.  Now, the verdict forms will vary. They are different because each defendant is charged differently under the indictment.  But there is one thing that I want to make clear, and this will relate to the verdict forms of Mr. Tipton, Mr. Johnson, and Mr. Roane.

The first thing you will do is deal with Count One, which is the conspiracy.  It says, "We the jury find as follows on Count One, which is conspiracy to distribute controlled substance:"  And then there will be a line where you will write in guilty or not guilty.  When you are finished with Count One, you move to Count Two.  Now, Count Two is the Continuing Criminal Enterprise count.  And when you go down under Count Two, the first thing you see will be a question.  And the question is as follows:  "Do you find that the government has proven beyond a reasonable doubt that a Continuing Criminal Enterprise existed as charged in the indictment?" And there is a line, yes or no.  You have got to answer that question first before you go any further.  You have got to answer this question.  And it says, as I say, this relates to both Mr. Johnson and Mr. Roane, that question is presented, and you have to answer that question on each verdict form.

If you indicated above that a Continuing Criminal Enterprise did not exist, you must find the defendant, Richard Tipton, Cory Johnson, or James H. Roane, as the case may be, not guilty as to Count

Two.  If you indicated that a Continuing Criminal Enterprise did exist, then you must go further and now determine whether the defendant, Richard Tipton, is guilty or not guilty of the crime of engaging in that Continuing Criminal Enterprise as charged in Count Two, and you would enter your finding below, guilty or not guilty.  And you have to do this as to Mr. Johnson and as to Mr. Roane.  You see, it is a process.  Answer the question:  Was there a Continuing Criminal Enterprise?  If no, then obviously no one can be guilty of engaging in that Continuing Criminal Enterprise, so you would have to be not guilty as to Count Two.  If yes, it doesn't follow then that they are automatically guilty of it.  You have to then decide is this defendant guilty of engaging in the continuing enterprise you have found.  Does everybody understand?

(No response.)

Then as you go through the indictment, and you get to the charges which allege killings of certain individuals while engaged in or working in furtherance of a Continuing Criminal Enterprise, you will see a parenthesis after each one of those charges.  For instance, this is Mr. Tipton.  Count Three, the killing of Douglas Talley while engaged in or working in furtherance of a Continuing Criminal Enterprise.  Beneath that is a parenthetical to remind you.  If you indicated in response to the question set forth under Count Two above that a Continuing Criminal Enterprise did not exist, you must find the defendant not guilty as to this count.  Again, it follows as the night does day.  If you all do not find a Continuing Criminal Enterprise, then you cannot find a defendant guilty of engaging in killing somebody while engaging in or working in a Continuing Criminal Enterprise.

The other counts are self-explanatory as you go through them.  The 1959 count, which I've described to you in detail, the elements there, you would consider those independently, as well as the drug counts, the firearm counts.  Consider those independently based on the evidence.  But remember that the Continuing Criminal Enterprise count is tied to the allegations of murder while engaged in or working in a Continuing Criminal Enterprise.

You go through each individual defendant, through their verdict form, and when you have completed it the Foreperson will sign the form and date it.  And you will have done your job as to that defendant.  And then you will go to the next defendant and you would go through the same process.  Make your decisions.  And you do that as it relates

022

to each individual defendant.

When you have reached unanimous agreement and dealt with all the defendants, you simply let us know.  You will just have to knock on the door and the Bailiff, Marshal, will be standing there.

If you have some question during the course of your deliberations, do the same thing.  Just knock on the door.  We want you to write your question down and have your Foreperson sign the question.  Knock on the door, give it to the Marshal, and he will bring it to me.  If it is a question that I can't answer, and sometimes I can't, I just can't answer it.  You may ask me something about the evidence.  You heard it.  You are going to have to determine what the evidence is.  But if there is something technical or something that you want to know from me, I will usually bring you back in and then give you the answer as best I can in open Court from the bench.

Now, if during your deliberations you all have some question and need to come out here, please don't tell me how you stand as it relates to any defendant or any count.  We don't want to hear from you until you have a unanimous verdict.  If you come out here and you ask a question and you come out and the Foreperson stands up and says, "Judge, we are six to six on this," that would be tragic because it would result in a mistrial.  We don't want to hear that from you.  So don't do that.

