# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

_____

THE UNITED STATES OF AMERICA          :

                                                                  :

      v.                                                  :          Crim No. 3:92CR68-03

                                                                  :

JAMES H. ROANE, JR.                                 :

_____

## AMENDED MOTION TO VACATE CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255

James H. Roane, Jr., through counsel, respectfully moves this Court to vacate the convictions entered against him on Counts 6, 9, 12, and 15 of the Second Superseding Indictment under which he was charged, and their attendant sentences,[1] pursuant to 28 U.S.C. § 2255 and in light of the Supreme Court's recent decision in *United States v. Davis,* 139 S.Ct. 2319 (2019). In support of this motion, Mr. Roane states the following:

## INTRODUCTION

Mr. Roane was convicted, *inter alia*, of four counts of using a firearm in the commission of a crime of violence or drug trafficking crime. *See* 18 U.S.C. § 924(c). Specifically, three counts—Counts 6, 9, and 12—alleged use of a firearm in the course of predicate offenses charged under 18 U.S.C. § 1959(a) and 21 U.S.C. § 848(e)(1)(A). Count 15 alleged use of a firearm in the course of predicate offenses charged under 18 U.S.C. § 1959(a).

Prior to the Supreme Court's decision in *Davis,* in order for a predicate offense to qualify as a crime of violence, the underlying crime had to fall under one of § 924(c)'s two definitions: §

---

[1] Mr. Roane was sentenced to five years on Count 6 and to twenty years, consecutive, on each of counts 9, 12, and 15.

924(c)(3)(A)'s "force clause" or under § 924(c)(3)(B)'s "residual clause." In *Davis*, however, the Supreme Court held that the residual clause of 18 U.S.C. § 924(c)(3) is unconstitutionally vague. 139 S. Ct. at 2336. Thus, Mr. Roane's convictions are invalid because they cannot be supported by this provision.

Nor can Mr. Roane's convictions be upheld under the elements-based, categorical analysis required by the force clause because some of the predicate offenses with which he was charged can be committed without the use of both the 1) intentional 2) use of physical force.[2] Accordingly, after *Davis*, Mr. Roane's four convictions under § 924(c) are void and must be vacated.

## PROCEDURAL HISTORY

Following a jury trial in the Eastern District of Virginia, Mr. Roane was convicted in 1993 of several counts, including the four § 924(c) counts at issue in this motion, five counts of violating § 1959(a) in relation to four killings and a maiming in furtherance of racketeering (Counts 7, 10, 13, 14, and 16), and three counts of violating § 848(e)(1)(A) in relation to three of the killings in furtherance of a continuing criminal enterprise (CCE) (Counts 5, 8, and 11).[3] The Fourth Circuit affirmed but vacated Count 1 charging a violation of 21 U.S.C. § 846. *See United States v. Tipton*, 90 F.3d 861, 869-70 (4th Cir. 1996). The Supreme Court denied certiorari. *Roane v. United States*, 520 U.S. 1253 (1997).

Mr. Roane subsequently filed a motion under 28 U.S.C. § 2255 in this Court and was granted relief as to one of the § 848 counts. *See* Order, *United States v. Roane*, No. 92-68 (E.D.

---

[2] The predicate crimes with which Mr. Roane was charged and which the jury was instructed it could find, include 18 U.S.C. § 1959, which permits a finding of guilt upon proof of conspiracy, and 21 U.S.C. § 848(e), which permits a finding of guilt based upon proof that the defendant counseled or procured the killing of another. Neither of these offenses requires, as an element, the use of force.

[3] Mr. Roane received a death sentence on Count 5; life sentences on Counts 7, 8, 10, 11, 13, and 14; and 20 years concurrent on Count 16. Those sentences are not at issue in this proceeding.

Va. May 1, 2003).  The Fourth Circuit reversed that grant of relief and affirmed this Court's

opinion on all other grounds.  *United States v. Roane*, 378 F.3d 382, 411 (4th Cir. 2004).  Again,

the Supreme Court denied certiorari.  *Roane v. United States*, 546 U.S. 810 (2005).

In 2009, Mr. Roane sought approval from the Fourth Circuit Court of Appeals to file a

second or successive § 2255 motion on the basis of newly discovered evidence demonstrating that

Mr. Roane is actually innocent of one of the § 848 convictions.  The Court of Appeals denied

leave to file a successive motion under § 2255.  Order, *In re Roane*, No. 09-8 (4th Cir. July 13,

2010).  Mr. Roane also filed an original habeas petition in the Supreme Court, which was denied.

*In re Roane*, 132 S. Ct. 390 (2011).

In 2016, Mr. Roane applied to the Fourth Circuit Court of Appeals for leave to file a

successive motion under § 2255 pursuant to the Supreme Court's holding in *Johnson v. United

States*, 135 S. Ct. 2551 (2015).  The Court of Appeals denied the application. Order, *In re Roane*,

No. 16-6 (4th Cir. June 6, 2016).

On May 20, 2020, Mr. Roane applied to the Fourth Circuit for leave to file a successive

motion under § 2255 pursuant to the Supreme Court's holding in *Davis*, 139 S. Ct. at 2336.  The

Court granted Mr. Roane's application.  Order, *In re Roane*, No. 20-7 (4th Cir. Jan. 24, 2022).

While his most recent application was pending in the Fourth Circuit, Mr. Roane filed in this

Court a motion for reduced sentence pursuant to the First Step Act, which was denied.  Order,

*United States v. Roane*, No. 3:92-cr-68 (E.D. Va. Oct. 29, 2020).  The denial of Mr. Roane's

motion is currently on appeal in the Fourth Circuit.

## ARGUMENT

The predicate offenses underlying Mr. Roane's four convictions for the use of a firearm

during a crime of violence do not qualify as crimes of violence under 18 U.S.C. § 924(c).  Section

924(c) defines a crime of violence in two alternate clauses: the force clause under § 924(c)(3)(A) and the residual clause under §924(c)(3)(B).[4]

In *Davis*, the Supreme Court determined that the residual clause of § 924(c)(3)(B) is void for vagueness. Because it is impossible to discern upon which of these crimes the jury rested its finding of guilt for the § 924(c) convictions, those convictions cannot stand if any one of the predicate crimes fails to qualify as a crime of violence. And Mr. Roane's convictions under §§ 1959(a) and 848(e)(1)(A) categorically fail to qualify as crimes of violence under the force clause of § 924(c)(3)(A) because neither one requires, *as an element*, the 1) intentional 2) use, attempted use, or threatened use of physical force against a person or property. *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc).

Under 18 U.S.C. § 1959(a), a person may be convicted of the crime based on a determination that he or she conspired to commit one of the principal offenses (here, either murder or maiming), and in Mr. Roane's case, the jury was so instructed. Ex. 1 at 14-15. It is well settled that conspiracy fails to qualify as a "crime of violence" because it can be committed without the use of any physical force. Alternatively, the underlying offense of murder fails to qualify as a "crime of violence" because it can be committed 1) with the reckless use of force, and 2) by an act

---

[4] Section 924(c)(3) provides:

(3)   For purposes of this subsection the term "crime of violence" means an offense that is a felony and–

(A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)   that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

of omission (which requires no physical force).  Likewise, the underlying offense of maiming fails to qualify as a "crime of violence" because it can be committed by an act of omission.

Similarly, a person may be found guilty under 21 U.S.C. § 848(e) for counseling or procuring the killing of another, and Mr. Roane's jury was so instructed. Ex. 1 at 13.  The act of counseling or procuring requires no physical force.  Additionally, § 848(e) can be accomplished by a reckless killing.  Therefore, the offense categorically fails to qualify as a "crime of violence."

Mr. Roane also meets the requirements of 28 U.S.C. § 2255 and is entitled to relief under § 2255(h)(2).  Consequently, Mr. Roane's convictions are unconstitutional and invalid and must be vacated.

## I.    MR. ROANE'S MOTION SATISFIES THE REQUIREMENTS  OF § 2255.

As an initial matter, Mr. Roane's claims are cognizable under § 2255(a), and this Motion satisfies the requirements of 28 U.S.C. § 2255 because it is (1) timely, and raises cognizable claims relying upon the rule *Davis* announced, which is (2) a new rule, (3) that is constitutional in nature, (4) that the Supreme Court has made retroactive on collateral review, and (5) that was previously unavailable.

### A.    Mr. Roane's Claims under *Davis* Are Cognizable under § 2255(a).

A federal prisoner may obtain relief under 28 U.S.C. § 2255(a) "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence."  Mr. Roane's convictions under 18 U.S.C. § 924(c) violate the Due Process Clause of the Fifth Amendment and were imposed in excess of this Court's jurisdiction.  As shown below, Mr. Roane's convictions on the § 924(c) charges violate Due Process because they rest on the unconstitutionally vague residual clause. Moreover, as also explained in more detail below, Mr. Roane now stands convicted of offenses that are not criminal, since all of his convictions under § 924(c) fail to satisfy the essential predicate "crime of violence"

element of the statute.  Because predicate offenses underlying the § 924(c) convictions—conspiracy to commit murder and maiming under § 1959 and counseling or procuring the killing of another under § 848(e) —categorically cannot qualify as "crime[s] of violence" for purposes of § 924(c)(3)(A)'s elements clause, this Court had no jurisdiction to try Mr. Roane on those offenses. Mr. Roane's convictions, therefore, violate the laws of the United States and result in a fundamental miscarriage of justice. This is precisely the type of error that is cognizable under § 2255(a).  *See Davis v. United States,* 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255").

> **B.**    **Mr. Roane's Motion is Timely Under § 2255(f).**

A § 2255 motion must be filed within a one-year limitations period.   28 U.S.C. § 2255(f). Where, as here, the motion is pursuant to a "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," the one-year limitations period runs from "the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3).  The Supreme Court decided *Davis* on June 24, 2019. Mr. Roane's proposed motion to vacate conviction and sentence pursuant to 28 U.S.C. § 2255 was filed as an attachment to his application to the Fourth Circuit for leave to file a successive motion under § 2255 within one year of that date (*i.e.*, before June 24, 2020), and is therefore timely.[5]

---

[5]Mr. Roane's motion has been amended to reflect major developments in the law over the past two years while his application was pending in the Fourth Circuit.

     **C.**     ***Davis* Announced a New Substantive Rule of Constitutional Law that Has Been Made Retroactive to Cases on Collateral Review by the Supreme Court, and this Rule Was Previously Unavailable to Mr. Roane.**

The Fourth Circuit has recently concluded that *Davis* announced a new rule of constitutional law that has been made retroactive to cases on collateral review by the Supreme Court. *In re Thomas*, 988 F.3d 783, 790 (4th Cir. 2021). Thus, a cognizable claim, brought in a timely fashion as Mr. Roane's was, is properly brought under 28 U.S.C. § 2255(h).

The constitutional rule announced in *Davis* was not previously available to Mr. Roane during direct review or during his prior § 2255 filings. He unsuccessfully attempted to raise constitutional vagueness challenges to his § 924(c) convictions before *Davis* in a prior motion for authorization.

## II.     AFTER *DAVIS*, MR. ROANE'S § 924(c) CONVICTIONS ARE INVALID.

     **A.**     **Under the Modified Categorical Approach, a § 924(c) Conviction Based on Multiple Offenses Is Invalid if there Is Ambiguity as to Which Offense Supported the § 924(c) Conviction and at Least One of the Possible Predicates Does Not Qualify as a Qualifying Crime.**

To determine whether a predicate crime constitutes a "crime of violence," the court applies the categorical approach. *See United States v. Evans,* 848 F.3d 242, 245–46 (4th Cir. 2017); *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015). Under this approach, the court determines only "whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force." *Simms*, 914 F.3d at 233. To conduct this analysis, a court must "look only to the statutory definitions—*i.e.*, the elements—of a defendant's [offense] and not to the particular facts underlying [the offense]." *Id.* In other words, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by the statute, including the least culpable conduct, matches or is narrower than the "crime of violence" definition. *See United States v. Torres-Miguel,* 701 F.3d 165, 167 (4th Cir. 2012); *United States v. Diaz-Ibarra*, 522 F.3d

343, 348 (4th Cir. 2008) ("We look only to the statutory definition of the . . . crime and the fact of conviction to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies as a 'crime of violence.'"); *see also United States v. Davis*, No. 4:18-cr-00011, 2019 WL 3307235, at *9 (W.D.Va. July 23, 2019) (quoting *Descamps v. United States*, 570 U.S. 254, 260–61 (2013)) ("[T]he key consideration is whether the state statute 'sweeps more broadly than the generic crime.' If the state statute is broader, and is applied to capture non-violent conduct, the conviction in question cannot serve as the predicate § 924(c) "crime of violence" regardless of whether the defendant's actual conduct violates the generic form of the offense."). If the underlying offense "sweeps more broadly" than § 924(c)'s definition, it categorically fails to constitute a crime of violence and does not support a § 924(c) conviction.

