IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:92-cr-68 (DJN) |
| | ) | |
| JAMES ROANE, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**Government's Response in Opposition
to Defendant's Motion to Vacate**

In 1993, a jury convicted the defendant, James Roane, Jr., for his role in a drug organization

that was responsible for at least ten murders and additional maimings between January and

February 1992. The jury found Roane responsible for three murders— the killings of Douglas

Moody, Peyton Johnson, and Louis Johnson—and other violent crimes. Roane's convictions and

sentence have been upheld on direct appeal and multiple rounds of collateral review. Roane now

seeks to vacate four of his firearm convictions (Counts 6, 9, 12, 15) under *United States v. Davis*,

139 S. Ct. 2319 (2019). But *Davis* had no effect on Roane's convictions.

First, Roane's challenge to his firearm convictions is procedurally defaulted. Defendants

have been challenging statutes on vagueness grounds for decades and nothing prevented Roane

from lodging a vagueness challenge to 18 U.S.C. § 924(c). Moreover, neither "cause" nor

"prejudice" exits to excuse this default.

Second, *Davis* did nothing to alter the meaning of a "drug-trafficking crime." *See* 18 U.S.C.

§ 924(c)(2). With or without *Davis*, three of Roane's four firearm convictions (Counts 6, 9, 12)

are supported by independent and still-valid drug-trafficking predicates, namely, violations of 21

1

U.S.C. § 848(e) (capital murder in furtherance of a criminal enterprise). The debate over what is or is not a "crime of violence" after *Davis* is academic as to those counts. A conviction under § 924(c) can be sustained on only one valid predicate. Because three of Roane's four firearm convictions rely on still-valid drug-trafficking predicates, the Court can easily deny Roane's motion as to those counts.

But even if that were not the case, all four of Roane's firearm convictions are supported by still-valid crime-of-violence predicates, even after *Davis*. Capital murder in furtherance of a criminal enterprise and VICAR murder and maiming are crimes of violence under § 924(c)(3)(A).

Finally, even if the Court concludes that some of the predicate offenses underlying Roane's convictions are no longer valid, his challenge would still fail. Under governing precedent, Roane must show more than a reasonable possibility that the jury *only* found him guilty on Counts 6, 9, 12, and 15 in reliance on the invalid predicate. *See United States v. Said*, 26 F.4th 653 (4th Cir. 2022). Ambiguity and uncertainty are not enough on collateral review for Roane to show a substantial and injurious effect on his verdict. Roane does not even attempt to make this showing, thus providing a fourth basis for this Court to deny relief. And Roane could not possibly make the requisite showing. For example, because each § 848(e) murder involved a victim who was shot with a firearm, and because § 848(e) itself requires a nexus between the murder and the drug trafficking, Roane cannot meet his burden of showing that the jury would not have convicted him of the § 924(c) counts that rely on a still valid drug-trafficking predicate.

**Factual Background**

**A.      Roane is indicted, convicted, and sentenced.**

On July 20, 1992, Roane, along with six others, was charged in a 33-count indictment with the following offenses:

| Count | Offense | Statutory Provision |
|---|---|---|
| Count 1 | Conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base | 21 U.S.C. § 846 |
| Count 2 | Engaging in a continuing criminal enterprise | 21 U.S.C. § 848(a) |
| Counts 5, 8, 11 | Capital murder in furtherance of a criminal enterprise | 21 U.S.C. § 848(e) and 18 U.S.C. § 2 |
| Counts 7, 10, 13, 14, and 16 | Commission of violent crimes in aid of racketeering activity | 18 U.S.C. § 1959 |
| Counts 6, 9, 12, and 15 | Use of a firearm in relation to a crime of violence or a drug-trafficking offense | 18 U.S.C. § 924(c) |
| Count 32 | Possession with intent to distribute cocaine base | 21 U.S.C. § 841(a)(1) |

Each firearm offense charged in Counts 6, 9, 12, and 15—the only convictions that Roane challenges here—relied on multiple underlying predicates.

Count 6 charged Roane with using, or aiding and abetting the use, of a firearm on or about January 13, 1992, during and in relation to the following crimes of violence or drug trafficking crimes:

| Count | Predicate Offense |
|---|---|
| Count 1 | 21 U.S.C. § 846 |
| Count 5 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Douglas Moody) |
| Count 7 | 18 U.S.C. § 1959 (VICAR murder of Douglas Moody) |

Count 9 charged Roane with using, or aiding and abetting the use, of a firearm on or about January 14, 1992, during and in relation to the following crimes of violence or drug trafficking crimes:

| Count | Predicate Offense |
|---|---|
| Count 1 | 21 U.S.C. § 846 |
| Count 8 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Payton Maurice Johnson) |

3

| Count 10 | 18 U.S.C. § 1959 (VICAR murder of Payton Maurice Johnson) |

Count 12 charged Roane with using, or aiding and abetting the use, of a firearm on or about January 29, 1992, during and in relation to the following crimes of violence or drug trafficking crimes:

| Count | Predicate Offense |
| --- | --- |
| Count 1 | 21 U.S.C. § 846 |
| Count 11 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Louis J. Johnson, Jr.) |
| Count 13 | 18 U.S.C. § 1959 (VICAR murder of Louis J. Johnson, Jr.) |

Count 15 charged Roane with using, or aiding and abetting the use, of a firearm on or about February 15, 1992, during and in relation to the following crimes of violence or drug trafficking crimes:

| Count | Predicate Offense |
| --- | --- |
| Count 1 | 21 U.S.C. § 846 |
| Count 14 | 18 U.S.C. § 1959 (VICAR murder of Torrick Brown, Jr.) |
| Count 16 | 18 U.S.C. § 1959 (VICAR maiming of Martha McCoy) |

These charges stemmed from Roane's leadership role, along with Cory Johnson and Richard Tipton, in a continuing criminal enterprise, the "New York Boyz," that trafficked large quantities of cocaine in the Richmond, Virginia area between 1990 and 1992.

In February 1993, a jury convicted Roane of all three capital murders under § 848(e) (Counts 5, 8, and 11); conspiracy to possess cocaine base with the intent to distribute under § 846 (Count 1); engaging in a continuing criminal enterprise under § 848(a) (Count 2); committing violent crimes in aid of racketeering activity under § 1959 (Counts 7, 10, 13, 14, and 16); using a firearm in relation to a crime of violence or a drug-trafficking offense under § 924(c) (Counts 6,

9, 12, and 15); and one count of possession of cocaine base with the intent to distribute under § 841(a)(1) (Count 32). Following a penalty hearing on the capital murder counts, the jury recommended that Roane be sentenced to death for one of the three murders for which he was convicted under § 848(e)—the murder of Douglas Moody. But for all three capital murders, the jury unanimously found all of the gateway intent factors, including that Roane intentionally killed the victim of the capital crime.

In accordance with the jury's recommendation, the Honorable James R. Spencer sentenced Roane to death. *Id*. The jury also sentenced Cory Johnson and Richard Tipton to death. After sentencing, Judge Spencer refused to order the defendants' execution on the grounds that Congress neither authorized the means by which the death sentences were to be carried out nor authorized the Attorney General to implement regulations to that effect. *Id*.

