IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

     v.

                                          Criminal No. 3:92cr68 (DJN)
                                          Civil No. 3:22cv98 (DJN)

JAMES H. ROANE, JR.,
     Defendant.

## **MEMORANDUM OPINION**

A jury convicted Defendant of killing numerous individuals in furtherance of his substantial drug ring. Defendant now asks the Court to find that those convictions constitute neither crimes of violence nor drug trafficking crimes. This matter comes before the Court on Defendant James H. Roane's Amended Motion to Vacate Conviction and Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 161). Defendant moves for the vacatur of his convictions under 18 U.S.C. § 924(c) in light of the Supreme Court's decisions in *United States v. Davis*, 139 S. Ct. 2319 (2019) and *Borden v. United States*, 141 S. Ct. 1817 (2021). Defendant argues that his § 924(c) convictions now rest on invalid predicate crimes in that the predicates no longer constitute crimes of violence. However, Defendant's § 924(c) convictions rest on multiple convictions that constitute both drug trafficking convictions and crimes of violence. Consequently, for the reasons explained below, the Court will DENY Defendant's § 2255 Motion.

# I.   BACKGROUND[1]

## A.   Factual Background

Defendant, along with Richard Tipton ("Tipton") and Cory Johnson ("Johnson") (collectively, the "partners"), ran a substantial drug-trafficking conspiracy that lasted from 1989 through July of 1992. *Roane*, 378 F.3d at 389. The partners in the conspiracy obtained wholesale quantities of powder cocaine from suppliers in New York City, converted it into crack cocaine, divided it among themselves and then distributed it through a network of 30-40 street level dealers. *Id.* at 389-90. Typically, the partners took two-thirds of the proceeds realized from the street-level sales of their product. *Id.* at 390.

Over a short time in early 1992, the partners took part, in some form, in the murders of ten persons in the Richmond area. *Id.* These murders occurred "in relation to their drug-trafficking operation and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" *Id.* The murders described below directly implicated Defendant.

On January 4, 1992, Roane and Tipton drove Douglas Talley, an underling in disfavor for mishandling a drug transaction, to the south side of Richmond. *Id.* Roane grabbed Talley and Tipton stabbed him repeatedly for three to five minutes. *Id.* Talley died from eighty-four stab wounds to his head, neck and upper body. *Id.*

On January 13, 1992, Roane and Tipton went to the apartment of Douglas Moody, a suspected rival in their drug-trafficking area, and Tipton shot Moody twice in the back. *Id.* Roane chased down the fleeing Moody and stabbed him eighteen times, killing him. *Id.*

---

[1]   The Court takes these background facts from the Fourth Circuit's opinion in *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004).

On January 14, 1992, Roane and Johnson located Peyton Johnson, another rival drug dealer, at a tavern. *Id.* Shortly after Roane left the tavern, Cory Johnson entered and fatally shot Peyton Johnson. *Id.*

On January 29, 1992, Roane pulled his car around the corner of an alley, got out and shot Louis Johnson, who had threatened one of the partners while acting as a bodyguard for a rival drug dealer. *Id.* Roane first shot Louis Johnson, and then Cory Johnson and Lance Thomas ("Thomas") got out of Roane's car and shot Louis Johnson again. *Id.* Louis Johnson died from these gunshot wounds. *Id.*

On February 1, 1992, Roane, Johnson and Thomas went to the apartment of Torrick Brown, who had given Roane trouble. *Id.* After the three men knocked on the apartment door, Brown's half-sister opened the door and summoned Brown. *Id.* The three men opened fire with semiautomatic weapons, killing Brown and critically wounding his half-sister. *Id.*

## B.     Verdict and Sentencing

In January and February of 1993, United States District Judge James R. Spencer presided over the trial of Defendant and his co-conspirators. Defendant[2] faced capital murder charges for Murder in Furtherance of a Continuing Criminal Enterprise ("CCE") under 21 U.S.C. § 848(e)(1)(A) for three of these killings — Moody (Count Five), Peyton Johnson (Count Eight) and Louis Johnson (Count Eleven) (collectively, the "CCE Murder Counts" or "CCE Murder Convictions"). *Id.* at 391; (Second Superseding Indictment ("Indictment") (Dkt. No. 115) at 7-10). On February 3, 1993, the jury convicted him of all three CCE Murder Counts. 378 F.3d at 391. The jury also convicted Defendant of participating in a Conspiracy to Possess Cocaine Base with the Intent to Distribute, in violation of 21 U.S.C. § 846 (Count One, the "Drug

---

[2]     The Court tried Roane, Tipton and Johnson along with four other defendants on a thirty-three-count superseding indictment.