Now, the exhibits will be going out with you. They will follow momentarily.  Like I said, your first order of business, just select your Foreperson.  Lunch should be waiting on you, probably.  And you all can eat your lunch.  The exhibits will follow.  Take your time.  You have as much time or as little time as you wish.  It is up to you, whatever you need to do justice to this trial and the parties.

All right, counsel, any objections other than those previously stated?

MR. VICK:  May we approach?

(At Bench.)

MR. VICK:  I understood the way you read the verdict form, I thought it might be misleading. They need to find, one, CCE existed.  If they find that the CCE existed then there is almost a two-part second question.  Two, were these people charged, Roane, Tipton, or Johnson, leaders of the CCE, organizers, managers, or supervisors of the CCE, then they go to two.  But the way it is written, when they say engaged in, they could indeed be found not guilty of Count Two but still be found guilty of the murders if, as I argued, there was a CCE, "Light" was the

head of it, the organizer, supervisor, or manager.

The guilt would still follow under the other counts. The language in the second part said "engaged in." That's not really what Count Two is about. That's what the other counts are about.

And there is one other thing, my oversight as to Count Thirty-one. We charged, just like we did in Count Thirty, might be Thirty-two, we charged more than 50 grams. It will be less than 50 grams so it needs to be deleted. Just drug distribution.

MR. BAUGH: I thought the Court did.

MR. VICK: That was one count. There is also a second one.

MR. BAUGH: Your Honor, in light of the argument of the United States, I have prepared a multiple instruction. I'm concerned about that. We have asked for that because of the New York Boyz thing. Because there might be a question for the jury whether the New York Boyz activity led to this conspiracy. The United States argued that yesterday. I think we would ask for that.

THE COURT: I think it is clear enough.

MR. VICK: My concern as to Count Two, they need to be -- to be found guilty of Count Two, they need to be found to be managers, supervisors, or organizers.

THE COURT: I don't know how much more I can say about that.

MR. VICK: Yes, sir. But my concern is not with the jury instruction, only with the verdict form. The verdict form says they need to be found guilty of Count Two only to have been engaged in. Am I making my distinction clear?

MR. BAUGH: On behalf of defendant Roane, I think you are correct. It seems to apply to Count Two if a CCE existed.

MR. VICK: Our argument is that they could find a CCE, find them not guilty of Count Two, but still find them guilty of the murder counts in furtherance of the CCE.

THE COURT: No, I explained that to them. I didn't put all the elements in the verdict form. I'm going to leave it alone.

MR. VICK: Okay. Could I show the Court the other --

THE COURT: Thirty-two?

MR. VICK: The April 10th count. That should be "less than." We didn't prove the 50 grams, so it should be just plain possession.

MR. GEARY: I offer Number 18 in regard to the five or more persons.

024

THE COURT:  Oh, sure.

(Court perusing instruction offered by Mr. Baugh.)

MR. VICK:  There has been no evidence of multiple conspiracies here.  There has been argument by counsel, but evidence of only one conspiracy.  Certainly there has been no evidence of any conspiracy with any other goal other than murder and distribution of drugs.

MR. WHITE:  On behalf of Mr. Tipton, Your Honor, we would suggest that the New Jersey information is separate as well as the separate Central Gardens information is separate.  That's for the jury.

THE COURT:  You can suggest all you want.  I'm trying to recollect.  And what's in evidence, separate conspiracy?

MR. BAUGH:  I can tell you this.  The United States cannot put my client in New Jersey, period, dot.

MR. WHITE:  That argument could be made in regard to the Central Gardens period before Mr. Roane was arrested and also surrounding the Sandy Lane stuff.  There was no violence alleged in connection with that.

THE COURT:  I'm not going to give it.  Your objection is noted.

MR. BAUGH:  May I stick it in as an exhibit?

MR. WHITE:  We object on behalf of defendant Tipton as well.

THE COURT:  All right.

(In Open Court.)

All right, let me say one other thing about Count Thirty-three.  The indictment will read as follows when you receive it:  The Grand Jury charges that on or about April 10th, 1992 at Richmond, Virginia in the Eastern District of Virginia, the defendant Richard Tipton did knowingly and intentionally possess with intent to distribute a Schedule II narcotic controlled substance, that is, a mixture and substance described in Title 21 U.S. Code Section 841(b)(1)(A)(ii) which contains cocaine base, commonly known as crack or cook-'em-up.