If necessary, the court may employ the "modified categorical approach," and consult a select few documents to help "'determine what crime, with what elements,' formed the basis of a defendant's conviction." *United States v. Mathis*, 932 F.3d 242, 264 (4th Cir.) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)). These documents, known as *Shepard* documents, are generally limited to the indictment, jury instructions, and verdict form. *See Shepard v. United States*, 544 U.S. 13, 26 (2005). In these cases, the modified categorical approach "acts not as an exception [to the categorical approach] but instead as a tool," and the inquiry is similarly confined to the elements of the crime and not the facts of the case. *Descamps v. United States*, 570 U.S. 254, 261, 262 (2013).

Under the modified categorical approach, an offense cannot qualify as a § 924(c) predicate unless the *Shepard* documents establish with "certainty" that the defendant was "necessarily" convicted of an offense that meets the elements-based test for "crimes of violence." *Shepard*, 544 U.S at 21. In a case like this, "plausibility or even likelihood" that the defendant was convicted of a qualifying "crime of violence" is not enough. *United States v. Clay*, 627 F.3d 959,

967 (4th Cir. 2010).  This high bar protects against the kind of "evidentiary inquiries into the factual basis for the conviction" that the categorical approach was designed to avoid.  *Shepard*, 544 U.S. at 21, 22; *Fuertes*, 805 F.3d at 498.

When it cannot be conclusively determined that the defendant was convicted of an offense the elements of which categorically qualify as a "crime of violence," the court should assume he was convicted of the "least serious" offense criminalized the underlying statute.  *See United States v. Chapman*, 666 F.3d 220, 228 (4th Cir. 2012) (looking to the "the least serious of the statutory conduct" only to determine which crime a defendant pleaded guilty to); *see also United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (en banc) ("[I]n trials byjury, it has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced – in the absence of a special verdict form identifying the factual bases for conviction."); *Ortiz v. Lynch*, 796 F.3d 932, 935 (8th Cir. 2015) (alterations in original) (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1680 (2013)) ("[W]e must presume [Ortiz's] conviction rested upon [nothing] more than the least of th[e] acts criminalized.").

Accordingly, a § 924(c) conviction cannot be sustained if one of the possible predicates is not categorically a crime of violence.  In *United States v. McCall*, for example, the court vacated a § 924(c) conviction post-*Davis* because the jury could have based its § 924(c) verdict on the offense that did not constitute a crime of violence.   2019 WL 4675762, at *6-7 (E.D. Va. Sept. 25, 2019).  Likewise, in *United States v. Berry*, the court vacated a § 924(c) conviction post-*Davis* because "there [wa]s no means of establishing whether the conviction was for attempt – which could qualify as a crime of violence – as opposed to conspiracy – which does not qualify as a crime of violence."  2020 WL 591569, at *3 (W. D. Va. Feb. 6, 2020).  In *United States v. Lettiere*, the court vacated a § 924(c) conviction because the *Shepard* documents "arguably did not establish that he committed a crime of violence as defined by § 924(c)(3)(A)."  2018 WL 3429927, at *4 (D.

Mont. July 16, 2018). Thus, a § 924(c) conviction based on multiple predicates cannot stand when one possible predicate offense does not categorically qualify as a crime of violence and the *Shepard* documents do not conclusively establish the basis of the § 924(c) conviction.

In Mr. Roane's case, the *Shepard* documents do not establish with "certainty" which potential predicates support the jury's ultimate § 924(c) determinations. The indictment pointed to multiple possible underlying offenses under 18 U.S.C. § 1959(a) and 21 U.S.C. §§ 846 and 848(e)(1)(A). *See* Ex. 2 at 2-13. The jury instructions only referred to the general terms used in the statute itself:

> It is charged in the indictment that . . . [the defendants] used a firearm during and in relationship – or in relation to the commission of a crime of violence or a drug-trafficking crime.
> ***
>
> In order to sustain its burden of proof of the crime of using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime as charged in Counts Six, Nine, Twelve, Fifteen…of the indictment, the government must prove the following two essential elements beyond a reasonable doubt: One, the defendant committed the crime as charged in the indictment; and two, during and in relation to the commission of *that* crime, the defendant knowingly used or carried a firearm.
>
> ***
> The offenses alleged in Counts . . . Five, Seven, Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen. . . are crimes of violence or drug trafficking crimes.

Ex. 1 at 15-16 (emphasis added). Moreover, the § 924(c) counts on the special verdict form refer only to "killing"—which matches the language used to describe both § 1959(a) and § 848(e) on the verdict form. Ex. 3 at 2-3.

## B.    Harmless Error Review Does Not Preclude Relief.

In *United States v. Ali*, 991 F.3d 561 (4th Cir. 2021), the Fourth Circuit held that the *Davis* error was harmless when it was unclear whether the § 924(c) conviction was predicated on a valid predicate (aiding and abetting Hobbs Act robbery) or an invalid predicate (Hobbs Act conspiracy). But *Ali* does not control here. *Ali* addressed on direct appeal a *Davis* matter

involving an ambiguous verdict. While the record in *Ali* may have supported a factual finding that the predicate supporting the § 924(c) conviction was a valid one, Mr. Roane's case is distinguishable in several important ways that demand a different outcome here.

In *Ali*, the defendant had been charged under § 924(c) based on alternative predicates of conspiracy to commit Hobbs Act robbery (an invalid predicate) as well as aiding and abetting Hobbs Act robbery (a valid predicate). 991 F.3d at 573. In order to determine whether the inclusion of the invalid predicate "affected the outcome of the district court proceedings," the Court considered the underlying facts of the case and found unrebutted trial evidence demonstrating that Ali had assisted in the commission of Hobbs Act robbery and used a firearm in the process. *Id.* at 574-76. Thus, the Court found "strong proof" that Ali had done more than simply conspire but had, in fact, assisted in the commission of robberies that entailed use of a firearm and that the "*overwhelming* weight" of the evidence underlay a finding that Ali's § 924(c) conviction rested on the aiding and abetting predicate. *Id.* (emphasis added).[6] Because the trial evidence was deemed to have thoroughly supported the conclusion that the jury's § 924(c) verdict rested on a valid predicate, the Court ultimately held that the inclusion of the invalid predicate did not affect Ali's substantial rights. *Id.* at 576.

Here, this Court has neither overwhelming record evidence nor strong proof that Mr. Roane's § 924(c) convictions rested on a valid predicate committed with a firearm. In Mr. Roane's case, the § 924(c) offenses were charged based alternately on his convictions for drug-trafficking under 21 U.S.C. 848(a)(1)—a still-valid predicate—and on his convictions based on killings committed under 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 1959, no longer valid predicates after

---

[6] *See also United States v. Eldridge*, 2021 WL 2546175 (2d Cir. June 22, 2021), also deciding an ambiguous verdict *Davis* issue on direct appeal, and requiring a finding that before denying the *Davis* claim, it must be "*overwhelmingly likely* that any reasonable juror would have convicted on the basis of the Government's primary theory." *Id.* at 27 (emphasis added).

*Davis*. And while there was some evidence that Mr. Roane's codefendants used firearms in connection with the killings that served as the *invalid* predicates for Mr. Roane's § 924(c) convictions, there was no clear evidence—let alone overwhelming evidence or strong support— that firearms were used in the commission of the drug-trafficking itself—the only remaining valid predicate. In light of this record evidence, it is impossible to assume that the jury's § 924(c) verdicts rested on the valid drug-trafficking predicate.

This is consistent with the way other courts have applied the harmless error analysis in cases where, as here, a § 924(c) conviction is based alternately on valid and invalid predicates that are not intertwined. For instance, *Said v. United States*, currently pending on appeal, No. 21, 7089, is similar to Mr. Roane's case. In *Said*, the district court, after receiving briefing on *Ali*, granted the petitioner's § 2255 motion and vacated his § 924(c) convictions based upon its "grave doubt…based on the record[,] which is unclear on whether the jury relied on the invalid predicate offenses…or valid offenses…or a combination thereof" when finding him guilty. 2021 WL 3037412, at *12 (E.D. Va. July 19, 2021). As with Mr. Roane, Mr. Said's § 924(c) offenses were based on: 1) multiple predicates that, unlike in *Ali*; 2) were not factually intertwined and; 3) where the jury was not instructed it had to be unanimous as to the predicate on which the § 924(c) conviction was based. *Id.*

Other courts have similarly granted relief in cases where, as here, the valid and invalid § 924(c) predicates are "not coextensive." *See, e.g., United States v. Jones*, 935 F.3d 266 (5th Cir. 2019); *United States v. McClaren*, 13 F.4th 386, 413-14 (5th Cir. 2021) (vacating § 924 convictions where invalid RICO conspiracy predicate "involved acts of violence going beyond the [valid] drug conspiracy"); *United States v. Heyward*, 3 F.4th 75, 84 (2d Cir. 2021) (vacating § 924(c) convictions where valid and invalid predicates not "inextricably intertwined"); *United*

*States v. Capers*, 20 F.4th 105, 125 (2d Cir. 2021) (vacating § 924(c) conviction where invalid RICO conspiracy and valid narcotics conspiracy predicates were not "intertwined").

For instance, in *Jones*, the Court vacated the defendants' § 924(c) convictions where "the [invalid] RICO conspiracy offense encompassed conduct beyond the [valid] controlled-substance conspiracy." 935 F.3d at 273. The Court therefore found a reasonable probability that the jury would not have convicted the defendants of the § 924(c) offenses absent the invalid predicate. *Id.*

Similarly, in *McLaren*, the jury was presented with both drug-trafficking and purported crime-of-violence predicates. As the Fifth Circuit explained in granting relief:

> In so holding [in *Jones*], the court noted that the RICO conspiracy alleged involved acts of violence going beyond the drug conspiracy, and so '[a] reasonable probability remain[ed] that the jury relied upon RICO conduct separate from the drug conspiracy—such as assaults and murders for the purpose of maintaining the gang's territory or reputation—to convict Appellants of the challenged § 924 offenses.' The same is true in this case: we cannot determine whether the jury relied on the RICO or drug-trafficking predicate, and because a RICO conspiracy is not a crime of violence, the basis for conviction may have been improper.

*McClaren*, 998 F.3d at 414 (internal citations omitted).

So too here. In Mr. Roane's case, there were several different crimes listed as possible predicates for each of his § 924(c) convictions, all of which entailed different conduct, and some of which are now invalid following *Davis*. Mr. Roane's jury had only to determine that one of the predicates involved use of a firearm and was not required to state in its verdict which offense served as predicate. Because the conduct underlying the various predicates was not intertwined here as it was in *Ali*, it is impossible here to determine whether the jury's finding rested on a valid or an invalid predicate.

Moreover, in Mr. Roane's case the *Davis* error was compounded by the lack of a unanimous verdict instruction with respect to the § 924(c) predicates. In *Ali*, the court instructed the jury that it "must agree unanimously upon each element" of each § 924(c) count before finding

Ali guilty.  Joint Appendix, *United States v. Ali*, Case No. 15-4433 (Jan. 6, 2016), ECF No. 46, at 758, 761, 763, 754.

By contrast, in Mr. Roane's case, the jury was instructed that it could find § 924(c) guilt based on either the still-valid predicate or on the invalid predicates without requiring unanimity as to any option.  Ex. 1 at 15-17.  By virtue of that instruction, the court in Mr. Roane's case effectively gave the jury license to reach a non-unanimous verdict, a Sixth Amendment compounding error that was not present in *Ali*. The absence of an unanimity requirement in the jury verdict together with the *Davis* error had a substantial and injurious effect on Mr. Roane's conviction.

The Sixth Circuit reached the same conclusion in *United States v. Savoires*, 430 F.3d 376, 380 (6th Cir. 2005).  There, the district court had instructed the jury that it could find guilt under § 924(c) based on one valid and one invalid description of conduct made illegal under the statute, and did not require unanimity as to which description might serve as the basis for Mr. Savoires's § 924(c) conviction.  *Id.*  On appeal, reviewing Savoires's claim under a plain error standard, the Sixth Circuit found that error affected the defendant's substantial rights and undermined the fairness of his trial because the district court authorized a non-unanimous verdict on a non-existent offense, just as it did in Mr. Roane's case.  *See id.*

In sum, under the modified categorical approach, Mr. Roane's § 924(c) convictions are invalid because they were based on one or more crimes that do not qualify as a "crime of violence" after *Davis*, and this Court cannot determine which predicate the convictions rested on because they were not "inextricably intertwined."  As set forth below, neither § 1959(a) nor § 848(e) qualifies as a categorical "crime of violence" under *Davis*, and Mr. Roane's convictions cannot be sustained.