All three defendants appealed their convictions and sentences and the government cross-appealed Judge Spencer's stay of execution of the death sentences. *Id*. The Fourth Circuit affirmed the defendants' convictions and sentences, with the exception of the Count One § 846 cocaine conspiracy, which it vacated as being a lesser included offense of the § 848 continuing criminal enterprise convictions. *Id*. at 891, 903. The Fourth Circuit also reversed Judge Spencer's refusal to execute the defendants' death sentences. *Id*. at 903.

### B.  Roane's application for a successive petition under 28 U.S.C. § 2255

On May 22, 2020, Roane filed a motion for authorization to file a successive petition under § 2255 challenging his four § 924(c) convictions under *Davis*. The government opposed the motion, and after multiple rounds of briefing and two orders holding the case in abeyance, the Fourth Circuit granted the application by a 2-1 vote). On February 22, 2022, Roane filed the present motion to vacate. (ECF No. 153.) Through this motion, Roane renews his post-*Davis*

challenge to Counts 6, 9, 12, and 15. For the reasons that follow, Roane's challenge fails for both procedural and substantive reasons.

## Argument

**I.     Roane's challenge to his § 924(c) convictions is procedurally defaulted.**

*Davis* is retroactive on collateral review. *See In re Thomas*, 988 F.3d 783, 790 (4th Cir. 2021). Even so, by not raising his constitutional attack on his firearm convictions before they became final, Roane procedurally defaulted such a challenge. *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Fugit*, 703 F.3d 248, 253–54 (4th Cir. 2012); *see also Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562, 571 (4th Cir. 2021) ("Principles of procedural default sharply limit a prisoner's ability to raise on collateral review claims not raised in his initial criminal proceeding or on direct appeal."). That default "may be excused in two circumstances: where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice resulting therefrom." *Fugit*, 703 F.3d at 253 (quoting *Bousley*, 523 U.S. at 621). Roane cannot satisfy either standard. Nor has he even attempted to.

### A. Roane cannot demonstrate actual innocence

Roane is not actually innocent of violating § 924(c). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id*. at 623–24 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also United States v. Courtade*, 929 F.3d 186, 191 (4th Cir. 2019) (same). Roane cannot make this showing. Even assuming that several predicate offenses are no longer crimes of violence after *Davis*, the record clearly demonstrates that Roane is factually guilty of Counts 6, 9, 12, and 15. In fact, Roane did not even challenge the

6

sufficiency of the evidence on those counts on appeal. Moreover, each count is predicated on an independent and still-valid drug trafficking offense.

To demonstrate actual innocence of the § 924(c) offenses, Roane "would have to show that no reasonable juror would have concluded he [] possess[ed] a firearm in furtherance of any of the valid predicate offenses." *Granda v. United States*, 990 F.3d 1272, 1292 (11th Cir. 2021), *cert.denied*, 142 S. Ct. 1233 (2022). Roane cannot make that showing. And again, he has not even attempted to do so. For these reasons, and as explained in greater detail *infra* Section II, Roane is not actually innocent of Counts 6, 9, 12, and 15 so as to excuse his procedural default.

### B. Roane cannot show cause for his default.

Nor can Roane demonstrate cause for his default. A defendant may alternately overcome the procedural default of a claim if he shows "cause" and "actual prejudice" resulting from the default. *Bousley*, 523 U.S. at 622; *see also Murray v. Carrier*, 477 U.S. 478, 485–86 (1986). Roane cannot establish either prong.

To establish "cause sufficient to excuse a procedural default" Roane must make "a showing of some external impediment preventing counsel from constructing or raising the claim." *United States v. Herrera-Pagoada*, 14 F.4th 311, 319 (4th Cir. 2021) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). The Supreme Court has explained that "cause" may exist where a claim "is so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984). "The question is not whether subsequent legal developments have made counsel's task [in raising a particular claim] easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986). To answer that question, the Supreme Court has considered whether, at the time of the default, other litigants were raising similar claims; if such claims were repeatedly raised, then "it simply is not open to argument that the legal basis of

the claim petitioner now presses on federal habeas was unavailable to counsel at the time." *Id*.; *see*

*Bousley*, 523 U.S. at 622–23 (rejecting a novelty-based "cause" argument in part because the

"Federal Reporters were replete with cases" considering the purportedly "novel" claim "at the

time" petitioner should have raised it).

This analysis is fatal to any "cause" argument Roane might make. Roane was convicted in

1993 and the Fourth Circuit decided his direct appeal in 1996. Both before and during that

timeframe, defendants were challenging various aspects of § 924 on vagueness grounds.[1] During

that same period, defendants were also lodging vagueness challenges to the Armed Career

Criminal Act (ACCA).[2] Courts have required the categorical approach to § 924(c)(3)(B) for

decades, *see United States v. Simms*, 914 F.3d 229, 249 (4th Cir. 2019) (en banc), including at the

time of Roane trial and appeal. *See id*. n.13 (citing, in part, circuit-level decisions from 1994 and

1995); *see also United States v. Adkins*, 937 F.2d 947, 950 n.2 (4th Cir. 1991) (the question whether

an offense is a crime of violence is a legal one); *United States v. Johnson*, 953 F.2d 110, 114 (4th

Cir. 1991) (mandating categorical approach to U.S.S.G. § 4B1.2); *United States v. Aragon*, 983

---

[1] *See United States v. Meyer*, 803 F.2d 246, 248 (6th Cir. 1986) (vagueness challenge to § 924(c); unclear which clause); *United States v. Chaidez*, 916 F.2d 563, 564 (9th Cir. 1990) (vagueness challenge to § 924(c)(2)'s definition of "drug trafficking crime"); *United States v. Pettit*, 933 F.2d 1017, 1991 WL 83902, at *1 n.1 (9th Cir. 1991) (vagueness challenge to § 924(c)'s "during and in relation to" and "uses or carries a firearm" language); *United States v. Kuffel*, 1 F.3d 1247 (9th Cir. 1993) (vagueness challenge to § 924(c)'s "second or subsequent conviction" language); *United States v. Magee*, 21 F.3d 1108 (5th Cir. 1994) (vagueness challenge to § 924(c)(1)); *United States v. Maloy*, 37 F.3d 632 (5th Cir. 1994) (vagueness challenge to § 924(c)(1)); *United States v. Santos*, 64 F.3d 41, 47 (2d Cir. 1995) (vagueness challenge to § 924(c)'s "firearm silencer and firearm muffler" language); *United States v. Rodriguez*, 53 F.3d 545 (2d Cir. 1995) (vagueness challenge to § 924(c)'s phrase "equipped").

[2] *See United States v. Sorenson*, 914 F.2d 173, 175 (9th Cir. 1990); *United States v. Argo*, 925 F.2d 1133, 1134–35 (9th Cir. 1991); *United States v. Vance*, 961 F.2d 217 (9th Cir. 1992); United States v. Powell, 967 F.2d 595, 1992 WL 127038, at *3 (9th Cir. 1992); *United States v. Castner*, 19 F.3d 1434 (6th Cir. 1994); *United States v. Presley*, 52 F.3d 64, 68 (4th Cir. 1995); *United States v. Veasey*, 73 F.3d 363, 1995 WL 758439, at *2 (6th Cir. 1995); *United States v. George*, 56 F.3d 1078, 1085 (9th Cir. 1995).