Conspiracy Count"), and engaging in a CCE, in violation of 21 U.S.C. § 848(a) (Count Two). *Id.*; (Indictment at 1-6.)  Additionally, the jury convicted Defendant of five counts of Committing Acts of Violence in Aid of Racketeering ("VICAR"), in violation of 18 U.S.C. § 1959 (Counts Seven, Ten, Thirteen, Fourteen, Sixteen), and four counts of Using a Firearm in Relation to a Crime of Violence or a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c) (Counts Six, Nine, Twelve, Fifteen (collectively, the "§ 924(c) Counts" or "§ 924(c) Convictions")).  378 F.3d at 392; (Indictment at 8-13).  Finally, the jury convicted Defendant of one count of Possession of Cocaine Base with the Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) (Count Thirty-Two (the "Drug Distribution Count" or the "Drug Distribution Conviction")).  378 F.3d at 392; (Indictment at 21).  Defendant's § 2255 Motion asks the Court to vacate his convictions on Counts Six, Nine, Twelve and Fifteen — the § 924(c) Convictions.

On February 16, 1993, following a penalty hearing on the CCE Murder Counts, the jury recommended that Defendant be sentenced to death for the murder of Moody.  378 F.3d at 392. On June 1, 1993, pursuant to 21 U.S.C. § 848(l), the Court sentenced Roane to death for Count Five.  *Id.*  Relevant here, the Court also sentenced Defendant to life imprisonment for each of the CCE Murder Convictions that he did not receive a death sentence — Counts Eight and Eleven. *Id.*  Defendant also received a life imprisonment sentence for the CCE conviction in Count Two, life sentences for the VICAR convictions in Counts Seven, Ten, Thirteen and Fourteen, and a twenty-year sentence on the VICAR conviction in Count Sixteen.  Defendant received a five-year term of imprisonment for the § 924(c) conviction in Count Six and twenty-year terms of imprisonment for the § 924(c) convictions in Counts Nine, Twelve and Fifteen, to run consecutively to any other sentences imposed.  Finally, Defendant received a forty-year term of imprisonment on Count Thirty-Two, the Drug Distribution Count, to run concurrently with the

4

other sentences imposed. *Id.*; (Dkt. No. 594).

### C.     Post-Trial Proceedings

The defendants appealed their convictions and sentences and the Government cross-appealed the stay of the death sentences. *Id.* at 392. In a lengthy opinion, the Fourth Circuit analyzed and disposed of approximately sixty issues, including challenges by the defendants to aspects of the jury-selection process and both the guilt and penalty phases of the trial. *United States v. Tipton*, 90 F.3d 861, 861 (4th Cir. 1996). The Fourth Circuit rejected nearly all of the claims, affirming the convictions and sentences of all of the defendants, except that it vacated on Double Jeopardy grounds the drug conspiracy convictions under 21 U.S.C. § 846, finding that the CCE convictions in Count Two precluded sentences for the drug conspiracy offenses. *Id.* at 903.

Defendant continued to press his appeals. On June 1, 1998, Defendant filed a motion under 28 U.S.C. § 2255 to vacate and set aside his sentences. *Roane*, 378 F.3d at 392. The Court granted Defendant partial relief, but the Fourth Circuit reversed, ruling against Defendant on all accounts. *Id.* at 398-411.

On July 22, 2020, Defendant filed a Motion for the Imposition of a Reduced Sentence Under Section 404 of the First Step Act (("First Step Act Motion") ECF No. 17), arguing for a reduced sentence on his CCE Murder Counts and Drug Distribution Counts. The First Step Act, in relevant part, allows defendants convicted of certain crack-cocaine drug trafficking offenses to move for a reduced sentence if the Fair Sentencing Act modified the statutory penalties for those drug trafficking offenses. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Defendant argued that the First Step Act covered his CCE Murder Counts, because the CCE Murder Counts rely on drug trafficking predicates that the Fair Sentencing Act modified. (First

Step Act Motion at 2-5.)  On October 29, 2022, the Court denied Defendant's First Step Act

Motion (ECF Nos. 66-67), and Defendant appealed.  (ECF No. 69.)  On October 18, 2022, the

Fourth Circuit affirmed the denial of Defendant's First Step Act Motion.  *United States v. Roane*,