All right.  As I indicated to you, the alternates, the other day, we will have to excuse you for now.  You will be outside of this process during the deliberations.  We will, if necessary, call you back and have you sit with us and be with us during any penalty or sentencing phase that might be required.  So we can't obviously give you any estimate as to when these deliberations will be

025

over.  We will simply call you and give you a time to come when we know what that time will be.

If you would be excused now, I think we have lunch for you.  Go get your lunch out of there and then be excused until we call you again.  Thank you very, very much for your participation so far, and I'll thank you in advance in case we do need you again.  Thank you so much.  You all can be excused.

(The alternate jurors left the courtroom.)

Do we have the video in the jury room?

MR. VICK:  The TV is right here.  It just simply needs to be plugged in.

THE COURT:  Let's go ahead and do that.

(Mr. Vick left the courtroom with television monitor.)

All right, we will excuse you now to begin your deliberations.  Elect your Foreperson, have your lunch, and get to work.  Everyone remain seated while the jury leaves the courtroom.)

(The jury left the courtroom.)

Mr. Marshal, you can remove the defendants.

(The defendants were removed from the courtroom.)

3244

MR. VICK:  I don't know how close the Court wants us to stay.  Can we go back to our offices?

THE COURT:  Give us a number where we can reach you and you can get here within minutes.  We will be in recess.

(Recess to await call of the jury taken at 1:25 p.m.)

(Court was reconvened at 5:15 p.m.)

THE COURT:  All right.  Let's bring in the jury.

(The jury entered the courtroom.)

All right.  I'm going to send you home now.  You all have had a long day.  And I'd like for you to come back tomorrow at 9:30 unless that's a problem for somebody, so you can get an early fresh start in the morning.  As I've indicated to you over and over again, I really want to emphasize this now, do not discuss this case with anyone and don't allow anyone to discuss it with you.  Don't review any newspaper, TV, radio items related to this case.

In the morning when you come in at 9:30, we have to do it this way.  Don't start deliberating as soon as you get grouped together.  I have to bring you in here and then send you right back out to begin your deliberations.  So wait until I do that.  You all

3245

have a good evening.  Everyone remain seated until the jury leaves the courtroom.

(The jury left the courtroom.)

All right.  You can remove the defendants.

026

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA



Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3. 92 CR 68 |
| | ) | |
| RICHARD TIPTON aka Whittey | ) | 21 USC § 846 |
| (Counts 1-7, 11-30, 32-33) | ) | Conspiracy |
| | ) | (Count 1) |
| CORY JOHNSON aka "O" aka "CO" | ) | |
| (Counts 1, 2, 8-32) | ) | 21 USC § 848 |
| | ) | Continuing Criminal Enterprise |
| JAMES H. ROANE, JR., aka "J.R." | ) | (Count 2) |
| (Counts 1, 2, 5-16, 32) | ) | |
| | ) | 21 USC § 848(e)(1)(A) & 18 USC § 2 |
| LANCE THOMAS aka Anthony Mack | ) | Murder in Furtherance of CCE |
| aka "V" | ) | (Counts 3,5,8,11,17,18,19,24,25) |
| (Counts 1, 2, 14-16, 32) | ) | |
| | ) | 18 USC § 924(c) |
| JERRY R. GAITERS | ) | Use of Firearm in Relation to Crime of |
| (Counts 1, 17-23, 32) | ) | Violence or Drug Trafficking Crime |
| | ) | (Counts 6,9,12,15,20,26) |
| STERLING HARDY | ) | |
| (Counts 1, 14-16, 32) | ) | 18 USC §§ 1959 & 2 |
| | ) | Violent Crimes in Aid of Racketeering |
| SANDRA REAVIS | ) | (Counts 4,7,10,13,14,16,21-23,27-30) |
| (Count 1) | ) | |
| | ) | 21 USC § 841(a)(1) |
| | ) | Distribution of Crack |
| | ) | (Count 31) |
| | ) | |
| | ) | 21 USC § 841(a)(1) & 18 USC § 2 |
| | ) | Possession w/Intent to Distribute Crack |
| | ) | (Counts 32-33) |