    **C.**    **Mr. Roane's Convictions under 18 U.S.C. § 1959(a) Do Not Qualify as Crimes of Violence under the Force Clause of § 924(c)(3)(A).**

    **1.**    **Conspiracy to murder or maim under § 1959 is not a "crime of violence."**

Mr. Roane, along with his codefendants, was convicted of five counts of violating § 1959(a) in relation to four killings and a maiming (Counts Seven, Ten, Thirteen, Fourteen, and Sixteen). In relevant part, § 1959(a) allows for conviction of anyone who murders or maims in aid of racketeering, "or attempts or conspires to do so." Accordingly, Mr. Roane's jury was instructed that it could find him guilty of the counts charged under § 1959 if it found that he "did knowingly and intentionally commit *or conspire to commit* the crime charged in the particular count under consideration." Ex. 1 at 15 (emphasis added). The jury was not required to make any finding specifying on what ground it convicted Mr. Roane of the § 1959 charges. Ex. 3 at 2-4.

Under the categorical approach, this Court must determine whether "the most innocent conduct" criminalized by the statute "qualifies as a 'crime of violence.'" *United States v. Torres-Miquel*, 701 F.3d 165, 167 (4th Cir. 2012); *see also Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (under the categorical approach, "we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized." (quoting *Johnson v. United States,* 559 U.S. 133, 137 (2010)); *Ortiz v. Lynch*, 796 F.3d 932, 935 (8th Cir. 2015); *United States v. Kelly*, 422 F.3d 889, 894 (9th Cir. 2005).

Applying this approach, this Court must assume the jury convicted Mr. Roane based on "the most innocent conduct" charged under § 1959(a)—conspiracy, rather than actual murder or maiming. The Fourth Circuit has held that, under the categorical approach, conspiracy to commit murder in aid of racketeering under § 1959(a) is not a crime of violence. *United States v. McCollum*, 885 F.3d 300, 307-09 (4th Cir. 2018); *see also Quinteros v. Attorney General of the United States,* 945 F.3d 772, 783 (3rd Cir. 2019) (conspiracy under § 1959(a) is not a crime of

violence because an individual can be convicted "without the use, attempted use, or threatened use of physical force"). Indeed, courts around the country have held generally that conspiracy is not a crime of violence. *See, e.g., United States v. Simmons*, 11 F.4th 239, 260 (4th Cir. 2021) (aggravated "RICO conspiracy is not categorically a crime of violence."); *Capers*, 20 F.4th at 120 (same); *Jones*, 935 F.3d at 270 (same); *Simms*, 914 F.3d at 229 (conspiracy to commit Hobbs Act robbery is not a crime of violence under § 924(c)).

Because this Court must assume that Mr. Roane's § 1959(a) convictions rested on the most innocent conduct charged under the statute—conspiracy—the § 1959(a) convictions do not constitute a crime of violence under the force clause of § 924(c)(3)(A).

> **2.    Alternatively, the underlying § 1959 offenses of murder are not "crimes of violence."**

Even assuming arguendo that Mr. Roane's § 1959 counts were predicated on murder itself rather than conspiracy, they still fail to qualify as § 924(c) "crimes of violence" after *Davis* under the elements-based approach for two independent reasons. First, the record fails to establish that Mr. Roane was convicted of a murder offense that requires the *intentional* use of physical force. Second, murder can be accomplished by an act of omission, which requires no physical force.

> **a.    The record fails to establish that Mr. Roane was convicted of a murder offense that requires the *intentional* use of physical force.**

In *Borden v. United States*, the Supreme Court held that a *mens rea* of recklessness is insufficient to satisfy the force clause. 141 S. Ct. 1817, 1825, n.4 (2021). Accordingly, a crime that could be committed without intent sweeps more broadly than § 924(c) allows and cannot qualify as a "crime of violence" under the elements clause. *See id.*; *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006) ("[The predicate state statute] does not contain an element that there be the intentional employment of physical force against a person or thing, and thus is beyond the

scope of 18 U.S.C. § 16(a)."). In Mr. Roane's case, § 1959(a) fails under this standard for two independent reasons.

First, the record here is devoid of any reference to a specific "murder" statute to which the categorical, elements-based approach required by *Davis* could be applied. Indeed, neither the indictment, nor the jury instructions, nor the jury's verdict references a specific "murder" charge or statute.

To be sure, an elements-based analysis of a murder statute can only occur where there is a statute to analyze. And in this case, given the lack of any reference to a specific murder statute, it is impossible to determine whether Mr. Roane was convicted of "murder" with the requisite *mens rea* to support his § 924(c) conviction after *Davis*. As a result, it cannot be said that he was convicted of a crime that is categorically a "crime of violence."

Second, even if Mr. Roane's § 1959 conviction rested on the federal murder statute, 18 U.S.C. § 1111—which it did not—that statute is not categorically a "crime of violence" because it does not require intent. Section 1111 encompasses felony murder— including felony murders in which the underlying homicide is committed by another person and felony murders which are based on an underlying felony that requires no use, attempted use, or threatened use of physical force. This type of murder plainly does not require the intentional use of force or even extreme recklessness. Rather, it can be committed by a reckless or even an accidental death. In *United States v. Ross*, the Government has conceded, for example, that kidnapping resulting in death does not qualify as a crime of violence in the wake of *Borden*. Unopposed Mot. to Vacate, Nos. 18-2800, 18-2877 (8th Cir. Jan. 7, 2022). *See also United States v. McDuffy*, 890 F.3d 796 (9th Cir. 2018) (holding that bank robbery resulting in even accidental death satisfies the *mens rea* requirement). Because intent is not required, § 1959(a)(1) sweeps more broadly than § 924(c)(3)(A) and cannot categorically qualify as a crime of violence.

Section 1111 also encompasses second degree murders that do not require the government to prove that the killing was intentional.   This is true because the elements of § 1111 are (1) "unlawful killing of a human being" and (2) "malice aforethought," which does not require the higher degree of *mens rea* demanded by § 924(c).  Instead, the "malice aforethought" element of § 1111 requires only evidence of conduct that is "reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *United States v. Fleming*, 739 F.2d 945, 947–48 (4th Cir. 1984); *Simpkins v. State,* 596 A.2d 655, 657 (Md. Ct. Spec. App. 1991) (holding second-degree murder requires only "the intent to do an act under circumstances manifesting extreme indifference to the value of human life (depraved heart)" or "the intent to commit a dangerous felony."); Dep't of Justice, Violent Crimes in Aid of Racketeering: A Manual for Federal Prosecutors § 9-110.000 (2006) ("The government need not show a subjective intent to kill" to establish malice aforethought.).  And because it can be committed without intent, murder under § 1111 is not categorically a "crime of violence."

While this Court has ruled that some second degree murder statutes qualify as "crimes of violence," those rulings referenced specific statutes that were susceptible to the required elements-based analysis and rested upon the conclusion that the statute required intent.  In *In re Irby*, for example, the defendant was convicted of retaliatory murder under 18 U.S.C. §§ 1513 and 1111. Section 1513 "makes it an offense to intentionally kill another person in retaliation." *In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017).  Given the identification of a specific murder statute for analysis in *Irby,* this Court was able to determine that each element—including the *mens rea* element— satisfied the requirements of "crime of violence." *Irby*, 858 F.3d at 234.  But such an analysis is impossible here, where neither the Government, nor Mr. Roane, nor this Court, has any way to determine the elements of the "murder" referenced by the jury in its verdict.  Similarly, in *United*

*States v. Parrish*, the defendant was convicted of second degree murder under North Carolina law, which "is proved by intentional conduct." 767 Fed. Appx. 440, 442 (4th Cir. 2019) (quotation omitted). Again, nothing in the record relating to Mr. Roane's case references a murder statute that categorically qualifies as a crime of violence. For that reason, cases like *Irby* do not control—and are in fact irrelevant to—this court's analysis of Mr. Roane's convictions.

*Borden* explicitly reserved the question of whether extreme recklessness or a "depraved heart" mental state would satisfy the force clause, as that question was not before the Court. *Borden*, 141 S. Ct. at 1825 n.4. But the reasoning of the plurality opinion and Justice Thomas's concurrence establish that the targeting of conduct required by the force clause could be satisfied only by purposeful acts, and not by any form of recklessness.

Despite its modifier, extreme recklessness is still recklessness, requiring a risk "far less than . . . substantial certainty." Wayne R. LaFave & Austin W. Scott, 2 Substantive Criminal Law § 14.4(a), Westlaw (3d ed. database updated Oct. 2020). And even tolerance of a large and dangerous risk is not the "deliberate choice of wreaking harm on another," that *Borden* rejected, but rather "mere indifference to risk." *Borden*, 141 S. Ct. at 1830 (plurality op.) (emphasis added).

Even when the risk is "extreme," it remains just a possibility, and one that the defendant might have underestimated. Actors who disregard a risk that their conduct will create harmful force simply cannot be said to "use," "target," or "intend" that application of force in the way that an intentional violator can. *See Borden*, 141 S. Ct. at 1824-27 (plurality op.).[7] An interpretation of

---

[7] The *Borden* plurality held up a number of cases as examples of extremely reckless conduct that do not fit the common understanding of violent felonies—most prominently reckless driving, but also jumping from a mall balcony and skiing at dangerously fast speeds. *See* 141 S. Ct. at 1831. Similar conduct has been held sufficient for conviction of crimes that require "extreme" recklessness. Carelessly throwing a piece of lumber into a street would be sufficient in Virginia courts to support a murder conviction. *See Mosby v. Commonwealth*, 190 S.E. 152, 154 (Va. 1937); *Whiteford v. Commonwealth*, 27 Va. 721, 724–25 (Va. Gen. Ct. 1828). Instructing an undocumented immigrant to hide in a truck compartment and failing to tell Border Patrol agents of

§ 924(c)(3)(A) that would sweep in these "extremely reckless" violators would have results even more harsh than those that the *Borden* plurality considered implausibly severe.  141 S.Ct. at 1822.

As the *Borden* plurality explained, we also "'cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'" 141 S. Ct. at 1830 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004)).  This statutory definition is meant to police the boundary between all crimes and "a narrow 'category of violent, active crimes.'"  *Id.*  (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)).  Crimes of recklessness, even extreme recklessness, often would not be understood as crimes of violence, in ordinary parlance.

> **b.    A murder offense under § 1959 fails to qualify as a "crime of violence" because it can be committed by an act of omission, which requires no physical force.**

Finally, both §§ 1959(a)(1) and 1959(a)(2) categorically fail to qualify as "crime[s] of violence" under § 924(c)(1)(A) since they cover acts of omission that do not require *any* physical

---

his hiding place is sufficient to support a federal conviction for second degree murder. *United States v. Escobedo-Moreno*, 781 F. Appx. 312, 314, 318 (5th Cir. 2019). Failing to properly train and control aggressive dogs, so that the defendant "could have reasonably foreseen" that they could injure someone, is sufficient to support a murder conviction in Kansas. *State v. Davidson*, 987 P.2d 335 (Kan. 1999).

And of course reckless or drunk driving are the paradigmatic examples of reckless conduct that "do[es] not fit within the ordinary meaning of the term violent crime" and would not satisfy the force clause according to the *Borden* plurality. 141 S. Ct. at 1830-31 (plurality op.) (internal quotation marks omitted). It is well established that reckless and intoxicated driving can count as extremely reckless behavior. *See Knight v. Commonwealth*, 733 S.E.2d 701, 708-09 (Va. Ct. App. 2012) (driver who drove a car at a high speed into a turn lane); *United States v. Lemus-Gonzalez*, 563 F.3d 88, 93 (5th Cir. 2009) (intoxicated driver who transported immigrants without seatbelts at a high rate of speed); *State v. Barstad*, 970 P.2d 324, 326 (Wash. Ct. App. 1999) (intoxicated driver who sped through red light at busy intersection), *review denied*, 137 Wash. 2d 1037, 980 P.2d 1284 (1999); *State v. Braden*, 867 S.W.2d 750, 753 (Tenn. Crim. App. 1993) (intoxicated driver who took a blind curve at over eighty miles per hour); *Allen v. State*, 611 So.2d 1188, 1189-90 (Ala. Crim. App. 1992) (intoxicated driver who swerved into oncoming traffic); *State v. Woodall*, 744 P.2d 732, 736 (Ariz. Ct. App. 1987) (intoxicated driver who crossed the center line while speeding); *Pears v. State,* 672 P.2d 903, 909 (Alaska App.1983) (intoxicated driver who ran stop signs, yield signs, and traffic lights), *remanded on other grounds*, 698 P.2d 1198 (Alaska 1985).

force—much less the "violent force" that is a prerequisite to the constitutional application of the elements clause. Homicide under § 1959(a)(1)—like a wide range of other offenses under state and federal law—can be violated by an act of omission. *See, e.g., United States v. Gomez,* 690 F.3d 194, 201 (4th Cir. 2012) (holding that statute categorically fails to qualify as a "crime of violence" under element clause because "a defendant may be found guilty" under the statute "by committing an affirmative act or by neglecting to act, neither of which necessarily requires the use of physical force"). For example, a wide range of acts of omission that can be committed without any force at all could lead to a homicide conviction under § 1959(a)—from "the deliberate failure to provide food or medical care" to leaving someone locked in a dangerous place. *See, e.g.*, *Torres-Miguel,* 701 F.3d at 169–70 (citing examples); *United States v. Mayo,* 901 F.3d 218, 227 (3d Cir. 2018) (holding that offense did not categorically qualify as a "crime of violence" under elements clause because convictions under it "have been upheld not because a defendant used physical force against the victim, but because serious bodily injury occurred, as with the deliberate failure to provide food or medical care"). *But see United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020) (explaining—though in dicta— "that the intentional infliction of bodily harm requires a use of physical force, *even if* the means used are indirect").