F.2d 1306, 1313 (4th Cir. 1993) (same as to § 16(b)). In fact, courts have been applying the categorical approach even before *Taylor v. United States*, 495 U.S. 575 (1990), effectively settled the issue. *See United States v. Thompson*, 891 F.2d 507, 509 (4th Cir. 1989); *United States v. Springfield*, 829 F.2d 860, 862–63 (9th Cir. 1987) (using categorical, rather than circumstantial, test in determining whether involuntary manslaughter is a "crime of violence" under § 924(c)(3)); *United States v. Sherbondy*, 865 F.2d 996, 1009–10 (9th Cir.1988) (categorical approach required in deciding whether witness intimidation was "violent felony" under § 924(e)).

Had Roane wanted to challenge Counts 6, 9, 12, and 15 on vagueness grounds, he could easily have done so. Again, the relevant inquiry is not "whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith*, 477 U.S. 527 at 537. And a claim is not so novel to excuse a default where the tools clearly existed to raise such a claim. *Engle v. Isaac*, 456 U.S. 107, 133 (1982) ("In light of this activity, we cannot say that respondents lacked the tools to construct their constitutional claim."); *United States v. Bane*, 948 F.3d 1290, 1297 (11th Cir. 2020) (defendants' "claims are not novel in any sense of the word. As long as they had access to the United States Code and dictionaries—the tools the Supreme Court used in *Honeycutt*—they could have raised their claims on direct appeal."); *accord Dugger v. Adams*, 489 U.S. 401, 409–10 (1989) (concluding that a claim was not novel where "the legal basis for a challenge was plainly available"). Indeed, as Justice Gorsuch pointed out in *Dimaya*, the Supreme Court's prelude to *Davis*, courts have been striking down or refusing to apply criminal statutes on vagueness grounds since the early 1800s. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1225–27 (2018) (Gorsuch, J., concurring). And the vagueness cases *Davis* itself cited, other than *Johnson* and *Dimaya*, were Supreme Court decisions from 1812, 1876, 1914, 1921, 1926, and 1983. *See Davis*, 139 S. Ct. at 2325. Clearly then, based on the conduct of other

9

litigants and the *Davis* decision itself, the tools existed for Roane to challenge his § 924(c) convictions. He simply chose not to and pursued a variety of other claims instead.[3] As the Eleventh Circuit has held, "[t]he tools existed to challenge myriad other portions of § 924(c) as vague; they existed to support a similar challenge to its residual clause." *Granda*, 990 F.3d at 1288. Thus, "[Roane] cannot show cause to excuse his procedural default." *Id.*; *see also Turner v. Jabe*, 58 F.3d 924, 927–30 (4th Cir. 1995) (rejecting "cause" argument based on novelty where other litigants where making similar arguments in the years prior to decision that overturned prior precedent and where the "Eighth Amendment principles underlying [the] claim had been around even longer.").

Some courts have excused *Davis*-type challenges on futility grounds. Any such argument, however, would fail in this case. The theory underlying excusing defendants from making *Johnson*- or *Davis*-type arguments is that *James v. United States*, 550 U.S. 192, 210 n.6 (2007), which *Johnson* later overruled, rejected the argument that the ACCA's residual clause was unconstitutionally vague. And so, the argument goes, any challenge to the ACCA or § 924(c) would have been futile. The First Circuit, for example, found cause to excuse a defaulted *Johnson* claim where the defendant's direct appeal occurred in 2013, when *James* was "still good law." *Lassend v. United States*, 898 F.3d 115, 122 (1st Cir. 2018).

*Lassend*, however, is incompatible with Supreme Court and Fourth Circuit precedent. *See Bousley*, 523 U.S. at 623 ("[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" (quoting *Engle*, 456 U.S. at 130

---

[3] For example, Roane lodged a vagueness challenge to 21 U.S.C. § 848(n)(8)'s use of the word "substantial" on direct appeal. *See Tipton*, 90 F.3d at 895. Interestingly, the phrase "substantial risk" was one of the key problematic phrases in *Dimaya*, and *Davis*, as was the phrase "serious potential risk" in *Johnson*. Roane could easily have extended his vagueness challenge to cover other statutes of conviction.

n.35)); *Engle*, 456 U.S. at 130 ("If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid."); *United States v. Sanders*, 247 F.3d 139, 147 n.5 (4th Cir. 2001) ("As *Bousley*[] and *Engle*[], indicate, in order to show cause, the defendant must raise any constitutional claims on direct review even if doing so may seem futile in light of existing precedent."); *see also Greer v. United States*, 141 S. Ct. 2090, 2099 (2021) (rejecting argument that "it would have been futile" to object prior to trial given the "uniform wall of [contrary] precedent").

Moreover, even if *Lassend* were compatible with binding precedent, it is unclear that *James* would have even precluded a challenge to § 924(c). As the Eleventh Circuit held in rejecting a similar argument, "*James* did not consider the § 924(c) residual clause at all. In fact, *James* indicated that at least three Justices were interested in entertaining vagueness challenges to the ACCA's residual clause, and perhaps to similar statutes." *Granda*, 990 F.3d at 1287. Moreover, even after *James*, but before *Johnson*, defendants continued lodging vagueness challenges to the ACCA. *Id.* (collecting cases).

Finally, even if *Lassend*'s reasoning were both correct and applicable to § 924(c), it would still have no effect on this case. Roane's trial and appeal both took place prior to the Supreme Court's 2007 *James* decision. Thus, Roane cannot take refuge in a futility argument or *Reed*'s exception for instances when the Supreme Court overturns itself. 468 U.S. at 17. *See Gatewood v. United States*, 979 F.3d 391, 397 (6th Cir. 2020) ("[F]rom Gatewood's sentencing in 1997 to the conclusion of his direct appeal in 2002, the tools to construct his present vagueness claim existed, and no Supreme Court precedent foreclosed it. Gatewood therefore had a reasonable basis for

11

raising a vagueness challenge to the residual clause of the three-strikes statute, § 3559(c)(2)(F)(ii). Because he did not raise such a challenge on direct appeal, procedural default bars him from doing so now on collateral review."), *cert. denied*, 141 S. Ct. 2798 (2021).

The Tenth Circuit has found cause for defendants whose convictions became final *before James* was decided, concluding that "no one . . . could reasonably have anticipated *Johnson*." *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017). But, as the Sixth Circuit has observed, "*Snyder* did not offer a justification for this conclusion." *Gatewood*, 979 F.3d at 398. Still worse, *Snyder*'s unreasoned conclusion is historically inaccurate, as the three-Justice dissent in *James* demonstrates. Furthermore, *Snyder*'s application of *Reed* appears to take an overly granular approach to "cause" that is inconsistent with Fourth Circuit precedent, and in any event, inapplicable to the present case. *Snyder* relied on *Reed*'s exception for defaulted claims where the Supreme Court explicitly overrules prior precedent and articulates a previously unrecognized constitutional principle. *Snyder*, 871 F.3d at 1127 (citing *Reed*, 468 U.S. at 17). But *Reed*'s exception was dicta, and even assuming its continued vitality after *Bousley*, *see United States v. Moss*, 252 F.3d 993, 1002–03 (8th Cir. 2001) (collecting cases), it still would not help Roane.