__ F.4th __, 2022 WL 10217083 (4th Cir. 2022).

With respect to the present § 2255 Motion, on May 22, 2020, Defendant filed a motion

with the Fourth Circuit to file a successive § 2255 Motion in light of the Supreme Court's

decision in *Davis*.  On January 24, 2022, the Fourth Circuit granted authorization to Defendant to

file a successive 28 U.S.C. § 2255 motion.[3]  (ECF No. 147.)  On February 22, 2022, Defendant

filed his Amended § 2255 Motion.  On April 28, 2022, the Government filed its Response in

Opposition to Defendant's Motion to Vacate ("Govt.'s Resp." (ECF No. 174).)  On May 27,

2022, Defendant filed his Reply (ECF No. 177), rendering this matter now ripe for review.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a movant may collaterally attack a conviction or sentence that

the Court imposed in violation of the United States Constitution or its laws, where the Court

lacked jurisdiction to impose the sentence, where the sentence exceeded the maximum sentence

authorized by law, or where the sentence "is otherwise subject to collateral attack."  28 U.S.C.

§ 2255(a).  A movant under § 2255 bears the burden of showing a constitutional violation.

*United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).  Generally, "claims not raised on

direct appeal may not be raised on collateral review unless the petitioner shows cause and

prejudice" to excuse his procedural default or his actual innocence.  *Massaro v. United States*,

538 U.S. 500, 504 (2003).

---

[3]      The Court agrees with the Fourth Circuit that Defendant's § 2255 Motion relies upon "a
new rule of constitutional law, made retroactive to cases on collateral review."  28 U.S.C.
§ 2255(h)(2).

6

"[H]abeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.''" *Davis v. Ayala*, 576 U.S. 257, 267 (2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). This standard requires the habeas petitioner to show that "[t]here [is] more than a 'reasonable possibility' that the error was harmful." *United States v. Said*, 26 F.4th 653, 660 (4th Cir. 2022) (alterations in original) (quoting *Davis*, 576 U.S. at 268). "Thus, mere speculation that the defendant was prejudiced by trial error is not enough; the court must find that the defendant was actually prejudiced by the error." *Id.*

## III. ANALYSIS

Resolution of Defendant's § 2255 Motion first requires the Court to determine whether his four § 924(c) Convictions still rest on valid predicates. Because they do, the Court will then determine whether Defendant can show prejudice from the possibility that some of the predicate offenses may not constitute valid predicates while others do. He cannot.

### A.     Section 924(c)

Section 924(c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be subject to an additional mandatory minimum sentence. 18 U.S.C. § 924(c)(1)(A). The statute defines a "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801, *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. § 951, *et seq.*), or chapter 705 of title 46." § 924(c)(2). Further, the statute defines "crime of violence" to mean

7

"an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3).[4]  As the statute plainly states, it "prohibits the possession of a firearm in furtherance of a crime of violence *or* a drug trafficking crime." *United States v. Hare*, 820 F.3d 93, 105-06 (4th Cir. 2016).  Therefore, the Court must determine whether Defendant's convictions in Counts Six, Nine, Twelve and Fifteen rest on convictions that constitute valid crimes of violence or drug trafficking crimes.  This begins with an examination of the predicate convictions.

### B.     Defendant's Predicate Convictions for Counts Six, Nine, Twelve and Fifteen

#### 1.     Count Six

Count Six of the Indictment states:[5]

> THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, JAMES H. ROANE, JR., aka "J.R.", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is, a violation of Title 21, United States Code, Section 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Five and Seven of this Indictment.

(Indictment at 8.)  Thus, the Indictment predicated Count Six on the following counts:

> **Count One** charged Roane with participating in a conspiracy to possess with intent to distribute and to distribute fifty (50) grams or more of cocaine base.  (*Id.* at 2-5.)

> **Count Five** charged that on or about January 13, 1992, while engaged in and working in furtherance of a CCE, Roane "knowingly, intentionally, and unlawfully killed, counseled, commanded, induced, procured, and caused the intentional killing of Douglas Moody, and such killing resulted.  (In violation of 21 United States Code, Section 848(e)(1)(A) and Title 18 United States Code, Section 2.)" (*Id.* at 7.)

> **Count Seven** charged that on January 13, 1992, Roane "did knowingly, intentionally, and unlawfully cause the murder of Douglas Moody, as consideration for the receipt of, and

---

[4]     The Supreme Court has struck down the additional phrase in the "crime of violence" definition as discussed below.

[5]     The Court corrects the capitalization in any quotations referring to the counts of the Second Superseding Indictment.