APRIL 1992 TERM - At Richmond

## COUNT ONE

THE GRAND JURY CHARGES that from on or about January, 1989, the exact date being unknown to the grand jury, and continuously thereafter up to and including the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants, RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O," aka 'CO", LANCE THOMAS, aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", JERRY GAITERS, STERLING HARDY, and SANDRA REAVIS, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each other and with other persons, both known and unknown to the grand jury to commit the following offenses against the United States of America:

1. To knowingly, intentionally, and unlawfully possess with the intent to distribute, and to distribute, a Schedule II narcotic controlled substance, that is, a least fifty (50) grams or more of a mixture or substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, in violation of Title 21, United States Code, Section 841(a)(1).

## WAYS, MANNERS, AND MEANS OF THE CONSPIRACY

The ways, manners, and means by which the conspirators carried out the purpose of the conspiracy includes, but are not limited to, the following:

1. It was part of the conspiracy that defendants and co-conspirators would cause cocaine to be purchased in New York City, and elsewhere, and transported to Richmond, Virginia, where the cocaine was to be distributed.

2

028

2. It was further part of the conspiracy that once the defendants and co-defendants would receive cocaine in Richmond, Virginia, they would cook the cocaine in such a way to make it cocaine base (crack or cook-em-up), which cocaine was intended to be distributed on the streets of Richmond, Virginia.

3. It was further part of the conspiracy that the defendants and co-defendants would induce other individuals to work for them selling the crack cocaine on the streets of Richmond, Virginia.

4. It was further part of the conspiracy to engage in a pattern of violent activity, including murder, assaults, and threats of violence to further the goals of the conspiracy. To that end, members of the conspiracy bought, possessed, and transferred firearms, which firearms were used in their violent activities.

## OVERT ACTS

In furtherance of this conspiracy, and to bring about the objects and goals of the conspiracy, the defendants, co-conspirators, and unindicted co-conspirators committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

1. In or about December, 1991, defendants RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a cocaine debt.

2. On or about January 5, 1992, RICHARD TIPTON, aka Whittey, murdered Douglas A. Talley.

3

3.    On or about January 13, 1992, RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R." murdered Douglas Moody.

4.    On or about January 13, 1992, an individual known to the grand jury, disposed of the knife used by JAMES ROANE, JR., aka "J.R.", to kill Doug Moody.

5.    On or about January 14, 1992, members of the conspiracy caused an individual known to the grand jury to purchase one Glock handgun and two Tech 9mm handguns from Southern Gun World in Richmond, Virginia.

6.    On or about January 14, 1992, JAMES ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O," aka "CO", murdered Peyton Maurice Johnson.

7.    On or about January 15, 1992, CORY JOHNSON, aka "O," aka "CO", distributed a certain amount of cocaine base ("crack" or "cook em up") in Richmond, Virginia.

8.    On or about January 29, 1992, RICHARD TIPTON aka Whittey, JAMES ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", murdered Louis J. Johnson, Jr., in Richmond, Virginia.

9.    On or about January 31, 1992, CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a drug debt, and solicited that individual to kill Dorothy Armstrong.

10.    On or about February 1, 1992, JAMES ROANE, JR., aka "J.R.", RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and STERLING HARDY murdered Torrick Brown and shot Martha McCoy in Richmond, Virginia.

4

11.    On or about February 1, 1992, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", ~~STERLING HARDY~~, and JERRY GAITERS murdered Bobby Long, Anthony Carter, and Dorothy Mae Armstrong aka Mousey, in Richmond, Virginia.

12.    On or about February 2, 1992, defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, LANCE THOMAS,aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", and JERRY GAITERS possessed with the intent to distribute crack cocaine.

13.    On or about February 13, 1992, STERLING HARDY solicited the murders of certain individuals.

14.    On or about February 19, 1992, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", murdered Curtis Thorne, Linwood Chiles, and shot, seriously wounding, Gwendolyn Green and Priscilla Green, in Richmond, Virginia.

15.    On or about April 10, 1992, RICHARD TIPTON, aka Whittey, possessed with the intent to distribute crack cocaine in Richmond, Virginia.

(In violation of Title 21, United States Code, Section 846).