While there are many ways in which force could be used to violate §§ 1959(a)(1) or 1959(a)(2), the plain language of the statute is broad enough to cover myriad acts of omission that do not involve *any* force—much less the "violent force" that is a prerequisite to constitutional application of the elements clause. And under the categorical approach, that fact is disqualifying.

> **2.    Maiming categorically fails to qualify as a crime of violence and thus cannot support Mr. Roane's § 924(c) convictions.**

A similar analysis of Mr. Roane's "maiming" charge leads to the same conclusion. The indictment fails to identify a particular statute defining maiming, and the jury instructions say even

less about maiming than they do about murder.   In fact, the relevant counts are referenced numerically and never described.   As a result, it is impossible to determine whether Mr. Roane was convicted of a crime that would categorically qualify as a "crime of violence."

Additionally, maiming under § 1959(a)(2) suffers from the same defects as murder, described in Section II.C.2.b.:  it can be committed by acts of omission that do not require any physical force whatsoever.  Maiming is an assault, which itself does not require actual violent physical force. *See United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013).  Moreover, the intent to maim element does not convert assault into a "violent felony" because it can be accomplished merely by *causing* injury rather than the use of physical force.  *See Torres-Miguel,* 701 F.3d at 168 (holding that the threat of *any physical injury,* even serious bodily injury *or death*, does not necessarily require the use of physical force—let alone "violent force"); *United States v. Middleton*, 883 F.3d 485, 491 (4th Cir. 2018) (noting that although part of *Torres-Miguel* was overturned by *United States v. Castleman*, 572 U.S. 157 (2014), this holding was not).[8]

**D.      Mr. Roane's Convictions under 21 U.S.C. § 848(e)(1)(A) Do Not Qualify as Crimes of Violence under the Force Clause of § 924(c)(3)(A).**

Mr. Roane, along with his codefendants, was also convicted of three counts of violating § 848(e)(1)(A) in relation to three of the killings (Counts Five, Eight, and Eleven).  Mr. Roane's

---

[8] Per the Court's instructions to the jury, Mr. Roane was charged in Count 16 with maiming of Martha McCoy. Ex. 1 at 14.  The verdict form accordingly lists Count 16 as maiming of Martha McCoy. Ex. 3 at 4.  However, the indictment charged Mr. Roane, under Count 16, with "assault resulting in serious bodily injury."  Ex. 2 at 13.  Because no intent is required for such an offense, assault resulting in serious bodily injury is likewise not categorically a crime of violence and thus would not support a conviction under § 924(c)(1)(A). *United States v. Knife*, 592 F.2d 472, 482 (8th Cir. 1979) ("Section 113(f) requires only that the assault shall have resulted in serious bodily harm; the assault need not have been committed with a dangerous weapon, or with intent to do bodily harm.").  Indeed, the Tenth Circuit in *United States v. Benally*, 19 F.4th 1250, 1258-59 (10th Cir. 2021) recently found that a federal assault resulting in serious bodily injury (18 U.S.C. § 113(a)(6)) is not a "crime of violence" after *Borden* because it can be committed recklessly.  No reason exists why this Court should not find the same with respect to § 113(f).

convictions under § 848(e)(1)(A) likewise do not categorically qualify as crimes of violence under § 924(c)(3)(A) because they do not require 1) the intentional 2) use of any physical force by the defendant.

First, the *mens rea* required in the predicate crime § 848(e) includes an intent level of "a grave risk of death," a level that falls short of the intent required for a crime of violence under *Borden, supra*. *See e.g., United States v. Alvarez*, 266 F.3d 587 (6th Cir. 2001) (permitting a jury instruction for § 848(e) that included a *mens rea* of recklessness creating grave risk of death). Similarly, the Modern Federal Jury Instructions include language regarding a "grave risk of death." The "risk" of death does not involve the *intentional* use of physical force. *See also United States v. Winston*, 55 Fed. App'x 289, 300-01 (6th Cir. 2003) (upholding a murder instruction that allowed for conviction based on a *mens rea* of extreme recklessness, a question left open by *Borden*). As noted in subsection II.C.2.a., *supra*, no degree of recklessness suffices to satisfy the *mens rea* required by § 924(c).

Second, § 848(e)(1)(A) provides, in pertinent part, that a defendant may be found guilty if, in furtherance of a CCE, he either "intentionally kills" *or* "counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results." (emphasis added). Accordingly, the trial court charged the jury that it could find Mr. Roane guilty of the counts charged under § 848(e)(1)(A) if it found that he "either intentionally killed, *or counseled, commanded, induced, procured, or caused* the intentional killing of the individual victim named in a particular count." Ex. 1 at 13 (emphasis added). The jury was not required to make any finding specifying on what ground it convicted Mr. Roane of the § 848(e)(1)(A) charges. Ex. 3 at 2-3.

As with Mr. Roane's § 1959 convictions, this Court must determine whether "the most innocent conduct" criminalized by the statute "qualifies as a 'crime of violence.'" *Torres-Miquel*, 701 F.3d at 167. Here, a violation of § 848(e)(1)(A) does not require the use of force by the defendant, as the conviction can rest on a finding that the defendant merely "counseled,

commanded, induced, procured, or caused" the killing.  In other words, the jury was permitted to convict Mr. Roane even if it did not find that he actually "use[d] physical force against the victim in completing the crime." *See Fuertes*, 805 F.3d at 500 (4th Cir. 2015).  Such a conviction does not satisfy § 924(c)(3)(A)'s force clause.  *See id.*; *United States v. Naughton*, 621 F. App'x 170, 177 (4th Cir. 2015).

While it is possible that the jury could have found that the predicate offenses under § 848(e)(1)(A) constituted drug trafficking crimes, courts, including the Fourth Circuit, have also categorized it as a "crime of violence." *See United States v. Turner*, 198 F.3d 425, 432 (4th Cir. 1999) (concluding that § 848(e)(1)(A) is "a substantive crime of violence"); *United States v. NJB*, 104 F.3d 630, 635 (4th Cir. 1997) (". . . § 848(e) clearly sets forth a separate substantive violent offense . . . .").  And the *Shepard* documents fall far short of establishing with "certainty" how § 848(e) was considered by the jury.  In the jury instructions, the court never identifies which counts were drug trafficking crimes, merely stating generally that "[t]he offenses alleged . . . are crimes of violence *or* drug trafficking crimes." Ex. 1 at 16.

Because this Court cannot assume that the jury convicted Mr. Roane of the § 924(c) charges based on predicate drug trafficking offenses, and because Mr. Roane's § 848(e)(1)(A) convictions do not require the use of physical force by the defendant, these convictions cannot serve as valid predicates for Mr. Roane's § 924(c) convictions.

## CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Roane respectfully asks this Court to vacate his convictions and sentences on Counts 6, 9, 12, and 15, the invalid charges under 18 U.S.C. § 924(c), and grant any other relief that may be necessary to correct Mr. Roane's invalid convictions and sentences and put him back in the position he would have been in were it not for having been convicted of non-existent crimes.

Respectfully Submitted,


/s/ Bernadette Donovan
Bernadette Donovan
Donovan & Engle
1134 East High St. Unit A
Charlottesville, VA 22902
(800) 428-5214
bernadette@donovanengle.com

Counsel for James H. Roane, Jr.

Dated: Feb. 18, 2022

# EXHIBIT 1

The United States Government does not apologize to you for the photographs you have had to see.  We don't owe to you the apology.  We didn't kill them.  It is part of our job to produce those photographs so you will see how horrendous and horrible these people were and are.

I, too, appreciate you listening on behalf of the United States Government.  The government would also want to encourage you to go through all of these exhibits and evidence.  You go through your notes.  What I have said, Mr. Vick said, or the defense lawyers say, is not fact.  It is not law.  The facts are what you recall.  Judge Spencer will give you the law.

One other thing about Judge Spencer:  These lawyers have been saying 5K.1, 5K.1, 5K.1.  There is only one human being in the whole world that can cut a sentence in this case, and that's that man.  You heard Gaiters and Hardy both tell you they pled in front of Judge Spencer.  The government can make the motion.  But it is in that man's discretion.  And you go back and look at Gaiters' and Hardy's plea agreements, and what do they tell you?  They have to be truthful in their cooperation with the government, all the people that are getting 5K's.  That man knows it, these men know it.

MR. GEARY:  I object.  Greg Scott is a key witness in this case.

MR. PARCELL:  Ladies and gentlemen, thank you very much.

MR. GEARY:  Another misstatement by Mr. Parcell.

THE COURT:  Objection overruled.  We are going to take about 10 or 15 minutes, then we will get started with the instructions.  They are going to take awhile, and you have been sitting awhile.  So we will give you a break.  Everyone remain seated while the jury leaves the courtroom.)

(The jury left the courtroom.)

(Defendants removed from courtroom.)

(Recess taken from 11:50 a.m. to 12:05 p.m.)

## Court Instructions to Jury re Guilt (3192)

THE COURT:  All right, let's bring in the jury.

(The jury entered the courtroom.)

Members of the jury:  You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.  It becomes my duty therefore to instruct you on the rules of law that you must follow and apply in arriving at your

001

decision in this case.

In any jury trial there are, in effect, two judges. I am one of the judges. The other is the jury. It is my duty to preside over the trial and to determine what testimony and evidence is relevant under the law for your consideration. It is also my duty at the end of the trial to instruct you on the law applicable to the case. You as jurors are the judges of the facts. But in determining what actually happened in this case, that is, in reaching your decision as to the facts, it is your sworn duty to follow the law I now am in the process of defining for you. Unless otherwise stated, you should consider each instruction to apply separately and individually to each defendant on trial. And you must follow all of my instructions as a whole. You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. That is,

3194

you must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I give it to you regardless of the consequences. By the same token, it is also your duty to base your verdict solely upon the testimony and evidence in the case without prejudice or sympathy. That was the promise you made and the oath you took before being accepted by the parties as jurors in this case, and they have the right to expect nothing less.

The indictment, or formal charges against a defendant, is not evidence of guilt. Indeed, the defendants are presumed by law to be innocent. The law does not require a defendant to prove his or her innocence or produce any evidence at all. The government has the burden of proving him or her guilty beyond a reasonable doubt. And if it fails to do so, you must acquit him or her.

Thus, while the government's burden of proof is a strict or heavy burden, it is not necessary that the defendants' guilt be proved beyond all possible doubt. It is only required that the government's proof exclude any reasonable doubt concerning the defendants' guilt.

Now, as I've stated earlier, it is your duty to

3195

determine the facts. And in so doing, you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into the record, and any stipulations or agreements between the parties.

Remember that any statements, objections, or arguments made by the lawyers are not evidence in the

002

case.  The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case; and in so doing, call your attention to certain facts or inferences that might otherwise escape your notice.

In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in this case.  What the lawyers say is not binding upon you.

Also, during the course of the trial I occasionally make comments to the lawyers or ask questions of a witness or admonish a witness concerning the manner in which he or she should respond to the questions of counsel.  Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case.  Except for my instructions to you on the law, you should

3196

disregard anything I may have said during the trial in arriving at your own findings as to the facts.

Now, while you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts and which have been established  --  facts which have been established by the testimony and evidence in the case.  You should not be concerned about whether the evidence is direct or circumstantial.  Direct evidence is the testimony of one who asserts actual knowledge of a fact such as an eyewitness.  Circumstantial evidence is proof of a chain of facts and circumstances indicating that the defendant is either guilty or not guilty.  The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Now, I have said that you must consider all of the evidence a number of times.  This does not mean, however, that you must accept all of the evidence as true or accurate.  You are the sole judges of the credibility or believability of each witness and the weight to be given to his testimony.  In weighing the

3197

testimony of a witness, you should consider his or her relationship to the government or the defendants; his or her interest, if any, in the outcome of the case; his or her manner of testifying; his or her opportunity to observe or acquire knowledge concerning the facts about which he or she testifies; his or her candor, fairness, and intelligence, and the extent to which he or she has been supported or contradicted by other credible evidence.

You may in short accept or reject the testimony

003

of any witness in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact.  You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

A witness may be discredited or impeached by contradictory evidence by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.  If you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves.