First, *Reed*'s exception would not apply because the Supreme did *not* overrule itself *Davis*, like it did in *Johnson.* Nor did it articulate "a constitutional principle that had not been previously recognized." *Reed*, 468 U.S. at 17. As noted above, courts have been striking down statutes on vagueness grounds for centuries. *See Dimaya*, 138 S. Ct. at 1225–27 (Gorsuch, J., concurring). Finally, *Snyder*'s no-one-could-reasonably-have-anticipated-*Johnson* approach to procedural default is both overly myopic and in tension with Fourth Circuit precedent. The relevant inquiry is not whether a defendant's attorney could have foreseen some particular case *avant la lettre*, but whether he "lacked the tools to construct the[] constitutional claim." *Engle*, 456 U.S. at 133. And

12

these "tools," the Fourth Circuit has explained, are the "case law[] necessary to conceive and argue the claim[.]" *Poyner v. Murray*, 964 F.2d 1404, 1424 (4th Cir. 1992). But, as already explained, the vagueness cases on which *Davis* relied spanned from 1812 to 1983. Clearly, then, they existed in the 1990s when Roane was litigating his case. Moreover, in determining whether "cause" exists to excuse a defaulted claim, the Fourth Circuit has looked not only at the landmark case itself, but at the constitutional backdrop that would have allowed a defendant to assert the claim. *See Jabe*, 58 F.3d at 927–30; *Poyner*, 964 F.2d at 1424–25. So conceived, it is impossible to claim that the tools to construct a vagueness challenge to § 924(c)(3)(B) did not exist prior to *Johnson*. If the defendant in *Johnson* possessed the tools prior to *Johnson*, then so did any other litigant.

Consistent with the authority discussed above, Roane's failure to challenge § 924(c) earlier is not excusable on novelty or futility grounds. Collateral review is not "an all-purposive receptable for claims which in hindsight appear more promising than they did at the time of trial." *Sanders*, 247 F.3d at 146. Roane's claim is defaulted, and he cannot demonstrate cause to excuse that default.[4]

---

[4] In a single undeveloped footnote, the Fourth Circuit recently rejected a post-*Davis* procedural default argument. *See United States v. Jackson*, — F.4th —, 2022 WL 1160391, at *2 n.3 (4th Cir. Apr. 20, 2022). But *Jackson*'s one-line rejection misses the point. Whether *Davis* established a "new rule" for purposes of 28 U.S.C. § 2255(h)(2) is not the same as whether a claim was "available" to a defendant. *See Murray*, 477 U.S. at 537. A new decision's outcome can be *both* not dictated by prior precedent—the relevant inquiry under *Teague v. Lane*, 489 U.S. 288 (1989)—but still "available" in the sense contemplated by *Murray*. *Jackson* could not overrule prior precedent, including Supreme Court precedent, on procedural default. Moreover, the government is making a much more developed, and distinct, argument than was before the Fourth Circuit in *Jackson*. *See United States v. Jackson*, No. 20-9, ECF No. 39 at 8-9 (4th Cir. Dec. 2, 2021) (government's response brief). *Jackson* could not be treated as deciding the issue here. *See, e.g., United States v. Norman*, 935 F.3d 232, 240–41 (4th Cir. 2019). Not "everything said in a panel opinion binds future panels." *United States v. Buster*, 26 F.4th 627, 633 (4th Cir. 2022) (citation omitted). In any event, the government makes a procedural default argument here to preserve its ability to vindicate that doctrine and avoid a waiver of procedural default. *See United States v. Harris*, 991 F.3d 552, 558 (4th Cir. 2021).

**II.    Roane cannot demonstrate any prejudice from the inclusion of assumedly invalid predicates.**

**A.    Counts 6, 9, 12, and 15 are unaffected by *Davis*.**

Counts 6, 9, and 12 rely entirely on valid crime-of-violence and drug-trafficking predicates.

First, *Davis* did not invalidate the definition of a "drug trafficking crime," which includes "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]" 18 U.S.C. § 924(c)(2). *See United States v. Eldridge*, 2 F.4th 27, 36 n.9 (2d Cir. 2021) ("*Davis* interpreted only the definition of a crime of violence, and thus had no effect on the scope of drug offenses that may also serve as predicates for § 924(c) convictions, *see* 18 U.S.C. § 924(c)(2)."); *United States v. Cannon*, 987 F.3d 924, 946 (11th Cir. 2021) ("*Davis* did not, however, affect the definition of a drug trafficking crime, which includes 'any felony punishable under the Controlled Substances Act.'"); *see also United States v. Hare*, 820 F.3d 93, 106 (4th Cir. 2016). Indeed, in declaring § 924(c)(3)(B) unconstitutionally vague prior to *Davis*, the Fourth Circuit noted that it "le[ft] intact . . . the entirety of the definition of 'drug trafficking crime in § 924(c)." *United States v. Simms*, 914 F.3d 229, 252 (4th Cir. 2019) (en banc). Thus, the drug conspiracy predicate (Count 1) and the drug-related murder predicates (Counts 17-19, 24-25) remain unaffected by *Davis*. And whether a given type of offense is classified as a crime of violence or a drug-trafficking offense is a question of law for a court, not a factual question for the jury, *see, e.g., United States v. McNeal*, 818 F.3d 141, 151 (4th Cir. 2016) (citing *United States v. Adkins*, 937 F.2d 947, 950 n.2 (4th Cir. 1991))—indeed, that is the point of the categorical approach.

*Second*, the drug-related murder convictions (Counts 17-19, 24-25) are also crimes of violence under § 924(c)(3)(A). Under § 848(e)(1)(A), the government must prove that the defendant intentionally killed a person. Although § 848(e)(1)(A) has three distinct ways in which a connection is drawn between the killing and the drug trafficking, *see United States v. Hager*, 721

14

F.3d 167, 179–80 (4th Cir. 2013), the government must still prove an intentional killing for every violation of § 848(e)(1)(A). Such proof satisfies § 924(c)(3)(A).

The Fourth Circuit has repeatedly held that an offense that requires proof of a murder satisfies § 924(c)(3)(A). *See, e.g.*, *United States v. Jackson*, — F.4th —, 2022 WL 1160391 (4th Cir. Apr. 20, 2022) (premeditated first-degree murder under 18 U.S.C. § 1111 satisfies § 924(c)(3)(A)); *United States v. Roof*, 10 F.4th 314, 400–02 (4th Cir. 2021) (death-resulting offense under 18 U.S.C. § 249 (a)(1) satisfies § 924(c)(3)(A)); *United States v. Mathis*, 932 F.3d 242, 264–65 (4th Cir. 2019) (VICAR murder satisfies § 924(c)(3)(A)); *In re Irby*, 858 F.3d 231, 236–38 (4th Cir. 2017) (second-degree retaliatory murder is a crime of violence under § 924(c)(3)(A)); *cf. United States v. Allred*, 942 F.3d 641 (4th Cir. 2019) (knowingly engaging in conduct that causes bodily injury in violation of witness retaliation statute satisfies ACCA's elements clause); *United States v. Battle*, 927 F.3d 160, 167 (4th Cir. 2019) (Maryland conviction for assault with intent to murder satisfies ACCA's elements clause "because the offense contemplates an intentional causation of bodily injury").