8

as consideration for a promise of agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.  (In violation of Title 18, United States Code, Sections 1959 and 2.)"  (*Id.* at 8.)

### 2.    Count Nine

Count Nine of the Indictment states:

> THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, . . . JAMES H. ROANE, JR., aka "J.R.", . . . . did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Eight and Ten of this Indictment.

(Indictment at 9.)  Thus, in addition to Count One, the Indictment predicated Count Nine on the

following counts:

> **Count Eight** charged that, on January 14, 1992, Roane, while engaged in and working in furtherance of a CCE, "knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Peyton Maurice Johnson, and such killing resulted.  (In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.)"  (*Id.* at 9.)

> **Count Ten** charged that, on January 14, 1992, Roane, "did knowingly, intentionally, and unlawfully cause the murder of Peyton Maurice Johnson, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.  (In violation of Title 18, United States Code, Sections 1959 and 2.)"  (*Id.* at 10.)

### 3.    Count Twelve

Count Twelve of the Indictment states:

> THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992 . . . . JAMES H. ROANE, JR., aka "J.R.", . . . did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Eleven and Thirteen of this Indictment.

(Indictment at 11.) Thus, in addition to Count One, the Indictment predicated Count Twelve on

the following counts:

> **Count Eleven** charged that, on January 29, 1992, Roane, while engaged in and working
> in furtherance of a CCE, "knowingly, intentionally, and unlawfully killed and counseled,
> commanded, induced, procured, and caused the intentional killing of Louis. J. Johnson,
> Jr., and such killing resulted. (In violation of Title 21, United States Code, Section
> 848(e)(1)(A) and Title 18, United States Code, Section 2.)" (*Id.* at 10.)

> **Count Thirteen** charged that, on January 29, 1992, Roane "did knowingly, intentionally,
> and unlawfully cause the murder of Louis J. Johnson, Jr., as consideration for the receipt
> of, and as consideration for a promise and agreement to pay, something of pecuniary
> value from an enterprise engaged in racketeering activity, and for the purpose of gaining
> entrance to and maintaining and increasing position in an enterprise engaged in
> racketeering activity, said racketeering activity being dealing in narcotic or other
> dangerous drugs. (In violation of Title 18, United States Code, Sections 1959 and 2.)"
> (*Id.* at 11.)

### 4. Count Fifteen

Count Fifteen of the Indictment states that:

> THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, .
> . . JAMES H. ROANE, JR. "J.R.", . . . . did knowingly, willfully, and unlawfully use a
> firearm, during and in relation to a crime of violence or a drug trafficking crime, which is
> a felony prosecutable in a court of the United States, that is a violation of Title 21, United
> States Code, Section 846, and Title 18 United States Code, Section 1959, as set forth in
> Counts One, Fourteen and Sixteen of this Indictment.

(Indictment at 12.) Thus, in addition to Count One, the Indictment predicated Count Fifteen on

the following counts:

> **Count Fourteen** charged that Roane, on February 1, 1992, "did knowingly, intentionally,
> and unlawfully cause the murder of Torrick Brown, Jr., as consideration for the receipt
> of, and as consideration for a promise and agreement to pay, something of pecuniary
> value from an enterprise engaged in racketeering activity, and for the purpose of gaining
> entrance to and maintaining and increasing position in an enterprise engaged in
> racketeering activity, said racketeering activity being dealing in narcotic or other
> dangerous drugs. (In violation of Title 18, United States Code, Sections 1959 and 2.)"
> (*Id.* at 12.)

10

**Count Sixteen** charged that Roane, on February 1, 1992, "did knowingly, intentionally, and unlawfully commit assault resulting in serious bodily injury to Martha McCoy, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs. (In violation of Title 18, United States Code, Sections 1959 and 2.)" (*Id.* at 13.)

## C.     The Pertinent Jury Instructions

The Court instructed the jury that:

In order to sustain its burden of proof of the crime of using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime as charged in Counts . . . Six, Nine, Twelve, Fifteen . . . of the indictment, the government must prove the following two essential elements beyond a reasonable doubt:  One, the defendant committed the crime as charged in the indictment; and two, during and in relation to the commission of that crime, the defendant knowingly used or carried a firearm.

The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, the attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense.

The term "drug trafficking crime" means an offense that is a felony and involves the distribution, manufacture, or importation of any controlled substances.  The offenses alleged in Counts Three, Four, Five, Seven, Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen . . . [and] Thirty-two are crimes of violence or drug trafficking crimes.