## COUNT TWO

THE GRAND JURY FURTHER CHARGES that from at least January, 1991, and continuously thereafter up to and including the date of the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and LANCE THOMAS, aka Anthony Mack, aka "V," unlawfully, intentionally, and

5

knowingly, did engage in a Continuing Criminal Enterprise, that is, they did viola e Title 21, United States Code, Section 841 and 846, including, but not limited to, those violations alleged in the instant indictment, which are realleged and incorporated by reference herein, and did commit other violations of said statutes, which violations were part of a continuing series of violations of said statutes undertaken by RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and LANCE THOMAS, aka Anthony Mack, aka "V," in concert with a: least five other persons with respect to whom they occupied positions of organizer, supervisor, and manager, and from which continuing series of violations the defendant, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and LANCE THOMAS, aka Anthony Mack, aka "V," obtained substantial income and resources.

(In violation of Title 21, United States Code, Section 848.)

## COUNT THREE

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant RICHARD TIPTON aka Whittey, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Douglas A. Talley, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

6

## COUNT FOUR

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, RICHARD TIPTON aka Whittey, did knowingly, intentionally, and unlawfully cause the murder of Douglas Talley, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIVE

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Douglas Moody, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

7

033

## COUNT SIX

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is, a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Five and Seven of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT SEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, intentionally, and unlawfully cause the murder of Douglas Moody, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

8

034

## COUNT EIGHT

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Peyton Maurice Johnson, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINE

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Eight and Ten of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

9

035

## COUNT TEN

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, JAMES H. ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Peyton Maurice Johnson, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT ELEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka *Lance Thomas AKA Anthony Mack aka "V"* "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Louis J. Johnson, Jr., and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

10

## COUNT TWELVE

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka *LANCE THOMAS AKA ANTHONY MACK AKA "V"* *C·Z* "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Eleven and Thirteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT THIRTEEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka *LANCE THOMAS AKA ANTHONY MACK AKA "V"* *(9Z)* "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Louis J. Johnson, Jr., as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

11

037

## COUNT FOURTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", LANCE THOMAS, aka Anthony Mack, aka "V," and STERLING HARDY, did knowingly, intentionally, and unlawfully cause the murder of Torrick Brown, Jr., as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIFTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", LANCE THOMAS, aka Anthony Mack, aka "V," and STERLING HARDY, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Fourteen and Sixteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

12

## COUNT SIXTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", LANCE THOMAS, aka Anthony Mack, aka "V," and STERLING HARDY, did knowingly, intentionally, and unlawfully commit assault resulting in serious bodily injury to Martha McCoy, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT SEVENTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Bobby Long, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

13

## COUNT EIGHTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Anthony Carter, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINETEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Dorothy Mae Armstrong, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

14

040

## COUNT TWENTY

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Seventeen, Eighteen & Nineteen and Twenty-One through Twenty-Four of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Bobby Long, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

15

## COUNT TWENTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Anthony Carter, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Dorothy Mae Armstrong, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

16

042

## COUNT TWENTY-FOUR

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Curtis Thorne, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY-FIVE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Linwood Chiles, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY-SIX

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Twenty-Four, Twenty-Five and Twenty-Seven through Thirty of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-SEVEN

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Curtis Thorne, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

18

044

## COUNT TWENTY-EIGHT

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Linwood Chiles, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-NINE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the maiming of Priscilla Green, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

19

045

## COUNT THIRTY

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the maiming of Gwendolyn Green, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT THIRTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about January 15, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, CORY JOHNSON, aka "O," aka "CO", did knowingly and intentionally distribute a Schedule II narcotic controlled substance, that is, a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

20

## COUNT THIRTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 2, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, LANCE THOMAS, aka Anthony Mack, aka "V", JAMES ROANE, JR., aka "J.F.", and JERRY GAITERS, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## COUNT THIRTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about April 10, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section

21

841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

A TRUE BILL:

_____
FOREPERSON

RICHARD CULLEN
UNITED STATES ATTORNEY

By:

_____
Howard C. Vick, Jr.
Assistant United States Attorney

_____
William Parcell
Special Assistant U.S. Attorney

22

048

FORM DBD-34
JUN. 85

No. _ _ _ _ _ _ _ _ _ _ _

# UNITED STATES DISTRICT COURT

_EASTERN_ _ _ _ _ _ _     *District of* _ _ VIRGINIA _ _ _ _ _ _ _

_ _ _ _ RICHMOND _ _ _ _ _ _ _ _ _     *Division*

## THE UNITED STATES OF AMERICA

*vs.*

_ RICHARD TIPTON aka Whittey, et al _ _ _ _ _ _ _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

# INDICTMENT

In violation of 21 USC § 846 – Conspiracy
In violation of 21 USC § 848 – Continuing Criminal Enterprise
In violation of 21 USC § 848(e)(1)(A) & 18 USC § 2 – Murder in Furtherance of CCE
In violation of 18 USC § 924(c) – Use of Firearm in Relation to Crime of Violence or Drug Trafficking Crime
In violation of 18 USC §§ 1959 & 2 – Violent Crimes in Aid of Racketeering
In violation of 21 USC § 841(a)(1) – Distribution of Crack
In violation of 21 USC § 841(a)(1) & 18 USC § 2 – Possession w/Intent to Distribute Crack

*A true bill,*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                                      *Foreman*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*

*of* _ _ _ _ _ _ _ _ _ _ _ *A.D. 19* _ _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                                      *Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

UNITED STATES OF AMERICA          )
                                  )
v.                                )     **Criminal Case No.** 3:92CR68-03
                                  )
JAMES H. ROANE, JR.               )
   a.k.a. "J.R."                  )
                                  )



### VERDICT

WE, THE JURY, FIND as follows:

**Count 1:**     Conspiracy to Distribute Controlled Substance

_____Guilty_____
(Guilty or Not Guilty)

**Count 2:**     Continuing Criminal Enterprise

**Question:**  Do you find that the government has proven, beyond a reasonable doubt, that a Continuing Criminal Enterprise existed as charged in the indictment?

Yes: ___Yes___          No: _____

If you indicated above that a Continuing Criminal Enterprise did **not** exist, you must find the defendant, JAMES H. ROANE, JR., Not Guilty as to Count 2.

If you indicated that a Continuing Criminal Enterprise **did** exist, you must now determine whether defendant JAMES H. ROANE, JR. is Guilty or Not Guilty of the crime of engaging in that continuing criminal enterprise as charged in Count 2, and enter your finding below:

_____Guilty_____
(Guilty or Not Guilty)

050

Defendant JAMES H. ROANE, JR. is not charged in Counts 3-4 of the indictment.

Count 5:            Killing of Douglas Moody while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

_____Guilty_____
(Guilty or Not Guilty)

Count 6:            Use of Firearm in Relation to Killing of Douglas Moody

_____Guilty_____
(Guilty or Not Guilty)

Count 7:            Killing of Douglas Moody to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

Count 8:            Killing of Peyton Maurice Johnson while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

_____Guilty_____
(Guilty or Not Guilty)

Count 9:            Use of Firearm in Relation to Killing of Peyton Maurice Johnson

_____Guilty_____
(Guilty or Not Guilty)

051

Count 10:    Killing of Peyton Maurice Johnson to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

Count 11:    Killing of Louis J. Johnson, Jr., while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

_____Guilty_____
(Guilty or Not Guilty)

Count 12:    Use of Firearm in Relation to Killing of Louis J. Johnson, Jr.

_____Guilty_____
(Guilty or Not Guilty)

Count 13:    Killing of Louis J. Johnson, Jr., to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

Count 14:    Killing of Torrick Brown, Jr., to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

Count 15:    Use of Firearm in Relation to Killing of Torrick Brown, Jr., and Maiming of Martha McCoy

_____Guilty_____
(Guilty or Not Guilty)

Count 16:       Maiming of Martha McCoy to Maintain or Increase Position in Racketeering Enterprise

_____ Guilty _____
(Guilty or Not Guilty)

Defendant JAMES H. ROANE, JR., is not charged in Counts 17-31 of the indictment.

Count 32:       Possession of Controlled Substance with Intent to Distribute  (on or about 2/2/92)

_____ Guilty _____
(Guilty or Not Guilty)

Defendant JAMES H. ROANE, JR. is not charged in Count 33 of the indictment.

SO SAY WE ALL.

_____  _____
FOREPERSON'S SIGNATURE                      2/3/93
                                                             DATE

053