The fact that a witness has been previously convicted of a felony or a crime involving dishonesty or false statement is also a factor you may consider in weighing the credibility of that witness.  The fact of such a conviction does not necessarily destroy the witness' credibility, but is one of the circumstances you may take into account in determining the weight to be given to his or her testimony.

In this case, the government called as some of its witnesses an alleged accomplice named as a co-defendant in the indictment with whom the government has entered into a plea agreement providing for the dismissal of some charges or providing that the government may in its discretion file a motion informing the Court that the witness has provided substantial assistance to the government in its investigation or prosecution of the defendants in this case or of other persons.  If such a motion is filed by the government, the court may elect to impose a lesser sentence than the witness would otherwise have received for the offense to which he pled guilty.

Such plea bargaining, as it is called, has been approved as lawful and proper and is expressly provided for in the rules of this Court.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying.  On the contrary, the testimony of such a witness alone may be sufficient weight to sustain a verdict of guilty.  However, the jury should keep in mind that such testimony is always to be received with caution and weighed with

004

great care.  You should never convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt.  The fact that an accomplice has entered a plea of guilty to the offense charged is not evidence in and of itself of the guilt of any other person.

The testimony of an alleged accomplice and the testimony of one who provides evidence against a defendant as an informer for pay or for immunity from punishment, or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses.  You the jury must decide whether the witness' testimony has been affected by any of those circumstances or by the witness' interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that the witness has received, either financially or as a result of being immunized from prosecution.  You should keep in mind that such testimony is always to be received with caution and weighed with great care.  You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

The testimony of a drug or alcohol abuser must be examined and weighed by the jury with greater care than the testimony of a witness who does not abuse drugs or alcohol.  The jury must determine whether the testimony of a drug or alcohol abuser has been affected by drug or alcohol use or the need for drugs or alcohol.

Now we come to the offense instructions, starting out with Count One.  Title 21 of the United States Code Section 846 makes it a separate federal crime or offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would be a violation of Section 841(a)(1).  Section 841(a)(1) makes it a crime for anyone to knowingly distribute, dispense, and/or possess a controlled substance with the intent to distribute.

So under the law, a conspiracy is an agreement or a kind of partnership in criminal purposes in which each member becomes the agent or partner of each other -- of every other member.  In order to establish a conspiracy offense, it is not necessary for the government to prove that all of the people named in the indictment were members of the scheme or that those who were members had entered into a formal type of agreement.  Also, because the essence of a conspiracy offense is the making of the scheme

005

itself, it is not necessary for the government to prove that the conspirators actually succeeded in accomplishing their unlawful plan.  What the evidence in the case must show beyond a reasonable doubt is this:  First, that two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment.  And second, that the defendant knowingly and willfully became a member of such conspiracy.

A person may become a member of a conspiracy without knowing all of the details of the unlawful scheme and without knowing who all of the other members are.  So if a defendant has an understanding of the unlawful nature of a plan, and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict him or her for conspiracy, even though he or she did not participate before, and even though he or she played only a minor part.  Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of a conspiracy.

Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

The first element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in the indictment.  In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement.  Similarly, you need not find that the alleged conspirators stated in words or writing what the scheme was, its objective or purpose, or every precise detail of the scheme, or the means by which its object or purpose was to be accomplished.  What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.  You may of course find that the existence of an agreement to disobey or disregard the law has been established by direct proof.  However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of

006

conspiracy cases, actions often speak louder than words.  In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

It is charged in Count One of the indictment that the conspiracy distributed and possessed with

3204

intent to distribute a particular amount or quantity of narcotic controlled substance.  The evidence in the case need not establish the exact amount or quantity of the substance containing cocaine, except you must find beyond a reasonable doubt that the conspiracy distributed or possessed with intent to distribute, or attempted to possess with intent to distribute at least 50 grams or more of crack cocaine.

The second element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy, the first count of the indictment, is that the defendant knowingly, willfully, and voluntarily became a member of the conspiracy.  If you are satisfied that the conspiracy charged in the indictment existed, you must next ask yourself who the members of that conspiracy were.  In deciding whether the defendant whom you are considering was in fact a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy; did he or she participate in it with knowledge of its unlawful purpose and with the specific intent of furthering its business or objective as an associate or worker.

In that regard, it has been said that in order

3205

for a defendant to be deemed a participant in a conspiracy, he or she must have had a stake in the venture or its outcome.  You are instructed that while proof of a financial interest in the outcome of the scheme is not essential, if you find that the defendant has such an interest, that is a factor which you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the indictment.

As I mentioned a moment ago, before the defendants can be found to have been a conspirator, you must first find that he or she knowingly joined in the unlawful agreement or plan.  The key question, therefore, is whether the defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

It is important for you to note that the defendants' participation in the conspiracy must be

007

established by independent evidence of his or her own acts or statements and the reasonable inferences which may be drawn from them.

A defendant's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of a conspiracy, the defendant need not have known the identities of

3206

each and every other member. Nor need he or she have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details or the scope of the conspiracy in order to justify an inference of knowledge on his or her part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt. A conspirator's liability is not measured by the extent or duration of his or her participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that the defendant's mere presence at the scene of the alleged crime does not by itself make him or her a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person

3207

may know or be friendly with a criminal without being a criminal himself or herself. Mere similarity of conduct, or the fact that they may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy.

I also want to caution you that mere knowledge or acquiescence without participation in the unlawful plan is not sufficient. Moreover, the fact that the acts of a defendant without knowledge may happen to further the purposes or objectives of the conspiracy does not make the defendant a member. More is required under the law. What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy, and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for

the purpose of furthering the illegal undertaking. He or she thereby becomes a knowing and willing participant in the unlawful agreement; that is to say, a conspirator.

Now, let me move on to Count Two. Count Two of the indictment charges that in at least January, 1991 and continuously, beginning at least January, 1991 and continuously up to the date of the indictment, in the Eastern District of Virginia and elsewhere, the defendants Richard Tipton, Cory Johnson, James H. Roane, and Vernon Lance Thomas engaged in a Continuing Criminal Enterprise, in that those defendants committed a violation of certain narcotic laws as part of a continuing series of such violations; and that further, this series was done in some type of agreement with at least five other persons who were managed or supervised or organized by those defendants, and that from this continuing series of narcotics violations, those defendants received substantial income or resources.

You are instructed that Title 21 of the United States Code Section 848 reads in pertinent part: Any person who engaged in a Continuing Criminal Enterprise shall be guilty of an offense against the United States. The statute also provides as follows: For the purpose of Subsection (a) of this section, a person is engaged in a Continuing Criminal Enterprise if he violates any provision of this subchapter or Subchapter 2 of this chapter, the punishment for which is a felony; and two, such violation is a part of a continuing series of violations of this subchapter or Subchapter 2 of this chapter. When I talk about subchapter, it relates to narcotic felony violations, which are undertaken by such person in concert with five or more persons in respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and from which such person obtains substantial income or resources.

Now, in order to sustain its burden of proof for the crime of engaging in a Continuing Criminal Enterprise as charged in Count Two of the indictment, the government must prove the following five essential elements with respect to each individual defendant charged beyond a reasonable doubt: One, the defendant committed a felony violation of the federal narcotics laws; two, such violation was part of a continuing series of related violations of federal narcotics laws; three, the continuing series of violations was undertaken by the defendants in association or in concert with five or more other persons; four, the defendant was an organizer of

these five or more other persons, or occupied a management or supervisory position with respect to these five or more other persons; five, the defendant obtained substantial income or resources from the continuing series of narcotic violations.

I will now discuss in more detail and define for you the meaning of certain terms used in the Continuing Criminal Enterprise statute and in these instructions relating to the elements of the Continuing Criminal Enterprise offense charged in Count Two.

The first phrase:  "Felony violation."  The phrase "felony violation of the federal narcotics laws" as used in these instructions means the commission of any act specifically prohibited by certain sections of the United States Code for which a defendant could be imprisoned for more than one year.  The distribution or possession with intent to distribute cocaine or crack cocaine in violation of 21 U.S. Code Section 848(a)(1) is a felony violation of the narcotics laws.

What is a continuing series of violations?  A continuing series of violations means at least three violations of the federal drug laws as charged in Counts One, Three, Five, Eight, Eleven, Seventeen, Eighteen, Nineteen, Twenty-four, Twenty-five, Thirty-one, Thirty-two, and Thirty-three of the indictment before you.  It also requires a finding that those violations were connected together as a series of related or ongoing activities as distinguished from isolated and disconnected acts.

The phrase "in concert with five or more other persons" means some type of agreement or joint action, whether direct or indirect, with at least five other persons who were involved in the continuing series of narcotics violations.  The phrase "in concert with five or more other persons" does not require proof from the government that the five or more other persons actually had contact with each other or knew each other, or committed each violation together or operated together continuously at the same time.  The government is not required to prove that the defendant managed, supervised, or organized these five or more persons at the same time.  The government must prove beyond a reasonable doubt, however, that the defendant and at least five or more other persons were part of an agreement or joint action to commit the continuing series of violations of the federal narcotics laws alleged in the counts I've outlined: One, Three, Five, Eight, Eleven, Seventeen, Eighteen, Nineteen, Twenty-four, Twenty-five, Thirty-one, Thirty-two and/or

Thirty-three of the indictment.

The term "organizer" and the terms "supervisory position" and "position of management" are to be given their usual and ordinary meaning.  These words imply the exercise of power and authority by a person who occupies some position of management or supervision.  This person need not be the sole or only organizer, supervisor, or manager of the activities in question.

An organizer can be defined as a person who puts together a number of people engaged in separate activities and arranges them in their activities in one essentially orderly operation or enterprise.

A supervisory position can be defined as one who manages or directs or oversees the activities of others.  For purposes of this element, a person may occupy a position of organizer, a supervisory position, or any other position of management without having a direct personal contact with each of the persons he is organizing, supervising, or managing.  It is not required that the defendant have personal contact with five or more subordinates in order to satisfy the organizer, supervisor, or position of management element.  It is entirely possible for a single Continuing Criminal Enterprise to have more than one organizer, supervisor, or other person in a position of management.

You are further instructed that the term "substantial income or resources" as it appears in Title 21 United States Code Section 848 is defined as money or other material resources or property received or gained directly from illegal dealings in controlled substances by the defendants.  Controlled substances are a material resource for purposes of this definition of income.

Furthermore, the term "income" does not necessarily mean net income.  That is to say, it could mean gross receipts or gross income.  It would follow that the phrase "substantial income or resources" should be construed as far as possible in an objective manner; that is to say, that the defendant would have to have  --  would have to receive what any reasonable person would consider to be considerable or ample economic benefit from engaging in a Continuing Criminal Enterprise.  In determining income, you may consider a defendant's position in the enterprise, the quantity of controlled substances involved, and the amount of money that changed hands.

Now, in a moment I'm going to begin to instruct you on the law governing those counts in the

indictment that involve homicide.  When I do so, you will notice that defendants Richard Tipton, Cory Johnson, and James H. Roane, Jr. have been charged with two very specific, very distinct types of homicide:  Killing while engaged in or in furtherance of a Continuing Criminal Enterprise in violation of Title 21 Section 841(e) of the United States Code, and killing for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity in violation of Title 18 Section 1959 of the United States Code.

The reason you are being asked to limit your deliberations to these two very specific types of killings is that you are sitting as a jury in a federal court.  In criminal cases, federal courts may try a defendant only for violations of federal law. Most types of homicide, that is, murder in the first degree or the second degree, voluntary manslaughter, are crimes under state law, not federal law.  And therefore, they cannot be tried by this Court.

As I am about to explain to you, if in your deliberations you find that a particular defendant has killed another person, that would not be enough for you to find that defendant guilty of a federal crime.  Instead, you must be convinced beyond a reasonable doubt that each of the specific elements of a federal crime charged in the indictment has been proved by the government.

The indictment charges that defendants Richard Tipton, Cory Johnson, James Roane, Vernon Lance Thomas, and Jerry Gaiters, between January 5th of 1992 and February 19th, 1992, within the Eastern District of Virginia, while engaged in or working in furtherance of a Continuing Criminal Enterprise, intentionally killed, counseled, commanded, induced, procured, or caused the intentional killing of certain individuals.

Note however that no defendant is charged with all the murders discussed in the indictment. Specifically, the following defendants face these charges with respect to the following killings.  With respect to the killing of Douglas A. Talley, the defendant, Richard Tipton, is charged.  With respect to the killing of Douglas Moody, defendants Richard Tipton and James H. Roane, Jr. are charged.  With respect to the killing of Peyton Maurice Johnson, defendants James H. Roane and Cory Johnson are charged.  With respect to the killing of Louis Johnson, Jr., defendants James H. Roane and Cory Johnson are charged, along with defendant Vernon Lance Thomas.  With respect to the killings of Bobby Long, Anthony Carter, and Dorothy Mae Armstrong,

012

defendants Richard Tipton and Cory Johnson are charged, along with defendant Jerry Gaiters.  With respect to the killings of Curtis Thorne and Linwood Chiles, defendants Richard Tipton and Cory Johnson are charged, along with defendant Vernon Lance Thomas.