Insofar as Roane argues that § 848(e)(1)(A) could be violated by a bare omission, the Fourth Circuit has rejected such arguments. *See United States v. Rumley*, 952 F.3d 538, 551 (4th Cir. 2020). The Fourth Circuit and the Supreme Court have recognized that crimes of violence and violent felonies encompass crimes "characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon." *United States v. Bryant*, 949 F.3d 168, 181 (4th Cir. 2020) (quoting *In re Irby*, 858 F.3d at 236; *Johnson v. United States*, 559 U.S. 133, 140–41 (2010)). Indeed, given that "the force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense contemplated by *Johnson*," *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019), it follows that the force need to kill a person suffices.

15

Roane makes a series of arguments about why his murder offenses are not crimes of violence. He contends that felony murder knocks out murder offenses. This argument readily fails for the § 848(e) murder offenses, for § 848(e) does not encompass felony murder. Moreover, in its special findings at the capital sentencing phase, the jury unanimously found that Roane's murders of Douglas Moody, Peyton Maurice Johnson, and Louis J. Johnson, Jr. were "the result of substantial planning and premeditation." *United States v. Tipton*, 90 F.3d 861, 894 (4th Cir. 1996). The jury also found in the special verdict form that Roane "intentionally killed" those three victims, that he "intentionally inflicted serious bodily injury which resulted in the death" of those victims, and that he "intentionally engaged in conduct intending that the victim of the capital crime be killed, or that legal force be employed against the victim, which resulted in the death of the victim." This was not a felony-murder case, and as the Fourth Circuit's recent ruling in *Jackson* illustrates, as a matter of federal law, felony murder is divisible under § 1111. Also, as a matter of law, because the jury had to find unanimously each of the gateway intent factors beyond a reasonable doubt, they are functionally elements and divisible.

Defendant also contends that depraved-heart murder creates a version of recklessness that falls outside § 924(c)(3)(A) after *Borden v. United States*, 141 S. Ct. 1817 (2021). But the First Circuit has correctly rejected that argument, and the Supreme Court denied certiorari in that case after *Borden* was decided. *See United States v. Baez-Martinez*, 950 F.3d 119 (1st Cir. 2020), *cert. denied*, 141 S. Ct. 2805 (2021). The Ninth Circuit reached the contrary result about extreme recklessness but has vacated that decision on rehearing en banc. *United States v. Begay*, 15 F.4th 1254 (9th Cir. 2021) (order granting rehearing en banc). The oral argument was held this past

16

January, and the court does not appear to have taken the case en banc to endorse the panel majority's reasoning that second-degree murder is not a crime of violence.[5]

Section 848(e) is not correctly read as encompassing extreme recklessness. The plain language of § 848(e)'s standards for creating criminal liability requires proof that the defendant "intentionally kill[ed]" the victim or aided and abetted that killing. And contrary to Roane's claim, the aiding and abetting language in § 848(e) does not remove it from § 924(c)(3)(A). *See, e.g., Said*, 26 F.4th at 663 (citing *United States v. Ali*, 991 F.3d 561, 572 (4th Cir. 2021)).

Roane points out that the Sixth Circuit has read § 848(e) as reaching extreme recklessness, notwithstanding the plain language of § 848(e), because of the capital sentencing gateway factors. *See United States v. Alvarez*, 266 F.3d 587 (6th Cir. 2001). *Alvarez* is in tension with the way the Supreme Court today interprets criminal statutes. The plain language of § 848(e) requires an intentional killing or aiding and abetting an intentional killing, and then, once those standards are met, the jury may consider the gateway intent factors, which resemble those applied to other capital murder offenses. The jury instructions in this case mirror that framework in defining criminal liability under § 848(e), *see* trial transcript at 3217, and then defining the gateway intent factors. But in any case, even if the gateway factors were treated as broadening the intent required for criminal liability, the gateway factors are elements that must be unanimously found by the jury, making them divisible, and again, the jury found that the murders here were "intentional" and were "the result of substantial planning and premeditation." *Tipton*, 90 F.3d at 894.

*Third*, VICAR murders (Counts 7, 10, 13, and 14)—which support all four firearm counts—and maiming (Count 16) are crimes of violence under § 924(c)(3)(A). As to the VICAR murders under § 1959(a)(1), the Fourth Circuit has already held that the murder offenses like those

---

[5] And as an aside, at the en banc argument, the Assistant Federal Public Defender conceded that felony-murder under § 1111 is divisible.

here satisfy § 924(c)(3)(A). *See Mathis*, 932 F.3d at 264–65. That conclusion is further reinforced by *United States v. Keene* 955 F.3d 391 (4th Cir. 2020). In *Keene* the Fourth Circuit described the relationship between a particular VICAR enumerated offense—there, assault with a dangerous weapon—and the state law referenced in the VICAR statute. As *Keene* explained, under the VICAR statute in § 1959, "the statutory language at issue requires only that the defendant's conduct, presently before the court, constitute one of the enumerated federal offenses as well as the charged state crime." *Id*. at 393. Under this approach, a defendant's VICAR offense can be no broader than the enumerated federal offense, and every instance of Roane's VICAR murder satisfies § 924(c)(3)(A), as *In re Irby* illustrates. Again, the jury's findings for the capital murders of Douglas Moody, Peyton Johnson, and Louis Johnson show that the jury did not rely on felony murder or extreme recklessness. And factually, the evidence readily established that the murder of Torrick Brown also fell within first-degree intentional murder. Roane could not meet his burden now under *Said* of showing an entitlement to relief. Finally, as discussed below, the VICAR purpose requirement solves any *mens rea* problem under *Borden* and eliminates recklessness.

VICAR maiming also satisfies § 924(c)(3)(A), although, as explained below, this Court need not reach the question here. If contrary to *Keene*, the Court requires a state predicate crime satisfy § 924(c)(3)(A), then here that requirement is met. Virginia malicious wounding falls within the elements clause. *United States v. Hardy*, 999 F.3d 250, 257 n.4 (4th Cir. 2021) (citing *Rumley*, 952 F.3d at 550). And under any federal generic definition of maiming, the same precedent that establishes that Virginia malicious wounding qualifies would also suffice, as further illustrated by precedent like *Allred* and *Battle*.