(Feb. 2, 1993 Tr. 3222–23.)

Defendant's Verdict Form further stated:

Count 6:     Use of a Firearm in Relation to Killing of Douglas Moody

_____
(Guilty or Not Guilty)

. . . .

Count 9:     Use of a Firearm in Relation to Killing of Peyton Maurice Johnson

_____
(Guilty or Not Guilty)

. . . .



Count 12:     Use of a Firearm in Relation to Killing of Louis J. Johnson, Jr.

_____

(Guilty or Not Guilty)

. . . . .

Count 15:     Use of a Firearm in Relation to Killing of Torrick Brown, Jr., and
              Maiming of Marth McCoy

_____

(Guilty or Not Guilty)

(Dkt. No. 467, at 2-3.)  The jury found him guilty on all four counts.  (*Id.*)

In sum, Defendant's § 924(c) convictions in Counts Six, Nine and Twelve all had as

predicates the Drug Conspiracy Count, a CCE Murder charge and a VICAR Murder charge.

Count Fifteen had as predicates the Drug Conspiracy Count and two VICAR counts, but did not

have a CCE Murder charge as a predicate.  Defendant contends that in the wake of *Davis* and

*Borden*, none of the designated offenses constitute a viable crime of violence predicate for the

§ 924(c) offenses in Counts Six, Nine, Twelve and Fifteen.  His arguments fail.  As explained

below, the CCE Murder Convictions constitute valid drug trafficking crimes for his § 924(c)

Convictions.  Furthermore, the CCE Murder Convictions and VICAR Murder Convictions

remain valid crimes of violence predicates for his § 924(c) Convictions.  Defendant devotes

much of his brief to arguing that the presence of some potentially invalid predicates renders the

§ 924(c) convictions unsustainable.  Given the unquestionably valid predicates supporting

Defendant's § 924(c) convictions, Defendant's argument regarding potentially invalid

convictions lacks merit.  *Said*, 26 F.4th at 659 ("[A] § 924(c) conviction may stand even if the

jury based its verdict on an invalid predicate, so long as the jury *also* relied on a valid predicate."

(citing *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 819

(2022); *Hare*, 820 F.3d at 106)).

### D.   Counts Five, Eight and Eleven Remain Valid Drug Trafficking Predicates and Crime of Violence Predicates for § 924(c) Convictions.

The Court recently rejected identical arguments raised by a co-defendant in Tipton's § 2255 motion. (ECF No. 186-87.) In doing so, the Court held that the CCE Murder convictions constituted valid predicates as both crimes of violence and drug trafficking crimes. (ECF No. 186 at 15-24.) Defendant offers no arguments that would persuade the Court to reach a different conclusion here. Nothing in the way in which the § 924(c) Counts or CCE Murder Counts were charged or presented to the jury suggest that the Court should treat these § 924(c) Counts differently than Tipton's. Accordingly, the Court hereby incorporates its reasoning from the Memorandum Opinion denying Tipton's § 2255 Motion into this Opinion. Therefore, the Court finds that Counts Five, Eight and Eleven may serve as valid predicates for the § 924(c) Convictions in Counts Six, Nine and Twelve. Thus, the Court will deny Defendant's Motion with respect to those Counts. However, Count Fifteen had as its predicates the Drug Conspiracy Count and the VICAR convictions, but not a CCE Murder Conviction. In deciding Tipton's § 2255 motion, the Court did not need to determine whether the VICAR Convictions could support a § 924(c) Conviction. Therefore, the Court now will address whether the VICAR Murder Convictions constitute valid predicate crimes.

### E.   Count Fifteen Rests on Valid Predicates.

Defendant contends that his § 924(c) Conviction in Count Fifteen cannot stand, because it lacks a valid predicate. The Indictment predicated Count Fifteen on Counts One, Fourteen and Sixteen. (Indictment at 12-13.) Thus, the Court must determine if any of those three counts constitute a crime of violence or drug trafficking offense.

### i.   Count One Remains a Valid Drug Trafficking Predicate.

Defendant's Drug Distribution Conviction in Count One remains a valid drug trafficking predicate for Count Fifteen. *United States v. Hare*, 820 F.3d 93, 97, 106 (4th Cir. 2016) (finding that drug distribution conspiracy charge could properly support a § 924(c) conviction); *see United States v. Heyward*, 3 F.4th 75, 81 (2d Cir. 2021) ("[A] § 924(c) conviction may be premised on a drug-trafficking crime, including conspiracies." (citing *United States v. Dussard*, 967 F.3d 149, 157-58 (2d Cir. 2020))); *United States v. Cannon*, 987 F.3d 924, 948 (11th Cir.) (denying relief in the wake of *Davis* where 924(c) conviction was predicated an invalid Hobbs Act conspiracy and "the still-valid cocaine conspiracy crime"), *cert. denied sub nom. Holton v. United States*, 142 S. Ct. 283 (2021).