Again, I emphasize that in your deliberations you must give individual consideration to each defendant with respect to each separate count charged against that defendant.  The verdict forms which will be provided to you by the Court, and which I will discuss with you in more detail in a few minutes, will list the specific charges in the indictment which you must consider with respect to each of these defendants.

Title 21 United States Code Section 848(e)(1)(A) provides in pertinent part that any person engaging in or working in furtherance of a Continuing Criminal Enterprise who intentionally kills, or counsels, commands, induces, procures, or causes the intentional killing of an individual, and such killing results, is guilty of an offense against the United States.

3217

Before you can find an individual defendant guilty of this offense, you must be convinced beyond a reasonable doubt of each of the following elements:  First, that the defendant was engaged in or working in furtherance of the continuing enterprise charged in Count Two of the indictment; second, that while the defendant was so engaged, the defendant either intentionally killed, or counseled, commanded, induced, procured, or caused the intentional killing of the individual victim named in a particular count; and three, that the killing of that victim actually resulted.

The indictment charges that defendants Richard Tipton, Cory Johnson, James H. Roane, Jr. and Vernon Lance Thomas, and Jerry Gaiters, and Sterling Hardy, between January 5th, 1992 and February 19th, 1992, within the Eastern District of Virginia, murdered or maimed certain individuals as consideration for the receipt of or as consideration for a promise or agreement to pay anything of pecuniary value and engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

3218

Now, this is the 1959 counts.  These are the 1959 counts.  They are Four, Seven, Ten, Thirteen, Fourteen, Sixteen, Twenty-one, Twenty-two, Twenty-three, Twenty-seven, Twenty-eight,

013

Twenty-nine, and Thirty.  Again, however, no single defendant is charged with all of the killings and maimings discussed in the indictment.

Specifically, the following defendants face these charges with respect to the following killings and maimings:  With respect to the killing of Douglas A. Talley, the defendant Richard Tipton is charged.  With respect to the killing of Douglas Moody, defendants Richard Tipton and James H. Roane, Jr. are charged.  With respect to the killing of Peyton Maurice Johnson, defendants James H. Roane and Cory Johnson are charged.  With respect to the killing of Louis J. Johnson, Jr., defendants James H. Roane, and Cory Johnson are charged, along with defendant Vernon Lance Thomas.  With respect to the killing of Torrick Brown, defendants Richard Tipton, James H. Roane, Jr., and Cory Johnson are charged, along with defendants Vernon Lance Thomas and Sterling Hardy.

With respect to the maiming of Martha McCoy, defendants Richard Tipton, James H. Roane, Jr., and Cory Johnson are charged, along with defendants Vernon Lance Thomas and Sterling Hardy.  With respect to the killings of Bobby Long, Anthony Carter, and Dorothy Mae Armstrong, the defendants Richard Tipton and Cory Johnson are charged, along with defendant Jerry Gaiters.  With respect to the killings of Curtis Thorne and Linwood Chiles, and the maiming of Priscilla Greene and Gwendolyn Greene, defendants Richard Tipton and Cory Johnson are charged, along with defendant Vernon Lance Thomas.

Again, I emphasize that in your deliberations you must give individual consideration to each defendant with respect to each count charged against that defendant.  The verdict forms, as I mentioned, will assist you in this respect.

You are instructed that Title 18 United States Code Section 1959 reads in pertinent part as follows:  Whoever, as consideration for the receipt of or as consideration for a promise or agreement to pay anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any state or the United States, or attempts or conspires to do so, is guilty of an offense against the United States.

To find a defendant guilty under this statute, you must find that the government has proven each of

014

the following elements beyond a reasonable doubt: First, that a racketeering activity actually did exist; second, that the racketeering activity affected interstate commerce; third, that an individual defendant did knowingly and intentionally commit or conspire to commit the crime charged in the particular count under consideration.  Fourth, that the defendant acted for the purpose of gaining entrance to the racketeering activity or for the purpose of maintaining or increasing his position in the racketeering enterprise; or that the defendant received or was promised that he would receive something of pecuniary value from the racketeering enterprise in exchange for his acts.

I will now explain and define for you the meaning of certain terms found in the statute and within these instructions relating to the elements of the 1959 murders referred to as violent crimes in aid of racketeering activity.

As I've outlined for you, those offenses are in Counts Four, Seven, Ten, Thirteen, Fourteen, Sixteen, Twenty-one, Twenty-two, Twenty-three, Twenty-seven, Twenty-eight, Twenty-nine, and Thirty of the indictment.

"Racketeering activity" means any act or threat involving murder or dealing in narcotic or other dangerous drugs.  An enterprise includes any group of individuals associated in fact which is engaged in or the activities of which affect interstate commerce. The phrase "anything of pecuniary value" means anything of value in the form of money or negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage.

It is charged in the indictment that within the Eastern District of Virginia, between on or about January 13th, 1992 and on or about February 19th, 1992, the defendants Richard Tipton, Cory Johnson, James H. Roane, Jr., Vernon Lance Thomas, and Sterling Hardy used a firearm during and in relationship  --  or in relation to the commission of a crime of violence or a drug-trafficking crime.

Now again, as I mentioned with respect to some of the charges I discussed earlier, no single defendant is charged in each of these counts.  The verdict form will assist you in keeping track of which defendants are charged in which counts and in giving individual consideration to each defendant for each count against him or her.

Let me read the firearms statute.  And the firearms violations are contained in Counts Six, Nine, Twelve, Fifteen, Twenty, and Twenty-six.  Title

015

18 United States Code Section 924(c)(1) provides in pertinent part:  Whoever during and in  relation to any crime of violence or drug trafficking crime for which he may be prosecuted in a Court of the United States uses or carries a firearm shall be guilty of a crime against the United States.

In order to sustain its burden of proof of the crime of using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime as charged in Counts Six, Nine, Twelve, Fifteen, Twenty, and Twenty-six of the indictment, the government must prove the following two essential elements beyond a reasonable doubt:  One, the defendant committed the crime as charged in the indictment; and two, during and in relation to the commission of that crime, the defendant knowingly used or carried a firearm.

The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, the attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense.

The term "drug trafficking crime" means an offense that is a felony and involves the distribution, manufacture, or importation of any controlled substances, or the conspiracy to distribute, import, or manufacture controlled substances.  The offenses alleged in Counts Three, Four, Five, Seven, Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-one, Twenty-two, Twenty-three, Twenty-four, Twenty-five, Twenty-seven, Twenty-eight, Twenty-nine, Thirty, Thirty-one, Thirty-two, and Thirty-three are crimes of violence or drug trafficking crimes.

Title 18 United States Code Section 92(1)(a)(3) defines firearm is including any weapon which will or is designed to, or may readily be converted to expel a projectile by the action of an explosive, the frame or receiver of any such weapon.  You need not find that the firearm was loaded or that it was operable at the time of the offense.

The phrase "uses or carries a firearm" means a firearm or firearms available to assist or aid in the commission of a crime of violence or a drug-trafficking crime charged in the indictment.

In determining whether a defendant used or carried a firearm, you may consider all of the factors received in evidence in the case, including the nature of the underlying crime of violence or drug-trafficking crime alleged:  the proximity of the

defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.

The government is not required to show that the defendant actually displayed or fired the weapon. The government is required, however, to prove beyond a reasonable doubt that the firearm was in the defendant's possession or under the defendant's control at the time that a crime of violence or a drug-trafficking crime was committed.

It is charged in the indictment that on or about January 15th, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, Cory Johnson, did knowingly and intentionally distribute a Schedule II narcotic controlled substance; that is, a mixture and substance described in Title 21 United States Code Section 841(b)(1)(A)(ii), which contains cocaine base commonly known as crack, or cook-'em-up, in violation of Title 21 United States Code Section 841(a)(1).

The prosecution on this count is based on a statute which is federal law, Title 11 U.S. Code Section 846, and Section 841(a)(1), which reads in pertinent part as follows:  It shall be unlawful for any person knowingly or intentionally to distribute a controlled substance.

In order to sustain its burden of proof for the crime of distribution of a controlled substance as charged in Count Thirty-one of the indictment, the government must prove the following two essential elements beyond a reasonable doubt:  The defendant, Cory Johnson, knowingly and intentionally distributed the controlled substance, crack cocaine described in the indictment; two, at the time of such distribution, the defendant knew that the substance distributed was crack cocaine, a controlled substance.

The term "to distribute" as used in these instructions means to deliver or to transfer possession or control of something from one person to another.  The term "to distribute" includes the sale of something by one person to another.  You are instructed as a matter of law that crack cocaine is a controlled substance.  It is solely for the jury, however, to determine whether or not the government has proved beyond a reasonable doubt that the defendant distributed a substance which was crack cocaine.

The evidence received in this case relating to Counts Thirty-two and Thirty-three need not prove the actual amount of the controlled substance that was

017

part of the alleged transaction or the exact amount of the controlled substance alleged in the indictment as distributed by the defendant.  The government must prove beyond a reasonable doubt, however, that a measurable amount of the controlled substance was in fact knowingly and intentionally distributed by the defendant.

Count Thirty-two reads as follows:  It is charged in the indictment that on or about February 2nd, 1992 at Richmond, Virginia, in the Eastern District of Virginia, defendants Richard Tipton, Cory Johnson, James H. Roane, Jr., Sterling Hardy, Vernon Lance Thomas, and Jerry Gaiters did knowingly and intentionally possess with intent to distribute a Schedule II narcotic controlled substance, that is, a mixture and substance described in Title 21 United States Code Section 841(a)(1)(ii) which contains cocaine base commonly known as crack or cook-'em-up in violation of Title 21 United States Code Section 841(a)(1).  And Title 18 United States Code Section 2.

It is charged in the indictment in Count Thirty-three the following:  That on or about April 10th, 1992 at Richmond, Virginia, in the Eastern District of Virginia, the defendant, Richard Tipton, did knowingly and intentionally possess with intent to distribute a Schedule II narcotic controlled substance; that is, more than 50 grams of a mixture and substance described in Title 21 U.S. Code Section 841(b)(1)(A)(ii), which contains cocaine base commonly known as crack or cook-'em-up, in violation of Title 21 United States Code Section 841(a)(1), and Title 18 United States Code Section 2.

Section 841(a)(1) of Title 21 of the United States Code provides in pertinent part that it shall be unlawful for any person knowingly or intentionally to possess with intent to distribute a controlled substance.  In order to sustain its burden of proof for the crime of possession of a controlled substance with intent to distribute that substance as charged in Counts Thirty-two and Thirty-three of the indictment, the government must prove the following three essential elements beyond a reasonable doubt:  The defendant possessed the controlled substance described in the indictment; the defendant knew that the substance was a controlled substance; and the defendant intended to distribute this controlled substance.

The law permits the jury in proper circumstances to infer intent to distribute from the quantity of the substance possessed, and/or the manner in which it is packaged.  However, the ultimate question of

018

intent to distribute should be resolved by the jury upon all of the evidence in the case.  The law recognizes two kinds of possession:  actual possession and constructive possession.  A person who knowingly had direct physical control over a thing at a given time is then in actual possession of it.  A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

The law recognizes also that possession may be sole or joint.  If one person alone has actual or constructive possession of a thing, possession is sole.  If two or more persons share actual or constructive possession of a thing, possession is joint.  You may find that the element of possession as that term is used in these instructions is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged.  The law recognizes that ordinarily, anything a person can do for himself may also be accomplished by that person through direction of another person as his agent or her agent, or by acting in concert with or under the direction of another person or persons in a joint effort or enterprise.  So if another person is acting under the direction of the defendant, or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conducts of such other persons, just as though the defendant had committed

the acts or engaged in such conduct.  Notice, however, that before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participated in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons,

and that the defendant voluntarily participated in its commission with the intent to violate the law.

You will note that the indictment charges that the offense or offenses were committed on a certain date. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

The word "knowingly" as that term has been used from time to time in these instructions means that the act was done voluntarily and intentionally and not because of a mistake or accident. The word "willfully" as that term has been used from time to time in these instructions means that the act was committed voluntarily and purposefully with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

A separate crime or offense is charged against one or more of the defendants in each count of the indictment. Each offense and the evidence pertaining to it should be considered separately. Also, the case of each defendant should be considered separately and individually. The fact that you may find one or more of the accused guilty or not guilty of any offenses charged should not control your verdict as to any other offense or any other defendant. I caution you, members of the jury, that you are here to determine the guilt or innocence of the accused from the evidence in the case. The defendant is not on trial for any act or conduct or offense not alleged in the indictment. Neither are you called upon to return a verdict as to the guilt

or innocence of any other person or persons not on trial as a defendant in this case.

Also, the punishment provided by law for the offenses charged in the indictment should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused.