And *Borden* does not affect the analysis of the VICAR offense for an additional reason. Under § 1959(a), the government must prove that the defendant's purpose in committing the

18

predicate crime "was to maintain or increase his position in the enterprise." *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1997) (citing *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992)); *Tipton*, 90 F.3d at 891 (same). Just as the specific intent required for attempted murder narrows the *mens rea* for murder, *see, e.g.*, *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991) ("Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill."), so too the purpose requirement for VICAR makes the commission of the predicate crime deliberate. True, the purpose required under § 1959(a) need not be the sole or even primary purpose, *United States v. Chavez*, 894 F.3d 593, 603–04 (4th Cir. 2018), but it must be a purpose that a defendant has in undertaking the crime.

Finally, Roane's contrary citations to *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), are misplaced. (Def. Mot. 22–23.) In at least five cases, the Fourth Circuit has recognized that *Torres-Miguel*'s indirect-force holding is no longer viable after *United States v. Castleman*, 572 U.S. 157 (2014). *See United States v. Allred*, 942 F.3d 641, 653 (4th Cir. 2019); *United States v. Covington*, 880 F.3d 129, 134 (4th Cir. 2018); *United States v. Reid*, 861 F.3d 523, 529 (4th Cir. 2017); *In re Irby*, 858 F.3d 231, 237–38 (4th Cir. 2017); *United States v. Burns–Johnson*, 864 F.3d 313, 318 (4th Cir. 2017). Moreover, *United States v. Rumley*, 952 F.3d 538, 549 (4th Cir. 2020), and *Moreno-Osorio v. Garland*, 2 F.4th 245, 253 (4th Cir. 2021), foreclose Roane's proposition that a statute cannot satisfy § 924(c)(3)(A) through an omission. *See also United States v. Scott*, 990 F.3d 94, 100-01 & n.5 (2d Cir. 2021) (en banc) (collecting cases)

Thus, *Davis* had no effect on Roane's firearm convictions. The § 848(e)(1)(A) predicates underpinning Counts 6, 9, and 12 are drug trafficking predicates that remain completely unaffected by *Davis*. This Court can deny Roane's motion as to those counts on that basis alone. Moreover,

19

the VICAR murder and maiming predicates remain valid crimes of violence under § 924(c)(3)(A), even after *Davis*.

      **B.**       **Even if *Davis* invalidated a predicate for Counts 6, 9, 12, or 15, Roane still cannot demonstrate any prejudice.**

          **1.**      **General habeas principles**

Once direct review is completed, "a presumption of finality and legality attaches to the conviction and sentence," *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (citation omitted), and courts are "entitled to presume" that the defendant's conviction and sentence are lawful, *United States v. Frady*, 456 U.S. 152, 164 (1982). That "presumption of regularity . . . makes it appropriate to assign a proof burden to the defendant" on collateral review. *Parke v. Raley*, 506 U.S. 20, 31 (1992); *see also Hawk v. Olson*, 326 U.S. 271, 279 (1945) (explaining that a prisoner necessarily "carries the burden in a collateral attack on a judgment"). Because, as the Fourth Circuit has put it, "[o]n collateral review . . . the calculus changes." *Bauberger v. Haynes*, 632 F.3d 100, 104 (4th Cir. 2011). Thus, on collateral review, the defendant carries the burden of showing a constitutional violation. *See, e.g.*, *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Under governing precedent, however, the mere fact of an invalid predicate offense under § 924(c) does not result in the automatic vacatur of those convictions. There are many circumstances in which a conviction will rest on multiple theories of liability, only for it to subsequently become clear that one of them is invalid. In such circumstances, courts do not automatically vacate the problematic count. Instead, courts assess the error for harmlessness to determine whether the count survives on any still-valid theories of conviction. The Supreme Court mandates this approach. *See Hedgpeth v. Pulido*, 555 U.S. 57, 60–61 (2008) (per curiam); *Skilling v. United States*, 561 U.S. 358, 414 n.46 (2010). And the Fourth Circuit has repeatedly applied it in a variety of contexts. *See United States v. Moriello*, 980 F.3d 924, 936–37 (4th Cir. 2020) (direct

20

appeal); *Bereano v. United States*, 706 F.3d 568, 577 (4th Cir. 2013) (collateral review); *United States v. Jefferson*, 674 F.3d 332, 361 (4th Cir. 2012) (direct appeal). Under *Hedgpeth*, "[a]n instructional error arising in the context of multiple theories of guilt no more vitiates all the jury's findings than does omission or misstatement of an element of the offense when only one theory is submitted." 555 U.S. at 61.

In cases where a defendant forfeits an alternative-theory claim by failing to raise it below, as did Roane, he "must show not only that he *could* have been convicted under the erroneous [theory], but also that he *was not* convicted under the properly-instructed" theory. *United States v. Robinson*, 627 F.3d 941, 955 (4th Cir. 2010); *see also United States v. Banks*, — F.4th — 2022 WL 815862, at *9 (4th Cir. Mar. 18, 2022). And on collateral review, the standard becomes stricter still. In evaluating a habeas claim, the examination of whether an alternative-theory error is harmless is further evaluated through the lens of *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Under *Brecht*, a habeas petitioner must show that a purported error resulted in "actual prejudice." *Id.* at 637. Thus, an error is harmless on collateral review unless it had a "substantial and injurious effect" on the defendant's conviction. *United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013); *accord Barnes v. Thomas*, 938 F.3d 526, 533 n.3 (4th Cir. 2019) (explaining that the *Brecht* standard is a "'less onerous harmless-error standard' than the requirement on direct appeal that an error be proven 'harmless beyond a reasonable doubt'" (quoting *Brecht*, 507 U.S. at 623)); *cf. Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015).

### 2. Fourth Circuit precedent governing multi-predicate § 924(c) convictions.

The Fourth Circuit has repeatedly reiterated the principle that a § 924(c) conviction need only rest on one valid predicate to itself be valid. For example, after *Johnson v. United States*, 576 U.S. 591 (2015), the Fourth Circuit held that when a § 924(c) conviction has two predicate

offenses—one crime of violence and one drug-trafficking crime—the validity of the drug-trafficking predicate is sufficient to sustain the conviction, even if the crime of violence is invalid. *United States v. Hare*, 820 F.3d 93, 105–06 (4th Cir. 2016). After *Davis*, the Fourth Circuit has repeatedly reaffirmed *Hare*'s principle, in both the trial and guilty plea context. *See United States v. Gillespie*, 27 F.4th 934 (4th Cir. 2022) ("In the context of a § 924(c) conviction, the verdict stands even if the jury was instructed on an invalid predicate, so long as the jury relied on a valid basis for conviction."); *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021) ("We reaffirm our holding in *Hare* that a § 924(c) conviction based on one valid and one invalid predicate offense remains sound following *Johnson* and its progeny, and we extend that holding to cases in which the defendant pleads guilty to a § 924(c) offense expressly based on the valid and invalid predicate.").

In *United States v. Ali*, 991 F.3d 561 (4th Cir. 2021), the Fourth Circuit extended its decision in *United States v. Robinson*, 627 F.3d 941 (4th Cir. 2010), to the context of a dual-predicate § 924(c) conviction, applying plain-error review to affirm a defendant's conviction after a trial involving a general jury verdict. *Ali* held that the inclusion of an invalid predicate (Hobbs Act conspiracy) was a plain error but that the valid, factually supported predicate (aiding or abetting Hobbs Act robbery) established that the error did not affect the defendant's substantial rights. *Ali* further held that "a showing of uncertainty as to 'whether the verdict returned by the jury rested solely on the mis-instruction' does not meet the defendant's burden of establishing actual prejudice under the third *Olano* prong." *Id*. at 474–75 (citation omitted). And it was irrelevant that the Court "d[id] not know for certain which theory of guilt the jury accepted" because "that [type of] ambiguity is insufficient under plain error review." *Id*. at 575.