The vacatur on appeal of Count One on double jeopardy grounds does not impact this analysis. *United States v. Hopkins*, 310 F.3d 145, 153 (4th Cir. 2002) ("Moreover, a defendant's conviction under § 924(c) 'does not depend on his being convicted — either previously or contemporaneously — of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt.'" (citing *United States v. Crump*, 120 F.3d 462, 466 (1997))). The jury found beyond a reasonable doubt that Defendant conspired to traffic in at least 50 grams of crack cocaine. The Fourth Circuit vacated this conviction not based on any defect in the jury's finding or the evidence to support the conviction, but rather because the charge constituted a lesser included offense within the CCE conviction. *Tipton*, 90 F.3d at 891. Thus, Count One remains a valid drug trafficking predicate. However, although the jury received a copy of the Indictment listing Count One as a predicate for Count Fifteen, the Court did not include Count One as a predicate for Count Fifteen when instructing the jury, and the Verdict Form omits Count One as a predicate. Accordingly, the Court will continue its inquiry

14

to determine whether the other predicate offenses constitute crimes of violence.

### ii.    Defendant's VICAR Murder Conviction Constitutes a Crime of Violence.

Even if the Court could not consider the Count One conviction as a predicate,

Defendant's VICAR Murder Conviction in Count Fourteen constitutes a crime of violence.

The VICAR statute provides that:

> "[w]homever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires to do so, shall be punished . . . (1) for murder, by death or life imprisonment, or a fine under this title, or both . . .

18 U.S.C. § 1959(a).

To determine whether a charged offense constitutes a crime of violence, courts apply the categorical approach, which requires them to "ask whether the most innocent conduct that the law criminalizes requires proof of the use, attempted use, or threatened use of force sufficient to satisfy the elements clause." *United States v. Roof*, 10 F.4th 314, 398 (4th Cir. 2021).  If yes, "then the offense categorically qualifies as a crime of violence.  But if the statute defines an offense in a way that allows for both violent and nonviolent means of commission, then that predicate offense is not 'categorically' a crime of violence under the elements clause." *Id.* (cleaned up).  This approach requires courts to analyze the elements of the offense charged, rather than the specific way in which the defendant committed the crime. *Id.*

In a narrow range of cases, court apply the "modified categorical approach" to "divisible statutes, "those that list potential offense elements in the alternative and thus include, multiple, alternative versions of the crime." *United States v. Bryant*, 949 F.3d 168, 173 (4th Cir. 2020);

*Mathis v. United States*, 579 U.S. 500, 505-06 (2016).  Under the modified categorical approach, courts survey a limited universe of judicial record documents — colloquially, the *Shepard* documents — to determine "what crime, with what elements, a defendant was convicted of." *Mathis*, 579 U.S. at 505-06.  Thus, the modified categorical approach "helps effectuate the categorical analysis" to distill the statute to the indivisible crime at issue before embarking on the categorical analysis. *United States v. Allred*, 942 F.3d 641, 648 (4th Cir. 2019).  Once the modified categorical analysis concludes and the court "isolate[s] the specific crime underlying the defendant's conviction, [the court] must then apply the categorical approach to that crime to determine if it constitutes a [crime of violence]." *Allred*, 942 F.3d at 648.

The VICAR statute calls for a modified categorical approach, as it lists elements in the alternative, defining different § 1959 offenses based on the predicate violent crime. *Cousins v. United States*, 198 F. Supp. 3d 621, 625-26 (E.D. Va. 2016).  The *Shepard* documents in this case indicate that Count Fourteen charged Defendant with Murder in Aid of Racketeering Activity, in violation of § 1959(a)(1).

Therefore, the Court begins with the elements of a VICAR Murder conviction.  To obtain a conviction for VICAR, the Government must prove beyond a reasonable doubt five elements:

> (1) there was a RICO enterprise; (2) it was engaged in racketeering activity as defined in RICO; (3) the defendant in question had a position in the enterprise; (4) the defendant committed the alleged crime of violence; and (5) his general purpose in doing so was to maintain his position in the enterprise.