Any verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. In other words, your verdict must be unanimous. It is your duty as jurors to consult with one another and to deliberate in an effort to reach agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.

020

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous.  But do not surrender your honest conviction as to the weight of the evidence or the effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

Remember at all times you are not partisans. You are judges, judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

Now, upon retiring to the jury room, you should first select one of your number to act as your Foreperson, who will preside over your deliberations and will be your spokesperson here in open Court.

Now, I have prepared verdict forms for you, and I need to give you some explanation in that regard. There is a verdict form that relates to each individual defendant.  And the way you can tell which verdict form relates to which defendant, at the top you will see the style of the case and that defendant's name.  The United States of America versus Richard Tipton.  And then you will have the verdict form.  Now, the verdict forms will vary. They are different because each defendant is charged differently under the indictment.  But there is one thing that I want to make clear, and this will relate to the verdict forms of Mr. Tipton, Mr. Johnson, and Mr. Roane.

The first thing you will do is deal with Count One, which is the conspiracy.  It says, "We the jury find as follows on Count One, which is conspiracy to distribute controlled substance:"  And then there will be a line where you will write in guilty or not guilty.  When you are finished with Count One, you move to Count Two.  Now, Count Two is the Continuing Criminal Enterprise count.  And when you go down under Count Two, the first thing you see will be a question.  And the question is as follows:  "Do you find that the government has proven beyond a reasonable doubt that a Continuing Criminal Enterprise existed as charged in the indictment?" And there is a line, yes or no.  You have got to answer that question first before you go any further.  You have got to answer this question.  And it says, as I say, this relates to both Mr. Johnson and Mr. Roane, that question is presented, and you have to answer that question on each verdict form.

If you indicated above that a Continuing Criminal Enterprise did not exist, you must find the defendant, Richard Tipton, Cory Johnson, or James H. Roane, as the case may be, not guilty as to Count

021

Two.  If you indicated that a Continuing Criminal Enterprise did exist, then you must go further and now determine whether the defendant, Richard Tipton, is guilty or not guilty of the crime of engaging in that Continuing Criminal Enterprise as charged in

3235

Count Two, and you would enter your finding below, guilty or not guilty.  And you have to do this as to Mr. Johnson and as to Mr. Roane.  You see, it is a process.  Answer the question:  Was there a Continuing Criminal Enterprise?  If no, then obviously no one can be guilty of engaging in that Continuing Criminal Enterprise, so you would have to be not guilty as to Count Two.  If yes, it doesn't follow then that they are automatically guilty of it.  You have to then decide is this defendant guilty of engaging in the continuing enterprise you have found.  Does everybody understand?
        (No response.)
        Then as you go through the indictment, and you get to the charges which allege killings of certain individuals while engaged in or working in furtherance of a Continuing Criminal Enterprise, you will see a parenthesis after each one of those charges.  For instance, this is Mr. Tipton.  Count Three, the killing of Douglas Talley while engaged in or working in furtherance of a Continuing Criminal Enterprise.  Beneath that is a parenthetical to remind you.  If you indicated in response to the question set forth under Count Two above that a Continuing Criminal Enterprise did not exist, you

3236

must find the defendant not guilty as to this count.  Again, it follows as the night does day.  If you all do not find a Continuing Criminal Enterprise, then you cannot find a defendant guilty of engaging in killing somebody while engaging in or working in a Continuing Criminal Enterprise.
        The other counts are self-explanatory as you go through them.  The 1959 count, which I've described to you in detail, the elements there, you would consider those independently, as well as the drug counts, the firearm counts.  Consider those independently based on the evidence.  But remember that the Continuing Criminal Enterprise count is tied to the allegations of murder while engaged in or working in a Continuing Criminal Enterprise.
        You go through each individual defendant, through their verdict form, and when you have completed it the Foreperson will sign the form and date it.  And you will have done your job as to that defendant.  And then you will go to the next defendant and you would go through the same process.  Make your decisions.  And you do that as it relates

to each individual defendant.

When you have reached unanimous agreement and dealt with all the defendants, you simply let us

know.  You will just have to knock on the door and the Bailiff, Marshal, will be standing there.

If you have some question during the course of your deliberations, do the same thing.  Just knock on the door.  We want you to write your question down and have your Foreperson sign the question.  Knock on the door, give it to the Marshal, and he will bring it to me.  If it is a question that I can't answer, and sometimes I can't, I just can't answer it.  You may ask me something about the evidence.  You heard it.  You are going to have to determine what the evidence is.  But if there is something technical or something that you want to know from me, I will usually bring you back in and then give you the answer as best I can in open Court from the bench.

Now, if during your deliberations you all have some question and need to come out here, please don't tell me how you stand as it relates to any defendant or any count.  We don't want to hear from you until you have a unanimous verdict.  If you come out here and you ask a question and you come out and the Foreperson stands up and says, "Judge, we are six to six on this," that would be tragic because it would result in a mistrial.  We don't want to hear that from you.  So don't do that.

Now, the exhibits will be going out with you.  They will follow momentarily.  Like I said, your first order of business, just select your Foreperson.  Lunch should be waiting on you, probably.  And you all can eat your lunch.  The exhibits will follow.  Take your time.  You have as much time or as little time as you wish.  It is up to you, whatever you need to do justice to this trial and the parties.

All right, counsel, any objections other than those previously stated?

MR. VICK:  May we approach?

(At Bench.)

MR. VICK:  I understood the way you read the verdict form, I thought it might be misleading.  They need to find, one, CCE existed.  If they find that the CCE existed then there is almost a two-part second question.  Two, were these people charged, Roane, Tipton, or Johnson, leaders of the CCE, organizers, managers, or supervisors of the CCE, then they go to two.  But the way it is written, when they say engaged in, they could indeed be found not guilty of Count Two but still be found guilty of the murders if, as I argued, there was a CCE, "Light" was the

023

head of it, the organizer, supervisor, or manager. The guilt would still follow under the other counts. The language in the second part said "engaged in." That's not really what Count Two is about. That's what the other counts are about.

And there is one other thing, my oversight as to Count Thirty-one. We charged, just like we did in Count Thirty, might be Thirty-two, we charged more than 50 grams. It will be less than 50 grams so it needs to be deleted. Just drug distribution.

MR. BAUGH: I thought the Court did.

MR. VICK: That was one count. There is also a second one.

MR. BAUGH: Your Honor, in light of the argument of the United States, I have prepared a multiple instruction. I'm concerned about that. We have asked for that because of the New York Boyz thing. Because there might be a question for the jury whether the New York Boyz activity led to this conspiracy. The United States argued that yesterday. I think we would ask for that.

THE COURT: I think it is clear enough.

MR. VICK: My concern as to Count Two, they need to be -- to be found guilty of Count Two, they need to be found to be managers, supervisors, or organizers.

THE COURT: I don't know how much more I can say about that.

MR. VICK: Yes, sir. But my concern is not with the jury instruction, only with the verdict form. The verdict form says they need to be found guilty of Count Two only to have been engaged in. Am I making my distinction clear?

MR. BAUGH: On behalf of defendant Roane, I think you are correct. It seems to apply to Count Two if a CCE existed.

MR. VICK: Our argument is that they could find a CCE, find them not guilty of Count Two, but still find them guilty of the murder counts in furtherance of the CCE.

THE COURT: No, I explained that to them. I didn't put all the elements in the verdict form. I'm going to leave it alone.

MR. VICK: Okay. Could I show the Court the other --

THE COURT: Thirty-two?

MR. VICK: The April 10th count. That should be "less than." We didn't prove the 50 grams, so it should be just plain possession.

MR. GEARY: I offer Number 18 in regard to the five or more persons.

024

THE COURT: Oh, sure.

(Court perusing instruction offered by Mr. Baugh.)

MR. VICK: There has been no evidence of multiple conspiracies here. There has been argument by counsel, but evidence of only one conspiracy. Certainly there has been no evidence of any conspiracy with any other goal other than murder and distribution of drugs.

MR. WHITE: On behalf of Mr. Tipton, Your Honor, we would suggest that the New Jersey information is separate as well as the separate Central Gardens information is separate. That's for the jury.

THE COURT: You can suggest all you want. I'm trying to recollect. And what's in evidence, separate conspiracy?

MR. BAUGH: I can tell you this. The United States cannot put my client in New Jersey, period, dot.

MR. WHITE: That argument could be made in regard to the Central Gardens period before Mr. Roane was arrested and also surrounding the Sandy Lane stuff. There was no violence alleged in connection with that.

THE COURT: I'm not going to give it. Your objection is noted.

MR. BAUGH: May I stick it in as an exhibit?

MR. WHITE: We object on behalf of defendant Tipton as well.

THE COURT: All right.

(In Open Court.)

All right, let me say one other thing about Count Thirty-three. The indictment will read as follows when you receive it: The Grand Jury charges that on or about April 10th, 1992 at Richmond, Virginia in the Eastern District of Virginia, the defendant Richard Tipton did knowingly and intentionally possess with intent to distribute a Schedule II narcotic controlled substance, that is, a mixture and substance described in Title 21 U.S. Code Section 841(b)(1)(A)(ii) which contains cocaine base, commonly known as crack or cook-'em-up.

All right. As I indicated to you, the alternates, the other day, we will have to excuse you for now. You will be outside of this process during the deliberations. We will, if necessary, call you back and have you sit with us and be with us during any penalty or sentencing phase that might be required. So we can't obviously give you any estimate as to when these deliberations will be

over.  We will simply call you and give you a time to come when we know what that time will be.

If you would be excused now, I think we have lunch for you.  Go get your lunch out of there and then be excused until we call you again.  Thank you very, very much for your participation so far, and I'll thank you in advance in case we do need you again.  Thank you so much.  You all can be excused.

(The alternate jurors left the courtroom.)

Do we have the video in the jury room?

MR. VICK:  The TV is right here.  It just simply needs to be plugged in.

THE COURT:  Let's go ahead and do that.

(Mr. Vick left the courtroom with television monitor.)

All right, we will excuse you now to begin your deliberations.  Elect your Foreperson, have your lunch, and get to work.  Everyone remain seated while the jury leaves the courtroom.)

(The jury left the courtroom.)

Mr. Marshal, you can remove the defendants.

(The defendants were removed from the courtroom.)

MR. VICK:  I don't know how close the Court wants us to stay.  Can we go back to our offices?

THE COURT:  Give us a number where we can reach you and you can get here within minutes.  We will be in recess.

(Recess to await call of the jury taken at 1:25 p.m.)

(Court was reconvened at 5:15 p.m.)

THE COURT:  All right.  Let's bring in the jury.

(The jury entered the courtroom.)

All right.  I'm going to send you home now.  You all have had a long day.  And I'd like for you to come back tomorrow at 9:30 unless that's a problem for somebody, so you can get an early fresh start in the morning.  As I've indicated to you over and over again, I really want to emphasize this now, do not discuss this case with anyone and don't allow anyone to discuss it with you.  Don't review any newspaper, TV, radio items related to this case.

In the morning when you come in at 9:30, we have to do it this way.  Don't start deliberating as soon as you get grouped together.  I have to bring you in here and then send you right back out to begin your deliberations.  So wait until I do that.  You all have a good evening.  Everyone remain seated until the jury leaves the courtroom.

(The jury left the courtroom.)

All right.  You can remove the defendants.

026

# EXHIBIT  2

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA



Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>RICHARD TIPTON aka Whittey )<br>(Counts 1-7, 11-30, 32-33) )<br><br>CORY JOHNSON aka "O" aka "CO" )<br>(Counts 1, 2, 8-32) )<br><br>JAMES H. ROANE, JR., aka "J.R." )<br>(Counts 1, 2, 5-16, 32) )<br><br>LANCE THOMAS aka Anthony Mack )<br> aka "V" )<br>(Counts 1, 2, 14-16, 32) )<br><br>JERRY R. GAITERS )<br>(Counts 1, 17-23, 32) )<br><br>STERLING HARDY )<br>(Counts 1, 14-16, 32) )<br><br>SANDRA REAVIS )<br>(Count 1) )<br><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CRIMINAL NO. *3. 92 CR 68*<br><br>21 USC § 846<br>Conspiracy<br>(Count 1)<br><br>21 USC § 848<br>Continuing Criminal Enterprise<br>(Count 2)<br><br>21 USC § 848(e)(1)(A) & 18 USC § 2<br>Murder in Furtherance of CCE<br>(Counts 3,5,8,11,17,18,19,24,25)<br><br>18 USC § 924(c)<br>Use of Firearm in Relation to Crime of<br>Violence or Drug Trafficking Crime<br>(Counts 6,9,12,15,20,26)<br><br>18 USC §§ 1959 & 2<br>Violent Crimes in Aid of Racketeering<br>(Counts 4,7,10,13,14,16,21-23,27-30)<br><br>21 USC § 841(a)(1)<br>Distribution of Crack<br>(Count 31)<br><br>21 USC § 841(a)(1) & 18 USC § 2<br>Possession w/Intent to Distribute Crack<br>(Counts 32-33) |

APRIL 1992 TERM - At Richmond

001

## COUNT ONE

THE GRAND JURY CHARGES that from on or about January, 1989, the exact date being unknown to the grand jury, and continuously thereafter up to and including the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants, RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O," aka 'CO", LANCE THOMAS, aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", JERRY GAITERS, STERLING HARDY, and SANDRA REAVIS, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each other and with other persons, both known and unknown to the grand jury to commit the following offenses against the United States of America:

1.    To knowingly, intentionally, and unlawfully possess with the intent to distribute, and to distribute, a Schedule II narcotic controlled substance, that is, at least fifty (50) grams or more of a mixture or substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, in violation of Title 21, United States Code, Section 841(a)(1).