Recently, in *United States v. Said*, 26 F.4th 653 (4th Cir. 2022), the Fourth Circuit applied

22

*Ali* and reversed a district court's grant of habeas relief to a defendant convicted of § 924(c) and § 924(o) offenses, each of which was premised on multiple predicates, some of which were invalid after *Davis*. Consistent with prior precedent, *Said* first confirmed, that "a § 924(c) conviction may stand even if the jury based its verdict on an invalid predicate, so long as the jury also relied on a valid predicate." *Id*. at 659.

*Said* then rejected the rationale offered by the district court for granting the defendant habeas relief. The district court in *Said* concluded that the defendant could show a substantial and injurious effect from the inclusion of now-invalid predicates because it could not tell on which predicate offense the jury relied, there was a more than reasonable probability that the jury would not have convicted the defendant absent the inclusion of now-invalid predicates, and "because there is no evidence in the record showing that the jury relied on either an invalid or valid predicate offense to convict[.]" *Id*. at 661.

But, the Fourth Circuit held, that sort of ambiguity "is not enough." *Id*. As *Said* explained, the Fourth Circuit has "repeatedly held, even under the plain-error standard, the defendant bears the burden of showing that the erroneous instruction given resulted in his conviction, *not merely that it was impossible to tell under which prong the jury convicted*." *Id*. (citing *Ali*, 991 F.3d at 575; *Robinson*, 627 F.3d at 954) (internal quotation marks omitted). In other words "'ambiguity is insufficient to 'establish[ ] actual prejudice' even under plain-error review." *Id*. (quoting *Ali*, 991 F.3d at 575). "Instead, the defendant 'must show not only that he *could* have been convicted under the erroneous . . . instruction, but also that he *was not* convicted under the' proper instruction." *Id*. (quoting *Robinson*, 627 F.3d at 955). "[M]ere uncertainty as to which . . . predicate or predicates the jury relied on when it found the defendant guilty of the § 924(c) counts does not suffice to demonstrate plain error, let alone the sort of substantial and injurious error required for habeas

relief." *Id*. (cleaned up). Thus, "to meet his burden, Said must show 'more than a reasonable possibility' that the jury *only* found him guilty on Counts 4 and 10 because it improperly considered" the now invalid predicates. *Id*. at 662.

And under that standard, the defendant could not succeed. As the Fourth Circuit explained, "common sense supports that a jury that found Said guilty of several substantive crimes of violence, the evidence for all of which showed to involve the use of firearms[.]" *Id*. Moreover, the jury convicted the defendant on all the underlying predicates thus removing a level of supposed ambiguity from the case. *Id*. at 663.[6]

### 3. Roane's § 2255 motion fails under Fourth Circuit precedent.

Governing Fourth Circuit precedent forecloses Roane's challenge motion.

As a preliminary matter, Roane's reliance on the modified categorical approach is both misplaced and contrary to Fourth Circuit precedent. Roane repeatedly attempts to enlist the modified categorical approach as a lens through which to determine on which predicate offense the jury relied. (*See* Def. Mot. 8–10, 15.) But Roane's proposed approach to assessing the viability of multi-predicate § 924(c) offenses has already twice been rejected by the Fourth Circuit. In *Ali*, the defendant argued that, because the court could not definitively know on which predicate the jury relied (due to the general verdict), it should vacate the firearms convictions under the modified categorical approach. But the Fourth Circuit held that the defendant's suggestion "fundamentally

---

[6] The Fourth Circuit granted Roane authorization to file a successive petition before it decided *Said*. Since then, the Fourth Circuit has denied similar requests to defendants seeking permission to challenge multi-predicate § 924(c) convictions under *Davis*. *See In re Abdi Osman*, No. 21-263, ECF No. 12 (4th Cir. Mar. 16, 2022). The Fourth Circuit has also denied certificates of appealability (COA) to defendants who filed *authorized* successive petitions only to be denied relief in the district court. *See United States v. Ali*, No. 19-7352, 2022 WL 794959 (4th Cir. Mar. 15, 2022) (consolidated appeal denying COA to three defendants seeking to appeal Chief Judge Davis' § 2255 denial, one of whom received authorization to file successive petition); *United States v. Beyle*, No. 21-7511, 2022 WL 989350 (4th Cir. Apr. 1, 2022) (same for defendant seeking to appeal Judge Smith's § 2255 denial of authorized successive petition).

misunderstands what the categorical approach accomplishes and the nature of our inquiry under plain error review. The purpose of the categorical (and modified categorical) approach is not to determine what the predicate was–a factual question-but rather whether a particular predicate meets the requirements of a "crime of violence"–a purely legal question." *Ali*, 991 F.3d at 574. Similarly, the district court in *Said* did exactly what Roane proposes here. But the Fourth Circuit, relying on *Ali*, reversed. *See Said*, 26 F.4th at 661 n.13 (citing *Ali*, 991 F.3d at 574). Other courts of appeals are in accord. *See Granda*, 990 F.3d at 1295.

The correct framework through which to assess Roane's challenge was recently articulated by the Fourth Circuit in *Said*. And under *Said*, Roane's challenge easily fails.

*Said* instructs that a defendant seeking to challenge a multi-predicate § 924(c) conviction on collateral review must show more than a reasonable possibility that the jury *only* found him guilty on based on the invalid predicates. *Said*, 26 F.4th at 662. Ambiguity, *Said* repeatedly stressed, is simply not enough.  Said has never attempted such a showing, and the record in this case would make any attempt to do so futile.[7]

Roane, like the *Said* defendant, was convicted of every count underlying his convictions on Counts 6, 9, 12, and 15. And even assuming the invalidity of one or more crime-of-violence predicates, it is impossible that the jury did not find that Roane used a firearm in furtherance of the undisputedly valid drug-related murders charged under § 848(e) (Counts 5, 8, and 11). As noted above, § 848(e) is a valid drug-trafficking predicate and is enough—on its own—to support the § 924(c) convictions charged in 6, 9, and 12. So too regarding the VICAR murder predicates

---

[7] Roane repeatedly stressed before the Fourth Circuit that all he had to show to obtain authorization to file a successive petition was a "prima facie" case. But while that is technically true, here, Roane has not advanced beyond that showing in any meaningful way. As was the case at the successive stage, Roane does not contend with the facts of this case or make any attempt at showing prejudice beyond mere reliance on ambiguity.