*United States v. Simmons*, 11 F.4th 239, 271 (4th Cir. 2021).  The fourth element, specific to the VICAR predicate, constitutes the key conduct element in determining if the VICAR offense has an element the use, attempted use, or threatened use of physical force.  Here, that fourth element alleged that Defendant committed murder.  Thus, the Court will determine whether murder satisfies both the force and intent requirements of the definition of a crime of violence.

16

The Fourth Circuit recently ruled that a VICAR Murder conviction premised on a violation of Virginia's first and second-degree murder statute qualifies as a crime of violence for § 924(c) purposes. *United States v. Manley*, __ F.4th __, 2022 WL 14725226, at *5 (4th Cir. Oct. 26, 2022). Specifically, the court recognized that second-degree murder in Virginia requires a *mens rea* of "extreme recklessness," which entails a greater degree of recklessness than ordinary recklessness. *Id.* at *4. This heightened degree of recklessness satisfies the statutory definition of a crime of violence even under the Supreme Court's holding *Borden*. *Id.* In *Borden*, the Court held that offenses that can be committed with a *mens rea* of recklessness rather than intentionally do not constitute crimes of violence. 141 S. Ct. at 1821-22, 1825. As a matter of first impression, the Fourth Circuit in *Manley* held that offenses that require a *mens rea* of "extreme recklessness" satisfy the *mens rea* component for crimes of violence. 2022 WL 14725226, at *5. Thus, VICAR Murder convictions premised on Virginia's first and second-degree murder statute may validly support a § 924(c) conviction. Although the charges here track first-degree murder in Virginia, Count Fourteen does not contain an explicit cross-reference to Virginia's murder statute.

Count Fourteen charges that Defendant "did knowingly, intentionally, and unlawfully cause the murder of Torrick Brown, Jr. . . ." (Indictment at 12-13.) It does not cross-reference a state or federal statute underlying the murder charge. This appears to result from a change in the manner in which the Government charges and prosecutes VICAR Murders that has occurred in the thirty years following Defendant's conviction. Accordingly, out of an abundance of caution, the Court will also look to other potential sources of a murder charge. *See Cousins*, 198 F. Supp. 3d at 626 ("Section 1959 reaches the generic conduct described therein, without concerns for the

labels a state may use in criminalizing the conduct that qualifies as a VICAR predicate.").[6]

The common law defines murder as the unlawful killing of another human being with malice aforethought. *Schad v. Arizona*, 501 U.S. 624, 640 (1991).[7] "The intentional killing of another certainly involves the use, attempted use, or threatened use of physical force against the person." *Cousins*, 198 F. Supp. at 626. Murder meets the force requirement, as it "requires the use of force capable of causing physical pain or injury to another person." *Mathis*, 932 F.3d at 265; *see Jackson*, 32 F.4th at 287 (concluding that a death-results crime necessarily requires the use of violent force). Moreover, the intentional killing of another satisfies the intent element of a crime of violence. Accordingly, a VICAR murder predicated on common law murder qualifies as a crime of violence. *See Umana v. United States*, 229 F. Supp. 3d 388, 395 (M.D.N.C. 2017) ("Therefore, generic murder in aid of racketeering, § 1959(a), is a crime of violence under the force clause of § 924(c).").

Moreover, even if the Court viewed Defendant's VICAR predicate through the lens of the federal murder statute, it would still constitute a crime of violence. That statute sets forth four types of first-degree murder:

> Murder is the unlawful killing of a human being with malice aforethought. Every murder (1) perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or (2) committed in the

---

[6]     In *Manley*, the Fourth Circuit also held that a VICAR assault conviction premised on Virginia's unlawful wounding statute would constitute a crime of violence. 2022 WL 14725226, at *3-4. Because the VICAR Maiming conviction in Count Sixteen would cross-reference to that same unlawful wounding statute if charged today, it appears that Count Sixteen could support a § 924(c) conviction as well. However, the Court need not reach question today, as Defendant's VICAR Murder conviction plainly constitutes a valid crime of violence predicate.

[7]     To the extent that Defendant could argue that common law murder could include felony murder, which may not necessarily meet the definition of a crime of violence, the *Shepard* documents demonstrate that Defendant was charged with intent to kill murder rather than felony murder. *See Schad*, 501 U.S. at 640 ("The intent to kill and the intent to commit a felony were alternative aspects of 'malice aforethought.'").

> perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse, child abuse, burglary, or robbery; (3) perpetrated as part of a pattern or practice of assault or torture against a child or children; or (4) perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

18 U.S.C. § 1111(a). The Fourth Circuit recently found this statute divisible, setting forth four alternative versions of first-degree murder. *United States v. Jackson*, 32 F.4th 278, 285 (4th Cir. 2022).

Defendant argues that the federal murder statute does not qualify as a crime of violence, because it encompasses felony murder and second-degree murder. (§ 2255 Mot. at 17.) However, this fails to account for the Fourth Circuit's conclusion in *Jackson* as to the divisibility of the statute. Here, the *Shepard* documents indicate that the jury convicted Defendant of a premeditated murder in Count Fourteen, which would fall into the first version of first-degree murder in the federal statute. (*See, e.g.,* Indictment at 12 (charging that Defendant "knowingly, intentionally, and unlawfully cause[d] the murder of Torrick Brown, Jr. . . .").) Likewise, on the Verdict Form, the jury found Defendant guilty of Count Fourteen for the "Killing of Torrick Brown, Jr., to Maintain or Increase Position in Racketeering Enterprise." (Dkt. No. 467, at 3.) Thus, the Court finds that Defendant's murder would fall under the first prong of the federal first-degree murder statute.

In *Jackson*, the Fourth Circuit concluded that "[u]ndoubtedly, federal premeditated first-degree murder is a 'crime of violence.'" 32 F.4th at 287. Accordingly, if the Court cross-referenced Defendant's VICAR Murder to the federal first-degree murder statute, that would result in the conclusion that Count Fourteen qualifies as a crime of violence and, therefore, a valid predicate for Count Fifteen. Defendant's VICAR Murder Conviction constitutes a crime of violence whether the fourth element — the crime of violence alleged — stems from a violation

19

of Virginia's murder statute, common-law murder or the federal murder statute. Thus, Defendant's conviction under § 924(c) in Count Fifteen rests on a constitutionally valid predicate.[8]

### F. Defendant Can Show No Prejudice

Defendant argues that, because some of his § 924(c) Convictions may rest on invalid predicates, the Court must grant him relief. Although the Court has found that the § 924(c) convictions rested on valid predicates, Defendant would still fail to show any prejudice if some of the convictions constituted valid predicates and some did not. Indeed, "a § 924(c) conviction may stand even if the jury based its verdict on an invalid predicate, so long as the jury *also* relied on a valid predicate." *Said*, 26 F.4th at 659. Here, the Special Verdict Form did not require the jury to identify which predicate crimes of violence or drug trafficking crimes that it relied upon to find Defendant guilty of Counts Six, Nine, Twelve and Fifteen. To meet his burden to show that the jury relied on an invalid predicate, he "must show more than a reasonable possibility that the jury *only* found him guilty" in Counts Six, Nine, Twelve and Fifteen, because it improperly considered one of the listed counts to be a crime of violence. *Id.* at 662. Common sense dictates that the jury had at least one of these valid predicates in mind when it convicted Defendant on the § 924(c) Counts. *See id.* at 664 (finding error harmless when the defendant "pointed to nothing to eliminate the common sense prospect that the jury relied on one or more of the valid predicates when it convicted him of the § 924 charges"). Consequently, Defendant has not offered a sufficient reason for the Court to stray from the Fourth Circuit's rule in *Said* that a § 924(c) conviction may properly rest on a valid predicate even if it also rests on an invalid

---

[8] This analysis applies equally to the VICAR Murder Convictions in Counts Seven, Ten and Thirteen that underpin the § 924(c) Convictions in Counts Six, Nine and Twelve, such that those § 924(c) Convictions rest on multiple valid predicates.

predicate. Accordingly, the Court finds that all four of Defendant's § 924(c) Convictions rest on constitutionally valid predicates and, therefore, Defendant cannot meet his burden of showing prejudice.

## IV.   CONCLUSION

Defendant's CCE Murder Convictions, wherein the jury convicted him of killing individuals in furtherance of his substantial drug trafficking ring, plainly constitute both crimes of violence and drug trafficking crimes. Likewise, Defendant's VICAR Murder Convictions, wherein the jury convicted him of killing individuals in furtherance of his racketeering enterprise, plainly constitute crimes of violence. Therefore, his § 924(c) convictions predicated on those convictions must stand. Accordingly, the Court will DENY Defendant's § 2255 Motion. (ECF No. 161.) A certificate of appealability will be denied.

An appropriate Order shall issue.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to counsel of record.

/s/

David J. Novak
United States District Judge

Richmond, Virginia
Dated: November 3, 2022