## WAYS, MANNERS, AND MEANS OF THE CONSPIRACY

The ways, manners, and means by which the conspirators carried out the purpose of the conspiracy includes, but are not limited to, the following:

1.    It was part of the conspiracy that defendants and co-conspirators would cause cocaine to be purchased in New York City, and elsewhere, and transported to Richmond, Virginia, where the cocaine was to be distributed.

2

002

2.  It was further part of the conspiracy that once the defendants and co-defendants would receive cocaine in Richmond, Virginia, they would cook the cocaine in such a way to make it cocaine base (crack or cook-em-up), which cocaine was intended to be distributed on the streets of Richmond, Virginia.

3.  It was further part of the conspiracy that the defendants and co-defendants would induce other individuals to work for them selling the crack cocaine on the streets of Richmond, Virginia.

4.  It was further part of the conspiracy to engage in a pattern of violent activity, including murder, assaults, and threats of violence to further the goals of the conspiracy. To that end, members of the conspiracy bought, possessed, and transferred firearms, which firearms were used in their violent activities.

## OVERT ACTS

In furtherance of this conspiracy, and to bring about the objects and goals of the conspiracy, the defendants, co-conspirators, and unindicted co-conspirators committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

1.  In or about December, 1991, defendants RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a cocaine debt.

2.  On or about January 5, 1992, RICHARD TIPTON, aka Whittey, murdered Douglas A. Talley.

3

3. On or about January 13, 1992, RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R." murdered Douglas Moody.

4. On or about January 13, 1992, an individual known to the grand jury, disposed of the knife used by JAMES ROANE, JR., aka "J.R.", to kill Doug Moody.

5. On or about January 14, 1992, members of the conspiracy caused an individual known to the grand jury to purchase one Glock handgun and two Tech 9mm handguns from Southern Gun World in Richmond, Virginia.

6. On or about January 14, 1992, JAMES ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O," aka "CO", murdered Peyton Maurice Johnson.

7. On or about January 15, 1992, CORY JOHNSON, aka "O," aka "CO", distributed a certain amount of cocaine base ("crack" or "cook em up") in Richmond, Virginia.

8. On or about January 29, 1992, RICHARD TIPTON aka Whittey, JAMES ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", murdered Louis J. Johnson, Jr., in Richmond, Virginia.

9. On or about January 31, 1992, CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a drug debt, and solicited that individual to kill Dorothy Armstrong.

10. On or about February 1, 1992, JAMES ROANE, JR., aka "J.R.", RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and STERLING HARDY murdered Torrick Brown and shot Martha McCoy in Richmond, Virginia.

4

11.     On or about February 1, 1992, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", ~~STERLING HARDY~~ *C14* and JERRY GAITERS murdered Bobby Long, Anthony Carter, and Dorothy Mae Armstrong aka Mousey, in Richmond, Virginia.

12.     On or about February 2, 1992, defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, LANCE THOMAS,aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", and JERRY GAITERS possessed with the intent to distribute crack cocaine.

13.     On or about February 13, 1992, STERLING HARDY solicited the murders of certain individuals.

14.     On or about February 19, 1992, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", murdered Curtis Thorne, Linwood Chiles, and shot, seriously wounding, Gwendolyn Green and Priscilla Green, in Richmond, Virginia.

15.     On or about April 10, 1992, RICHARD TIPTON, aka Whittey, possessed with the intent to distribute crack cocaine in Richmond, Virginia.

(In violation of Title 21, United States Code, Section 846).

## COUNT TWO

THE GRAND JURY FURTHER CHARGES that from at least January, 1991, and continuously thereafter up to and including the date of the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and LANCE THOMAS, aka Anthony Mack, aka "V," unlawfully, intentionally, and

5

knowingly, did engage in a Continuing Criminal Enterprise, that is, they did viola e Title 21, United States Code, Section 841 and 846, including, but not limited to, those violations alleged in the instant indictment, which are realleged and incorporated by reference herein, and did commit other violations of said statutes, which violations were part of a continuing series of violations of said statutes undertaken by RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and LANCE THOMAS, aka Anthony Mack, aka "V," in concert with a: least five other persons with respect to whom they occupied positions of organizer, supervisor, and manager, and from which continuing series of violations the defendant, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and LANCE THOMAS, aka Anthony Mack, aka "V," obtained substantial income and resources.

(In violation of Title 21, United States Code, Section 848.)

## COUNT THREE

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant RICHARD TIPTON aka Whittey, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Douglas A. Talley, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

6

## COUNT FOUR

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, RICHARD TIPTON aka Whittey, did knowingly, intentionally, and unlawfully cause the murder of Douglas Talley, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIVE

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Douglas Moody, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

7

## COUNT SIX

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is, a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Five and Seven of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT SEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, intentionally, and unlawfully cause the murder of Douglas Moody, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

8

008

## COUNT EIGHT

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Peyton Maurice Johnson, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINE

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Eight and Ten of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

9

## COUNT TEN

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, JAMES H. ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Peyton Maurice Johnson, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity. and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT ELEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka *Lance Thomas AKA Anthony Mack AKA "V" 12.44* "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Louis J. Johnson, Jr., and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

10

## COUNT TWELVE

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka LANCE THOMAS AKA ANTHONY MACK AKA "V" C-2/ "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Eleven and Thirteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT THIRTEEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka LANCE THOMAS AKA ANTHONY MACK AKA "V" (of "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Louis J. Johnson, Jr., as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

11

011

## COUNT FOURTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", LANCE THOMAS, aka Anthony Mack, aka "V," and STERLING HARDY, did knowingly, intentionally, and unlawfully cause the murder of Torrick Brown, Jr., as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIFTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", LANCE THOMAS, aka Anthony Mack, aka "V," and STERLING HARDY, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Fourteen and Sixteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

12

## COUNT SIXTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", LANCE THOMAS, aka Anthony Mack, aka "V," and STERLING HARDY, did knowingly, intentionally, and unlawfully commit assault resulting in serious bodily injury to Martha McCoy, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT SEVENTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Bobby Long, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

13

## COUNT EIGHTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Anthony Carter, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINETEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Dorothy Mae Armstrong, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

14

## COUNT TWENTY

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Seventeen, Eighteen & Nineteen and Twenty-One through Twenty-Four of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Bobby Long, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

15

## COUNT TWENTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Anthony Carter, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Dorothy Mae Armstrong, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

16

## COUNT TWENTY-FOUR

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Curtis Thorne, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY-FIVE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Linwood Chiles, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

17

## COUNT TWENTY-SIX

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846, as set forth in Counts One, Twenty-Four, Twenty-Five and Twenty-Seven through Thirty of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-SEVEN

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Curtis Thorne, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

18

018

## COUNT TWENTY-EIGHT

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Linwood Chiles, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-NINE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the maiming of Priscilla Green, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

19

## COUNT THIRTY

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the maiming of Gwendolyn Green, as consideration for the receipt of, and as consideration for a promise or agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining or increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT THIRTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about January 15, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, CORY JOHNSON, aka "O," aka "CO", did knowingly and intentionally distribute a Schedule II narcotic controlled substance, that is, a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

20

020

## COUNT THIRTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 2, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, LANCE THOMAS, aka Anthony Mack, aka "V", JAMES ROANE, JR., aka "J.F.", and JERRY GAITERS, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## COUNT THIRTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about April 10, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section

21

021

841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

A TRUE BILL:

_____
F O R E P E R S O N

RICHARD CULLEN
UNITED STATES ATTORNEY

By:

_____
Howard C. Vick, Jr.
Assistant United States Attorney

_____
William Parcell
Special Assistant U.S. Attorney

22

022

Case 3:92-cr-00068-DJN   Document 153-1   Filed 02/18/22   Page 77 of 82 PageID# 4589

FORM DBD-34
JUN. 85

No. _ _ _ _ _ _ _ _ _ _ _

# UNITED STATES DISTRICT COURT

_EASTERN_ _ _ _ _ _ _     *District of* _ _ VIRGINIA _ _ _ _ _ _ _

_ _ _ _RICHMOND_ _ _ _ _ _ _ _   *Division*

## THE UNITED STATES OF AMERICA

*vs.*

_ RICHARD TIPTON_aka_Whittey, et al _ _ _ _ _ _ _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

## INDICTMENT

In violation of 21 USC § 846 - Conspiracy
In violation of 21 USC § 848 - Continuing Criminal Enterprise
In violation of 21 USC § 848(e)(1)(A) & 18 USC § 2 - Murder in Furtherance of CCE
In violation of 18 USC § 924(c) - Use of Firearm in Relation to Crime of Violence or Drug Trafficking Crime
In violation of 18 USC §§ 1959 & 2 - Violent Crimes in Aid of Racketeering
In violation of 21 USC § 841(a)(1) - Distribution of Crack
In violation of 21 USC § 841(a)(1) & 18 USC § 2 - Possession w/Intent to Distribute Crack

*A true bill,*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                            *Foreman*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*

*of* _ _ _ _ _ _ _ _ _ _ *A.D. 19* _ _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                                      *Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>  v.<br><br> JAMES H. ROANE, JR.<br>   a.k.a. "J.R." | )<br>)<br>)<br>)<br>)  Criminal Case No.  3:92CR68-0:3<br>)<br>)<br>)<br>)<br>) |



**VERDICT**

WE, THE JURY, FIND as follows:

**Count 1:**      Conspiracy to Distribute Controlled Substance

_____Guilty_____
(Guilty or Not Guilty)

**Count 2:**      Continuing Criminal Enterprise

**Question:** Do you find that the government has proven, beyond a reasonable doubt, that a Continuing Criminal Enterprise existed as charged in the indictment?

Yes: ___Yes___          No: _____

If you indicated above that a Continuing Criminal Enterprise did **not** exist, you must find the defendant, JAMES H. ROANE, JR., Not Guilty as to Count 2.

If you indicated that a Continuing Criminal Enterprise **did** exist, you must now determine whether defendant JAMES H. ROANE, JR. is Guilty or Not Guilty of the crime of engaging in that continuing criminal enterprise as charged in Count 2, and enter your finding below:

_____Guilty_____
(Guilty or Not Guilty)

001

467

Defendant JAMES H. ROANE, JR. is not charged in Counts 3-4 of the indictment.

Count 5:    Killing of Douglas Moody while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

_____Guilty_____
(Guilty or Not Guilty)

Count 6:    Use of Firearm in Relation to Killing of Douglas Moody

_____Guilty_____
(Guilty or Not Guilty)

Count 7:    Killing of Douglas Moody to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

Count 8:    Killing of Peyton Maurice Johnson while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

_____Guilty_____
(Guilty or Not Guilty)

Count 9:    Use of Firearm in Relation to Killing of Peyton Maurice Johnson

_____Guilty_____
(Guilty or Not Guilty)

002

Count 10:            Killing of Peyton Maurice Johnson to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

Count 11:            Killing of Louis J. Johnson, Jr., while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did <u>not</u> exist, you must find the defendant Not Guilty as to this Count).

_____Guilty_____
(Guilty or Not Guilty)

Count 12:            Use of Firearm in Relation to Killing of Louis J. Johnson, Jr.

_____Guilty_____
(Guilty or Not Guilty)

Count 13:            Killing of Louis J. Johnson, Jr., to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

Count 14:            Killing of Torrick Brown, Jr., to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

Count 15:            Use of Firearm in Relation to Killing of Torrick Brown, Jr., and Maiming of Martha McCoy

_____Guilty_____
(Guilty or Not Guilty)

003

Count 16:          Maiming of Martha McCoy to Maintain or Increase Position in Racketeering Enterprise

Guilty

_____
(Guilty or Not Guilty)

Defendant JAMES H. ROANE, JR., is not charged in Counts 17-31 of the indictment.

Count 32:          Possession of Controlled Substance with Intent to Distribute  (on or about 2/2/92)

Guilty

_____
(Guilty or Not Guilty)

Defendant JAMES H. ROANE, JR. is not charged in Count 33 of the indictment.

SO SAY WE ALL.

_____          2/3/93
FOREPERSON'S SIGNATURE                    _____
                                          DATE

004