(Counts 7, 10, 13, and 14), which can just as equally support Roane's convictions on Counts 6, 9, 12, and 15.[8]

The Fourth Circuit explained on direct appeal, that the murders that formed the basis of the § 924(c) convictions were "all in relation to [the defendants'] drug-trafficking operation," and occurred "because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" *Tipton*, 90 F.3d at 868. All of Roane's § 924(c) convictions had drug-trafficking and murder predicates that controlling precedent establish are valid; the jury separately convicted Roane of each of those predicate offenses, removing any doubt that the jury unanimously found each predicate proven; and each of those predicates was furthered through a firearm given that the murders were all drug-related and accomplished with a gun.

Indeed, each murder for which Roane was found guilty was committed to advance the organization's drug trafficking. As the Fourth Circuit explained, "[t]he Government's evidence expressly linked each of the nine § 848(e) murders of which the appellants were severally convicted to a furtherance of the CCE's purposes: either silencing potential informants or witnesses, eliminating supposed drug trafficking rivals, or punishing underlings for various drug-trafficking misfeasances." *Tipton*, 90 F.3d at 887.

Roane murdered Douglas Moody, a suspected rival in his drug-trafficking area, on January 13, 1992. *Id*. at 868. Tipton and Roane met Moody at his apartment where Tipton shot him twice in the back. Moody fled and Tipton and Roane pursued. Roane caught up with him and stabbed him eighteen times with a military style knife. *Id*. This Court recounted the motive for Moody's murder as follows:

---

[8] *Ali* and *Said* also establish that it is irrelevant for present purposes whether Roane was held liable as an aider and abettor for a murder. *See Said*, 26 F.4th at 659 n.9; *Ali*, 991 F.3d at 573–74.

> The jury had before it information that well before Moody's murder, a motive for it, to which Roane was privy with Tipton and Cory Johnson, had developed. Specifically, trial evidence showed that Moody and his superior, Peyton Johnson, a rival drug dealer, were thought by Tipton, Cory Johnson, and Roane to be standing in the way of their taking over the Newtowne drug market whose development was Roane's special function. Evidence from the guilt phase revealed that Roane had in fact stated that Tipton and Johnson "and them didn't want Maurice [Peyton Johnson] and 'Little Doug' [Moody] to work in that area . . . selling cocaine.

*Id*. at 896.

Roane murdered Peyton Maurice Johnson, a rival drug dealer, on January 14, 1992. Roane and Cory Johnson retrieved a bag of guns they had left at an apartment earlier that day. Roane then located Peyton Johnson at a tavern. Shortly after leaving the tavern, Cory Johnson entered and shot Peyton Johnson. *Id*.

Less than two weeks later, on January 29, 1992, Roane and Lance Thomas, another codefendant, murdered Louis Johnson, whom Cory Johnson thought had threatened him while acting as a bodyguard for a rival drug dealer. *Id*.; *see also United States v. Reavis*, 48 F.3d 763, 766 (4th Cir. 1995) ("On January 29, 1992, Louis Johnson was murdered for allegedly harassing one of the drug ring's workers."). Roane drove Cory Johnson and Thomas to an alley where the latter two began firing at Louis Johnson.

On February 1, 1992, Roane murdered Torrick Brown and maimed Martha McCoy. Roane, Cory Johnson, and Thomas traveled to Brown's apartment, knocked on the door, and asked his half-sister, McCoy, if Brown was there. *Id*. When Brown approached the door, Roane, Cory Johnson and the third conspirator opened fire, killing Brown and critically murdering McCoy. *Id*.; *see also Reavis*, 48 F.3d at 766 ("Roane, Thomas, and Johnson shot Brown sixteen times and McCoy, who was in Brown's house at the time, six times."). This Court recounted the motive for this attack as follows:

> the evidence was sufficient to support jury findings that the deeds were done by

27

> Roane and other enterprise members, including Johnson, in part at least in furtherance of the enterprise's policy of treating affronts to any of its members as affronts to all, of reacting violently to them and of thereby furthering the reputation for violence essential to maintenance of the enterprise's place in the drug-trafficking business. The evidence also sufficed to support further findings that participation in this sort of group retaliatory action in behalf of fellow enterprise members was critical to the maintenance of one's position in the enterprise.

*Id.* at 890–91.

As is evident, each of Roane's murders furthered the drug-trafficking organization. And each was carried out with a firearm. It is impossible that the jury convicted Roane on Counts 6, 9, 12, and 15 without finding that he used a firearm in relation to those murders. A contrary conclusion would simply be inconsistent with the facts of this case and the jury's verdict. As to Count 15, which did not charge an underlying § 848(e) predicate, that count can be easily upheld on the still-valid VICAR murder charged in Count 14.

No reasonable jury could have concluded that Roane used a firearm in furtherance of the assumedly invalid predicate offenses, but not the valid drug-trafficking murder predicates charged in Counts 5, 8, and 11. *See Said*, 26 F.4th at 662–63. . The same reasoning applies to the VICAR murder predicates (Counts 7, 10, 13, and 14), which can just as equally support Roane's convictions on Counts 6, 9, 12, and 15. Under *Said*, it is irrelevant that the "record does not indicate which predicates the jury relied on[.]" *Id.* at 662. It is Roane's burden to show that the jury relied *only* on the invalid predicates, and much like the *Said* defendant "[t]his he cannot do." *Id.* Roane has offered no reason to think "that the jury reached the commonsense-defying conclusion of relying *only* on those [invalid] predicates[.]" *Id.* Put differently, Roane has not "pointed to any reason why the jury would not have convicted him on Counts [6, 9, 12, or 15] based on at least one of the valid predicates—let alone any evidence that they did not do so." *Id.* Indeed, "the fact that [Roane] can point to nothing more than ambiguity is enough to resolve this

28

case[.]" *Id*. at 662 n.15.[9]

As explained above, even after *Davis*, Roane's § 924(c) convictions are still supported by, at the very least, valid drug-trafficking crimes and VICAR murder predicates. Given this reality—as well as Roane's repeated failure to even attempt to demonstrate some form of prejudice from the assumedly no-longer valid predicate offenses—he cannot demonstrate that any error had a "substantial and injurious effect" on his convictions. *Smith*, 723 F.3d at 517.

Because Roane has failed to demonstrate any prejudice, his challenge to Counts 6, 9, 12, 15 must be rejected.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:          /s/

Richard D. Cooke
Joseph Attias
Assistant United States Attorneys
U.S. Attorney's Office
Eastern District of Virginia
919 East Main Street, Suite 1900
SunTrust Building
Richmond, Virginia 23219
(804) 819-5471

---

[9] Roane also lodges a unanimity challenge to his firearm convictions. *See Def*. Mot. 14–15. The defendant in *Said* made the same argument and cited the same exact case. *Compare* Def. Mot. at 15 (citing *United States v. Savoires*, 430 F.3d 376 (6th Cir. 2005), *with United States, Appellant, v. Mohamed Ali Said, Appellee*., 2021 WL 4142690, at *17 (C.A.4) (defendant's response brief citing *Savoires*). The Fourth Circuit rejected the argument. *See Said*, 26 F.4th at 664–65.

**Certificate of Service**

I certify that on April 28, 2022, I filed electronically the foregoing with the Clerk of

Court using the CM/ECF system, which will serve all counsel of record.


/s/
_____

Joseph Attias
Assistant United States Attorney

30